UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | NO. H-85-1078(PCD) |
| v. | ) | |
| | ) | |
| 43.47 ACRES OF LAND, MORE OR LESS, SITUATED IN THE COUNTY OF LITCHFIELD, TOWN OF KENT, et al, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | * * * * * * * * * |
| SCHAGHTICOKE TRIBAL NATION | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | NO. 3-98-CV 01113 (PCD) |
| v. | ) | |
| | ) | |
| KENT SCHOOL CORPORATION, INC., et al | ) ) | |
| Defendants. | ) | |
| | ) | * * * * * * * * * |
| SCHAGHTICOKE TRIBAL NATION | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | NO. 3-00-CV 0820 (PCD) |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA AND THE CONNECTICUT LIGHT AND POWER COMPANY, et al | ) ) ) | |
| Defendants. | ) | April 6, 2004 |

**SCHAGHTICOKE TRIBAL NATION'S**
**MOTION TO AMEND SCHEDULING ORDER**

**Introduction**

The Schaghticoke Tribal Nation ("Tribe") moves the Court to amend the recently-amended May 9, 2001 Scheduling Order (the "Scheduling Order") in these consolidated cases. The motion is necessitated not by the Tribe's desire to reschedule dates but, rather to add language to Paragraph (1) of the Scheduling Order that reflects the clear and unambiguous

**ORAL ARGUMENT REQUESTED**

agreement previously reached between the parties and *amicus*, State of Connecticut, concerning communications or meetings with any officials in the immediate offices of the Secretary of the Interior, the Assistant Secretary-Indian Affairs, or the Deputy Commissioner of Indian Affairs with respect to the Tribe's petition for acknowledgment.

As to the requested amendment, following months of negotiations, including some sessions with the Court, the parties and *amici* agreed to the terms of a Scheduling Order governing these consolidated cases that were ultimately entered by the Court. One provision of the Scheduling Order precludes any non-federal party or *amici* from communicating or meeting with any officials in the immediate offices of the Secretary of the Interior, the Assistant Secretary-Indian Affairs, or the Deputy Commissioner of Indian Affairs with respect to the Tribe's petition for acknowledgment without prior notification to all other parties. *See* Scheduling Order at ¶ (1).[1] This provision was specifically raised with this Court during negotiations. As discussed below, the recent violation of the Scheduling Order by Attorney General Blumenthal necessitates the amendment of the Order to specifically require *two business days prior* notification to all other parties of any such communications or meetings. The parties and *amici* could continue to file such papers, as permitted by the Scheduling Order and the applicable regulations, without prior notice to the parties or the U.S. Attorney's Office.

The Court may wonder why the Tribe's request is necessary, given the months of negotiations between counsel for the parties and *amici* and the clear and unambiguous agreement between all parties that each would give notice to all others before meeting with or communicating with representatives of any of the aforementioned Government offices. The Court justifiably may question why such understandings cannot be honored among counsel. Indeed, requiring all non-federal parties and *amici* to give prior notice to the U.S. Attorney's Office prior to communicating or meeting with the clients of that Office may seem unnecessary,

---

[1]    It is generally understood among the parties and *amici* that this provision does not apply to briefs, memoranda and similar papers filed in connection with the administrative proceedings.

given the applicable ethical obligations governing the conduct of counsel in this case, particularly the prohibition on counsel's contact with a represented party.

Prior to agreeing to the terms of the Scheduling Order, the Tribe considered the negotiations with the Court, the parties and *amici* and satisfied itself that the parties' and *amici's* understanding of the Scheduling Order did not require more specific language concerning notice of such meetings and communications with the referenced Government representatives. The Tribe, agreeing to the Scheduling Order, failed, however, to take account of Attorney General Richard Blumenthal's overzealous actions when blinded by a perceived politically-popular position.

On March 17, 2004, in an affront to the spirit of the months-long private negotiations between representatives of his Office, the U.S. Attorney's Office, counsel for the Tribe, and the other parties, Attorney General Blumenthal orchestrated a private, unscheduled meeting with Secretary of the Interior, Gale Norton, in an attempt to derail the very tribal recognition process to which he had agreed and as such, these actions. During that meeting, he also hand-delivered a one-sided letter that distorted the facts of this case and of the recognition process as it relates to the Tribe's petition. A letter was received by the parties and counsel for Secretary Norton days later via U.S. mail. Attorney General Blumenthal's actions demonstrate the rationale for this motion and the need for the amendment of the Scheduling Order.

## Discussion

1.    The Scheduling Order

The Scheduling Order issued by the Court in these consolidated cases concerns the Tribe's petition for tribal acknowledgment pending before the Bureau of Indian Affairs. In sum, it is a case management order under which the Tribe's recognition process is monitored and controlled by the Court. The Scheduling Order was the product of months of intensive negotiations between Attorney General Blumenthal and representatives of his Office, the Office

of the U.S. Attorney for the District of Connecticut, counsel for the Tribe, all other parties and this Court.

The final draft of the Scheduling Order included the following directive to Attorney General Blumenthal and the parties in these consolidated cases:

> No non-federal party or *amici* shall communicate or meet with any officials in the immediate offices of the Secretary of the Interior, the Assistant Secretary-Indian Affairs or the Deputy Commissioner of Indian Affairs with respect to this petition, without notification to the other parties.

*See* Scheduling Order at page 9, ¶ (1). It was clearly and unambiguously understood by all parties to the negotiations - - and specifically advocated by members of Attorney General Blumenthal's Office - - that "notification" meant prior notification. Since the issuance of the Scheduling Order, counsel for all the parties - - with the notable exception of Attorney General Blumenthal - - have conducted themselves accordingly.

2.      The March 17, 2004 Meeting

On March 17, 2004, Attorney General Blumenthal and representatives of other states met with Secretary of the Interior Gale A. Norton to discuss, in general terms, the current Tribal recognition process. *See* Exhibit 1 (March 17, 2004 Press Release from Attorney General Blumenthal). Following the meeting, however, Attorney General Blumenthal orchestrated a second, apparently unscheduled, private meeting in which he initiated a "spirited and frank" discussion with Secretary Norton concerning the merits of the Tribe's Petition. *Id.* During the meeting, Attorney General Blumenthal asked for a moratorium on the Tribe's recognition proceedings, including the IBIA appeal - - the very proceedings that are the subject of the Scheduling Order that he negotiated. *Id.*

Attorney General Blumenthal's misconduct purposefully deprived representatives of the Tribe the opportunity to be present during, and participate in, the meeting with Secretary Norton. This misconduct also purposefully deprived counsel for Secretary Norton, in this case, with the opportunity to be present and represent his client's interests. In sum, Attorney General Blumenthal's surreptitious conduct unquestionably seeks to derail the very recognition process that he had negotiated for and agreed to years ago and that is a central focus of these consolidated cases.[2] Even if Secretary Norton does not issue the moratorium requested by Attorney General Blumenthal, there is a very real risk that his comments could taint her future consideration of the Tribe's Petition. What else could be his goal for arranging a private, apparently unscheduled meeting with Secretary Norton?

3.    The March 17, 2004 Letter

In addition, on March 17, 2004, Attorney General Blumenthal hand-delivered a three-page letter to Secretary Norton in which he expressed, in detail, that he was "deeply troubled" by the decision of the Bureau of Indian Affairs to recognize the Tribe. *See* Exhibit 3 (March 17, 2004 Letter from Attorney General Blumenthal to Secretary Norton). Attorney General Blumenthal's letter also concerned an Office of Federal Acknowledgment (OFA) "briefing paper" - - akin to a bench-memo prepared by a law clerk for a judge - - in which OFA presented the former Acting Assistant Secretary for Indian Affairs with an analysis of several issues raised by the Tribe's Petition.[3]

---

[2]    Indeed, it is ironic that, on the one hand, Attorney General Blumenthal characterizes the Bureau of Indian Affairs as a "lawless [agency], ready to twist and distort logic and law in reaching a result driven by money and politics," *see* Exhibit 2, at 1, then, less than five days later, chooses to ignore the letter and spirit of this Court's Order - - the terms of which his Office specifically negotiated for and agreed to - - by arranging for his secret meeting with Secretary Norton in flagrant pursuit of his political agenda. In the Tribe's opinion, the Bureau of Indian Affairs is not the lawless party motivated by politics.

[3]    In fact, all the issues discussed in the "briefing paper" were also discussed in the Final Determination on the Tribe's Petition. Indeed, the "briefing paper" was disclosed to all parties and *amici* in this case, thus

Attorney General Blumenthal's letter threatens the integrity of the very process that he negotiated for and agreed to with respect to the consideration of the Tribe's Petition by the Department of the Interior and the Court. It was never shared with the Tribe, Secretary Norton's counsel in this case, or the other parties before it was delivered, as was required by the Scheduling Order. The letter misconstrues the nature of the "briefing paper" and fails to mention significant facts of which Secretary Norton, in all fairness, should have been advised, to consider the "briefing paper" in context. For example, Attorney General Blumenthal's caustic letter fails to mention that he has been involved in the Tribe's recognition process and land claim cases since their start, it fails to mention that he and his staff have submitted reams of legal briefs and supporting documentation concerning the very issues raised in the "briefing paper," and, significantly, it fails to mention that the letter itself was contrary to the terms of a Scheduling Order that his Office was instrumental in negotiating and which governed both the very recognition process of which the letter complained and the various land claims.

### Conclusion

Based on the foregoing, the Tribe respectfully requests that the Court amend the last sentence of Paragraph (1) of the Scheduling Order to read as follows:

> No non-federal party of *amici* shall communicate or meet with any officials in the immediate offices of the Secretary of the Interior, the Assistant Secretary-Indian Affairs or the Deputy Commissioner

---

undercutting any argument by Attorney General Blumenthal that it represents evidence of a secret conspiracy aimed at recognizing the Tribe, regardless of the evidence. Moreover, in yet another demonstration of Attorney General Blumenthal's fundamental misunderstanding of the recognition process, he apparently fails to comprehend that the "briefing paper" concerns matters on which there was no clear OFA precedent. Just like this Court in similar situations, in the absence of clear precedent, the Acting Assistant of Indian Affairs has very broad discretion to fashion a decision based on available evidence.

of Indian Affairs with respect to this petition, without *two business days prior* notification to the other parties.[4]

In addition, pursuant to the Court's inherent supervisory powers over parties and *amici* and their attorneys, the Tribe requests that the Court make a finding that Attorney General Blumenthal's March 17, 2004 private meeting with and letter to Secretary Norton concerning the Tribe's petition were improper and violated the Scheduling Order. The Tribe also asks that the Court place Attorney General Blumenthal on notice that future violations of the Scheduling Order may result in an order of sanctions, contempt, or similar disciplinary relief.[5]

---

[4] A specific two business day period of prior notification should provide the Tribe ample opportunity to bring to the Court's attention any concerns it may have concerning future meetings Attorney General Blumenthal may intend to request with Secretary Norton or other officials with the Department of the Interior.

[5] It is also noteworthy that the apparent authority for Attorney General Blumenthal to involve himself in this case is Conn. Gen. Stat. § 47-59a, *et seq.,* which vests Attorney General Blumenthal, vis-á-vis his client, the Connecticut Department of Environmental Protection, with certain authority and responsibilities with respect to Native American Lands. Thus, while it is apparent that, as a "friend of the Court," he may be involved in matters relating to the land claims and condemnation aspects of this case, it is questionable whether he may involve himself in matters relating to whether or not the Tribe obtains federal recognition or obtains the right to conduct gaming on its reservation.

Wherefore, the Tribe respectfully requests that the Court grant its Motion to Amend

Scheduling Order and order the requested relief.

                                        THE PLAINTIFF,
                                        SCHAGHTICOKE TRIBAL NATION
                                        BY MCCARTER & ENGLISH, LLC
                                        ITS ATTORNEYS

                                        By_____
                                        Eric Watt Wiechmann (CT 04331)
                                        Peter W. Hull (CT 17230)
                                        CityPlace I
                                        Hartford, CT  06103
                                        (860) 275-6700

                                        and

                                        Thomas Van Lenten, Esq. (CT 10199)
                                        Pinney, Payne, Van Lenten,
                                        Burrell, Wolfe & Dillman, P.C.
                                        Lee Farm Corporate Park
                                        83 Wooster Heights
                                        Danbury, CT  06813-3499
                                        (203) 830-6335

Of Counsel:
Judith A. Shapiro, Esq.
6856 Eastern Avenue NW
Suite 206
Washington, DC 20012

and

Jerry C. Straus, Esq.
Hobbs, Straus, Dean & Walker, LLP
2120 L Street, NW
Washington, DC  20037

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Schaghticoke Tribal Nation's Motion to Amend the Scheduling Order has been mailed, postage prepaid this 6th day of April, 2004 to:

John B. Hughes, Esq.
Chief of Civil Division
United States Attorneys Office
157 Church Street, Floor 23
New Haven, CT  06510

Thomas Van Lenten, Esq.
Pinney, Payne, Van Lenten,
Burrell, Wolfe & Dillman, P.C.
Lee Farm Corporate Park
83 Wooster Heights
Danbury, CT  06813-3499

Judith A. Shapiro, Esq.
6856 Eastern Avenue NW, Suite 206
Washington, DC 20012

David J. Elliot, Esq.
Day, Berry & Howard
CityPlace I
Hartford, CT  06103-3499

Loretta Bonos
594 Bendview Drive
Charleston, WV 25314

Jeffrey B. Sienkiewicz, Esq.
Sienkiewicz & McKenna, PC
9 South Main Street
P.O. Box 786
New Milford, CT  06776-0786

Michael J. Burns, Esq.
Law Offices of Attorney Michael J. Burns
57 Pratt Street
Hartford, CT  06103

Jerry C. Straus, Esq.
Hobbs, Straus, Dean & Walker, LLP
2120 L Street, NW
Washington, DC  20037

Giovanna Tiberii Weller, Esq.
Carmody & Torrance
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT  06721-1110

Robert A. Slavitt, Esq.
Slavitt, Connery, & Vardamis
618 West Avenue
Norwalk, CT  06850

James R. Fogarty, Esq.
Fogarty Cohen Selby & Nemiroff
88 Field Point Road, P.O. Box 2508
Greenwich, CT 06836-2508

Susan Quinn Cobb, Esq.
Asst. Attorney General
55 Elm Street
Hartford, CT  06141

Thomas A. Gugliotti, Esq.
Updike, Kelly & Spellacy
One State Street
Hartford, CT  06123

Renita Ford, Esq.
General Litigation Section
Environmental & Natural Resources Division
United States Department of Justice
Post Office Box 663
Washington, DC 20004-0663

Scott Keep, Esq.
Office of the Solicitor
U.S. Department of the Interior
1849 C Street, NW
Mailstop 6456
Washington, D.C. 20240

Eric Watt Wiechmann (CT 04331)