# EXHIBIT A

Case 3:00-cv-00820-PCD   Document 70   Filed 04/28/2004   Page 1 of 19



**CWAG**
**Conference of Western Attorneys General**

**Tom Gede**
Executive Director
1300 I Street
Sacramento, CA 95814
Phone: (916) 323-1939
Fax: (916) 323-0241
Tom.Gede@doj.ca.gov
http://www.CWAGweb.org

TO: The Honorable Gale Norton, Secretary of the Interior
Sue Ellen Wooldridge, Deputy Chief of Staff

• **Attn: Mari Grace Thomas**

FROM: Tom Gede, Executive Director

DATE: March 10, 2004

SUBJ: CWAG Meeting with Secretary Norton and Staff,
Wednesday, March 17, 2004, 1:30 p.m. - 2:30 p.m.

The Conference of Western Attorneys General appreciates the opportunity to meet with you and members of your staff. Included and attached here are the schedule, topics suggested for discussion and an attendance list.

Program Schedule:

- Introductions (led by CWAG Chair Montana AG Mike McGrath)
- Greetings from CWAG Chair Montana AG Mike McGrath
- Roundtable of State Attorneys General with Topics and Concerns

Topics:

1. Please discuss implementation of 2003 Amended Biological Opinion of Fish & Wildlife Service for the Missouri River and habitat creation issues (Nebraska, Dakotas, Montana).

2. Would the Secretary please address her Section 6 Policy under the ESA. This policy allows delegation of authority to a State for providing ESA protection. (Idaho)

The Honorable Gale Norton
March 10, 2004
Page 2

3. Will the Secretary take a position on S. 1529, amendments to IGRA that allow bingo-style slots without a compact; restrict tribal revenue sharing with states and local governments; and cut back on states' regulatory role? (several AG's/CWAG letter in opposition)

4. Will the Secretary be able to address the dispute over production companies' deductions in royalty payments.

5. Can we get an update on the Klamath and similar water disputes in light of Alsea/Grange decisions, especially if hatchery salmon are included with non-hatchery salmon under the ESA.

6. What, if any, reforms are under consideration to improve the consistency and reliability in the section 83 acknowledgment process at BIA/BAR for the federal acknowledgment of Indian tribes?

7. Will the Secretary be able to address the Department's position concerning streamflow in the Rio Grande, importation of interbasin water and the silvery minnow.

8. Is there an update on the decisions concerning snowmobiles in Yellowstone/Tetons.

8. Other topics as brought up by Attorneys General.


# # #


attch: Attendance list

# CWAG Meeting with Secretary Norton
## Washington DC
## March 15-17, 2004

*Attendance List - March 17, 2004 1:30 p.m.*

| # | NAME | STATE | TITLE | |
|---|------|-------|-------|---|
| 1. | Gregg Renkes | Alaska | Attorney General | |
| 2. | Bill Lockyer | California | Attorney General | |
| 3. | Lawrence Wasden | Idaho | Attorney General | |
| 4. | Ann Wilkenson | Nevada | Assistant Attorney General | |
| 5. | Patricia Madrid | New Mexico | Attorney General | |
| 6. | Stuart Bluestone | New Mexico | Chief Deputy Attorney General | |
| 7. | Glen Smith | New Mexico | Assistant Attorney General | |
| 8. | Wayne Stenehjem | North Dakota | Attorney General | |
| 9. | Christine Gregoire | Washington | Attorney General | |
| 10. | Patrick Crank | Wyoming | Attorney General | |
| 11. | Mark Bennett | Hawaii | Attorney General | |
| 12. | Larry Long | South Dakota | Attorney General | |
| 13. | Richard Blumenthal | Connecticut | Attorney General | *pending* |
| 14. | Phill Kline | Kansas | Attorney General | |
| 15. | Jon Bruning | Nebraska | Attorney General | *pending* |
| 16. | Dave Cookson | Nebraska | Assistant Attorney General | |
| 17. | Drew Edmondson | Oklahoma | Attorney General | *pending* |
| 18. | Barry McBee | Texas | First Assistant Attorney General | |
| 19. | Tom Gede | California | Executive Director-CWAG | |
| 20. | Karen White | California | Deputy Director-CWAG | |

# EXHIBIT B

Case 3:00-cv-00820-PCD   Document 70   Filed 04/28/2004   Page 6 of 19

# State of Connecticut



**RICHARD BLUMENTHAL**
ATTORNEY GENERAL

Hartford
March 17, 2004

The Honorable Gale A. Norton
Secretary
United States Department of Interior
1849 C Street, N.W.
Washington, D.C. 20240

Dear Secretary Norton:

    I am deeply troubled by an internal Bureau of Indian Affairs (BIA), Office of Federal Acknowledgement (OFA) staff memorandum to former Acting Assistant Secretary for Indian Affairs, Aurene Martin, that apparently led her to reverse her predecessor's negative proposed finding in the Schaghticoke Tribal Nation (STN) petition, and essentially, on the same factual record, to grant the Schaghticoke Tribal Nation's petition for federal acknowledgement. A copy of this memorandum is attached. This "briefing paper" provides yet another example that the tribal acknowledgement process is seriously flawed and requires immediate and comprehensive reform to restore its credibility.

    The OFA briefing paper confirms that recognition of Schaghticoke petitioner required the BIA to disregard its own regulations and established precedents, and to "revise," yet again, its recent pronouncements on the meaning and import of the State's relationship with the group, as well as ignore substantial gaps in the evidence. The BIA has now revised its view of the import of state recognition no less than four times in only two years. It has completely, unashamedly reversed the long-standing view that federal recognition could not be based on state recognition alone, moving to its present view that it can actually be a substitute for evidence on critical and mandatory criteria. The BIA has taken this new and revised approach despite substantial evidence in the record to show that the State of Connecticut never viewed or treated the Schaghticoke petitioner as a political entity or social community.

    In particular, the briefing paper sets forth options and seeks guidance from the Acting Assistant Secretary with respect to how to address two issues staff acknowledged were potentially fatal to the petition: (1) little or no evidence of the petitioner's political influence and authority, one of the mandatory regulatory criteria, for two substantial historical periods; and (2) serious problems associated with the internal fighting among the two factions of the group. With respect to the lack of evidence issue, the OFA shows, by it's owns words and analysis, its disregard for the legal standards and precedents as demonstrated by one of the four options

March 17, 2004
Page 2

posited by the OFA. OFA posits that one of the options is to: "Decline to acknowledge the Schaghticoke, based on the regulations and existing precedent." In explaining this option, which the OFA and the Assistant Secretary rejected, the OFA explained: "Option 2 [declining to acknowledge the group] maintains the current interpretation of the regulations and established precedents concerning how continuous tribal existence is demonstrated." In other words, declining to acknowledge the group means following the law. Yet, despite this clearly correct legal path, the BIA chose option 1, and acknowledged the petitioner by substituting state recognition in lieu of actual evidence for large periods of time. The BIA chose this option despite its own concession that it would create a "lesser standard."

I am also greatly disturbed by the OFA's lack of concern for the rights of the State of Connecticut, its citizens and the interested parties who participated in these proceedings under the apparent mistaken view that their input would be heard and considered fairly. The memorandum largely justifies adopting a "lesser standard" in violation of the regulations on the ground will have only a limited future precedential value because there are only "six other historically state recognized tribes with a continuously existing state reservation which have not yet been considered for acknowledgement." The State of Connecticut, and all affected by this proceeding have a right to expect that a federal agency, making a decision of this import, will do so by fairly and consistently applying the law.

The BIA's own internal memorandum demonstrates, beyond any doubt, that the tribal acknowledgement process is completely lacking in credibility, fatally flawed and in need of immediate and substantial reform. Continuing to tolerate the existing process, which is so obviously flawed and infected by improper influences, threatens irreparable and irrevocable harm. An immediate, full and far-reaching investigation is critical.

I am joined in this view by Connecticut's congressional delegation, who have requested that the General Accounting Office and the Inspector General undertake investigation of this process. In addition, I will request that the Department of Justice immediately investigate the legality and propriety of the actions that led to this memorandum and the recognition and decision of this matter.

Until a full and fair investigation can be conducted and completed, I urge you to take any available action to impose an immediate moratorium on all pending recognition decisions including any proceedings before the Interior Board of Indian Appeals. The magnitude and severity of the illegal and improper actions described in the memorandum cut to the core of all Interior Department decisions relating to the Schaghticoke and other petitioners involving state recognition as a compensating factor for lack of evidence.

March 17, 2004
Page 3

        I am available to discuss this matter with you at your convenience.

                Very truly yours,

                RICHARD BLUMENTHAL

Attachment

c:  All parties of record:
    Eric Watt Weichmann
    Thomas Van Lenten
    Jeffery Sienkiewicz
    Thomas A. Gugliotti
    Richard Street
    Robert A. Slavitt
    David Elliott
    James R. Fogarty
    Jerry Strauss
    Judith Shapiro
    Michael J. Burns
    Scott Keep
    John Hughes
    Barbara Coen

# EXHIBIT C

Case 3:00-cv-00820-PCD    Document 70    Filed 04/28/2004    Page 9 of 19

Schaghticoke Briefing Paper 1/12/2004

## Schaghticoke Tribal Nation: Final Determination Issues

*Introduction*

The Office of Federal Acknowledgment (OFA) requests guidance from the ASIA concerning two issues that must be resolved in order to complete the final determination on the Schaghticoke Tribal Nation (STN) (Petitioner #79).

One issue concerns a lack of evidence for political authority for one substantial historical time period and insufficient evidence for a second, longer period. The other issue concerns the refusal of one faction to re-enroll because of opposition to the current STN leadership.

*Background: Proposed Finding versus Final Determination*
- Criterion 83.7(b) (community)
    The STN PF found that community had not been demonstrated between 1940 and 1967. With the additional data for the final determination, the STN now meets community for all periods up until 1996 (see *Issue 2* concerning 1996-2001).
- Criterion 83.7(c) (political influence)
    The STN PF found that the group had not demonstrated political influence between 1800 and 1875 and between 1885 and 1967. With the additional data for the final determination, there remains a lack of evidence for criterion 83.7(c) between 1820 and 1840 and insufficient evidence between 1892 and 1936. (see *Issue 2* concerning 1996-2001)
- Criteria 83.7(b) and (c) between 1996 and 2001
    These criteria were not met for the PF because the current STN membership list did not include a substantial portion of the actual social and political community. This faction continues to refuse to re-enroll.

*Issue 1*
Should the petitioner be acknowledged even though evidence of political influence and authority is absent or insufficient for two substantial historical periods, and, if so, on what grounds?

*Discussion*
The petitioner has little or no direct evidence to demonstrate that criterion 83.7(c) has been met between 1820 and 1840 and between approximately 1892 and 1936. The evidence for community during the 1820 to 1840 period, based on a high rate of intermarriage within the group, falls just short of the 50 percent necessary, under the regulations, to demonstrate political influence without further, direct evidence (83.7(b)(2)(ii)).

If applied as it was in the Schaghticoke PF, the weight of continuous state recognition with a reservation would not provide additional evidence to demonstrate that criterion 83.7(c) (political influence) has been met for this time period.

*State Relationship:*
The Schaghticoke have been a continuously state-recognized tribe with a state reservation throughout their history. They have had a special status in Connecticut as a distinct political

Schaghticoke Briefing Paper 1/12/2004

community, although there was not evidence of a government-to-government relationship with Connecticut throughout the entire historical span. The state relationship with them has been an active one, and was active during both of the time periods with little direct evidence of political influence. That activity (overseers, reservation maintenance, legislation and appropriations) did not extend to direct dealings with Schaghticoke leaders or consultation with the group on group matters during the time periods in question.

*Unique Circumstances for Evaluation.*
- There is no previous case where there is little or no direct evidence of political influence within the group for extended periods even though the existence of community is well established throughout the petitioner's entire history, including the two periods when evidence of political processes is very limited.

- There is no previous case where a petitioner meets all of the criteria from earliest sustained contact for over 100 years, does not meet one of the criteria during two separate, substantial historical periods and then meets all of the criteria for a substantial period up to the present (subject to *Issue 2*).

*General Requirements of the Regulations*
The regulations require demonstration of a "substantially continuous tribal existence" (83.3(a)). Under 83.1, "Continuously or continuous means extending from first sustained contact with non-Indians throughout the group's history to the present substantially without interruption."

The regulations provide that a petitioner shall be denied if there is insufficient evidence that it meets one or more of the criteria (83.6(d)).

*Additional Background Information*
Acknowledgment of the Schaghticoke would give them standing in the current litigation to procede with their Non-Intercourse Act land claim.

The deficiencies found in the petitioner's case are similar to, though less extensive, than found by researchers for the petitioner in earlier stages of preparation of the petition. Their reports are included in the record reviewed.

*Options*
1. Acknowledge the Schaghticoke under the regulations despite the two historical periods with little or no direct political evidence, based on the continual state relationship with a reservation and the continuity of a well defined community throughout its history.

2. Decline to acknowledge the Schaghticoke, based on the regulations and existing precedent.

3. Acknowledge the STN outside of the regulations.

2

Schaghticoke Briefing Paper 1/12/2004

4. Decline to acknowledge the STN, but support or not object to legislative recognition.

*Discussion of Options*
o   Option 1 would require a change in how continuous state recognition with a reservation was treated as evidence in the STN PF and in the Historical Eastern Pequot (HEP) decisions. The STN PF stated that state recognition in the Schaghticoke case did not provide additional evidence for political influence in the periods in question in part because there were no known State dealings with Schaghticoke leaders. In addition, the position in the HEP decisions and the STN PF was that the state relationship was not a substitute for direct evidence of political processes, and can add evidence only where there is some, though insufficient, direct evidence of political processes.

The revised view, under Option 1, would be that the overall historically continuous existence of a community recognized as a political community by the State (a conclusion denied by the State) and occupying a distinct territory set aside by the state (the reservation), together with strong evidence of continuous community, provides sufficient evidence for political influence even though direct evidence of political influence is absent for some periods.

Recognition of STN under Option 1 would not affect past negative decisions because the clear continuity as a community together with the continuous historical state relationship and reservation are not duplicated in petitioners that have been rejected in the past. There are no more than six other historically state recognized tribes with a continuously existing state reservation which have not yet been considered for acknowledgment.

Option 1 may be interpreted by petitioners as establishing a lesser standard which would be cited in some future cases, if the STN decision is interpreted as allowing substantial periods during which evidence is insufficient on one criterion. Its impact on future cases would be limited by the weight given the state relationship and the continuity in community.

o   Option 2 maintains the current interpretations of the regulations and established precedents concerning how continuous tribal existence is demonstrated.

o   Option 3, acknowledgment outside the regulations, would require an explicit waiver of at least part of the regulations, based on a finding that this was in the best interests of the Indians. A waiver could be narrowly defined to distinguish this case from other potentially similar future cases.

o   Option 4 would probably be strongly opposed by the Connecticut delegation.

*Recommendation*
The OFA recommends Option 1 on the grounds that it is the most consonant with the overall intent of the regulations.

3

Schaghticoke Briefing Paper 1/12/2004

*Issue 2*
*Should the STN be acknowledged (subject to decision on Issue 1) even though a substantial and important part of its present-day social and political community are not on the current membership list because of political conflicts within the group?*

*If STN is acknowledged, who should be defined by the Department as included within the tribe acknowledged?*

*Discussion*
The STN membership list does not include a substantial portion of the actual social and political community. The activities of these individuals were an essential part of the evidence for the PF's conclusion that the STN met criterion 83.7(b) and 83.7(c) between 1967 and 1996 and their absence was one of the reasons the PF concluded these criteria were not met from 1996 to the present. After 1996, these individuals either declined to reenroll as the leadership required of all members, or subsequently relinquished membership, because of strong political differences with the current STN administration.

STN negotiations with these individuals during the comment period did not resolve this issue. They have refused offers of the STN to consider them for membership. The STN has created a list of 43 individuals, not currently enrolled, who it considers to be part of their community. The OFA concludes there are 54, based on different estimates of family size but comprising the same group as identified by the STN. The current STN membership is 273.

The OFA's concern is that the current status of a long-term pattern of factional conflict may either have the undesirable consequence of negatively determining Schaghticoke's tribal status, or of disenfranchising part of its actual membership if acknowledged.

*Authority to Acknowledge*
The PF stated that "The Secretary does not have the authority to recognize part of a group" (citing HEP final determination which acknowledged two petitioners as together forming the historical tribe).

*Options:*
1. Acknowledge the STN as defined by its current membership list (assumes *Issue 1* is decided in favor of acknowledgment).

2. Acknowledge the STN but define the base roll membership of the tribe acknowledged as those on the current membership list <u>and</u> the specific body of 54 additional individuals. This body is defined in the determination based on past enrollment and past and continuing social and political involvement (assumes *Issue 1* is decided in favor of acknowledgment).

3. Decline to acknowledge the STN as not the complete group.

4

Schaghticoke Briefing Paper 1/12/2004

*Discussion of Options*

◦ Option 1: If the current STN membership is acknowledged, the additional 54 individuals, who meet the petitioner's own membership criteria, would qualify to be added to the base roll under 83.12(b). This section defines the membership list of a tribe as acknowledged as becoming the base roll and states that additional individuals maintaining tribal relations may be added to that base roll. This option leaves some authority with the existing leadership to accept or reject these individuals.

◦ Option 2: Past decisions, before the HEP FD, treated a petitioner's membership list as the definition of the community to be acknowledged or denied acknowledgment. The HEP FD combined two membership lists into one. This option would go farther, including in the group's membership individuals who have not specifically assented to or been accepted as members, albeit appearing on past membership lists. The PF stated "The purpose of the regulations is to provide for the acknowledgment of tribes, not of petitioners per se."

◦ Option 3: Depending on the resolution of *Issue 1*, this would disqualify an otherwise eligible petitioner because of its factional conflicts. Potentially, the STN and the faction could remedy this deficiency by combining and appealing to IBIA on the grounds of new evidence which would change the decision (83.11(d)(1)).

*Recommendation*
The OFA recommends Option 2, as consistent with the intent of the acknowledgment regulations.

Prepared by Office of Federal Acknowledgment, 1/12/2004

K:\BAR\Schagticoke-FD\SchagFDBrief

5

Lee Fleming
01/06/2004
05:33 PM

To: Aurene Martin/DC/BIA/DOI@BIA, Theresa Rosier/DC/BIA/DOI@BIA
cc: George Roth/DC/BIA/DOI@BIA, Virginia DeMarce/DC/BIA/DOI@BIA, Rita Souther/DC/BIA/DOI@BIA, BARBARA COEN/HQ/SOL/DOI@DOI
Subject: Briefing for Schaghticoke, Petitioner #79

☐ Return receipt

Aurene & Theresa,

We were able to schedule a briefing for both of you on issues pertaining to the Schaghticoke petition for Federal Acknowledgment as an Indian tribe. The purpose of this briefing is to present you with two specific issues regarding this case and to obtain your direction on these issues. These two issues will set precedence and OFA needs your direction to complete the Final Determination recommendation.

We are preparing a briefing paper addressing these issues, complete with options, and will provide you this briefing paper on Monday, January 12, 2004. Then, on Tuesday, January 13, 2004, in the Assistant Secretary's conference room at 10:00 a.m., the OFA research team, our solicitors, and I will provide you the briefing on these issues.

Either at the end of the briefing or shortly there after, we would like to receive your directions regarding these issues. Your prompt attention will allow us to complete our work on the Final Determination recommendation.

We anticipate that the packet for the Final Determination recommendation will enter into the surname process during the week of the January 19th. Under the court-approved negotiated agreement, the decision regarding the Schaghticoke petition is due on January 29, 2004.

Theresa, if your schedule permits, I also would like to meet with you tomorrow to talk about the roll out of this decision as it pertains to the court-approved negotiated agreement, such as 1) what time will we call the petitioner and interested parties, followed by Congressionals and the media on the 29th, 2) when to fax some of the decision documents, either the evening of the 29th or the morning of the 30th, and 3) when to allow for pick-up of the decision documents after 3:00 p.m. on the 30th or Fedex to those who do not pick-up by 5:00 p.m. that same day.

# EXHIBIT D



**RICHARD BLUMENTHAL**
**ATTORNEY GENERAL**

### TELEFAX COMMUNICATION

Date:      March 18, 2004

To:        Eric Watt Weichmann     724-3397
           Thomas Van Lenten       203-792-4759
           Jeffery Sienkiewicz     860-355-4439
           Thomas A. Gugliotti     548-2680
           Richard Street          203-575-2600
           Robert A. Slavitt       203-866-9724
           David Elliott            275-0343
           James R. Fogarty        203-629-7300
           Jerry Strauss           202-296-8834
           Judith Shapiro          202-291-3107
           Michael J. Burns        687-1833
           Scott Keep              202-219-1791
           John Hughes             203-773-5373
           Barbara Coen            202-219-1791

From:      Susan Quinn Cobb
           Assistant Attorney General
           Tel: (860) 808-5020
           Fax: (860) 808-5347

Number
of pages:  11       (including cover)

Faxed by:  mjg

Comments:  Attached letter was mailed late in the day on 3/17/04.

**NOTICE:  This telecopy transmission and any accompanying documents may contain confidential or privileged information.  They are intended only for use by the individual or entity named on this transmission sheet.  If you are not the intended recipient, you are not authorized to disclose, copy, distribute or use in any manner the contents of this information.  If you have received this transmission in error, please notify us by telephone immediately so that we can arrange retrieval of the faxed documents.**

| To: | Eric Watt Weichmann | 724-3397 |
|---|---|---|
| | Thomas Van Lenten | 203-792-4759 |
| | Jeffery Sienkiewicz | 860-355-4439 |
| | Thomas A. Gugliotti | 548-2680 |
| | Richard Street | 203-575-2600 |
| | Robert A. Slavitt | 203-866-9724 |
| | David Elliott | 275-0343 |
| | James R. Fogarty | 203-629-7300 |
| | Jerry Strauss | 202-296-8834 |
| | Judith Shapiro | 202-291-3107 |
| | Michael J. Burns | 687-1833 |
| | Scott Keep | 202-219-1791 |
| | John Hughes | 203-773-5373 |
| | Barbara Coen | 202-219-1791 |

From: Susan Quinn Cobb
Assistant Attorney General
Tel: (860) 808-5020
Fax: (860) 808-5347

Number of pages: 11 (including cover)

Faxed by: mjg

Comments: Attached letter was mailed late in the day on 3/17/04.

NOTICE: This telecopy transmission and any accompanying documents may contain confidential or privileged information. They are intended only for use by the individual or entity named on this transmission sheet. If you are not the intended recipient, you are not authorized to disclose, copy, distribute or use in any manner the contents of this information. If you have received this transmission in error, please notify us by telephone immediately so that we can arrange retrieval of the faxed documents.

---

*** MULTI TX/RX REPORT ***

| TX/RX NO | 2737 |
|---|---|
| DEPT. ID | 5020 |
| INCOMPLETE TX/RX | |
| TRANSACTION OK | (1) 97243397 |
| | (2) 912037924759 |
| | (3) 918603554439 |
| | (4) 95482680 |
| | (5) 912035752600 |
| | (6) 912038669724 |
| | (7) 92750343 |
| | (8) 912036297300 |
| | (9) 912022968834 |
| | (10) 91202913107 |
| | (11) 96871833 |
| | (12) 91202191791 |
| | (13) 912037735373 |
| ERROR | |

03/18/2004 THU 11:21 FAX 8608085347  @001