UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | NO. H-85-1078(PCD) |
| v. | ) | |
| | ) | |
| 43.47 ACRES OF LAND, MORE OR LESS, | ) | |
| SITUATED IN THE COUNTY OF | ) | |
| LITCHFIELD, TOWN OF KENT, et al, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | * * * * * * * * * |
| SCHAGHTICOKE TRIBAL NATION | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | NO. 3-98-CV 01113 (PCD) |
| v. | ) | |
| | ) | |
| KENT SCHOOL CORPORATION, INC., et al | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | * * * * * * * * * |
| SCHAGHTICOKE TRIBAL NATION | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | NO. 3-00-CV 0820 (PCD) |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA AND | ) | |
| THE CONNECTICUT LIGHT AND | ) | |
| POWER COMPANY, et al | ) | |
| Defendants. | ) | March 23, 2005 |

**SCHAGHTICOKE TRIBAL NATION'S REPLY TO THE TOWN OF KENT'S
OPPOSITION TO ITS MOTION FOR PERMISSION
TO CONDUCT LIMITED DISCOVERY**

**Introduction**

Pursuant to Rule 7(d) of the Local Rules of Civil Procedure, the Schaghticoke Tribal

Nation ("Tribe") submits this reply brief to the Town of Kent's (" the Town") opposition brief,

dated March 9, 2005, to the Tribe's Motion for Permission to Conduct Limited Discovery.

By its very terms and supporting affidavits, the Town's opposition brief establishes that there are unresolved factual issues concerning whether it indirectly, through TASK or otherwise, violated the Court's Order by causing the Department of Interior (DOI) officials to be contacted without prior notice. Accordingly, the Court should grant the Tribe's Motion to resolve these factual issues.

The Town acknowledges, as it must, that one of its Selectman was a founding member of TASK. Yet, the Town attempts to separate itself from the Selectman's actions by arguing that she was acting in an individual capacity, as opposed to her official capacity. If this is so, why did First Selectman Dolores R. Schiesel condemn that Selectman's actions as presenting a conflict. (Exhibit A, attached hereto). Further, the Town does not submit in support of its brief an affidavit from the Selectman who was a founding member of TASK. Instead, it submits the affidavit of First Selectman Schiesel, the Town official who raised concerns about the Selectman's involvement in TASK. In Schiesel's Affidavit, she acknowledges that she met on a few occasions with congressional representatives. Schiesel states, however, that she in no way encouraged them to contact the Board of Indian Appeals. Nevertheless, serious questions remain as to the Town's involvement in TASK and its lobbying efforts.

While the Town attempts to evade these questions by separating itself from TASK, the manner in which the Town attempts to do so attenuates its position. The Town obtained an affidavit from TASK's President in support of its brief but argues it has no relationship to TASK.

In any event, that affidavit is so vague and qualified that it leaves the questions unanswered. Paragraph 3 of the affidavit states the following:

> To the best of my knowledge and belief TASK, its officers, directors, and members and any lobbyists hired by TASK have not

-2-

> met with, nor communicated with, any officials in the immediate offices of the Secretary of the Interior, the Assistant Secretary of the Interior, or the Deputy Commissioner of Indian Affairs with respect to the [Tribe] for Tribal Recognition.

(Kenneth F. Cooper Aff., attached as Exhibit 1 to the Town's brief).

The affidavit does not make any statements concerning the founding Selectman's involvement in TASK. Nor does it indicate whether TASK or its lobbyist caused others, such as congressional representatives or other representatives, to contact or meet with the referenced offices. In light of these circumstances, the Town's brief raises more questions, rather than answer them, concerning whether the Court Order was violated through TASK and its lobbying efforts or other actions. Therefore, the Tribe's Motion for Permission to Conduct Limited Discovery should be allowed.

                THE PLAINTIFF,
                SCHAGHTICOKE TRIBAL NATION
                BY MCCARTER & ENGLISH, LLC
                ITS ATTORNEYS

                By _____
                Eric Watt Wiechmann (CT 04331)
                Salvatore N. Fornaciari (CT 22684)
                CityPlace I
                Hartford, CT 06103
                (860) 275-6700

Of Counsel:
Judith A. Shapiro, Esq.
6856 Eastern Avenue NW
Suite 206
Washington, DC 20012

and

Jerry C. Straus, Esq.
Hobbs, Straus, Dean & Walker, LLP
2120 L Street, NW
Washington, DC 20037

# **CERTIFICATE OF SERVICE**

      This is to certify that a copy of the foregoing Schaghticoke Tribal Nation's Reply Brief has been mailed, postage prepaid this 23rd of March, 2005 to:

John B. Hughes, Esq.
Chief of Civil Division
United States Attorneys Office
157 Church Street, Floor 23
New Haven, CT 06510

Judith A. Shapiro, Esq.
6856 Eastern Avenue NW, Suite 206
Washington, DC 20012

David J. Elliot, Esq.
Day, Berry & Howard
CityPlace I
Hartford, CT 06103-3499

Loretta Bonos
594 Bendview Drive
Charleston, WV 25314

Jeffrey B. Sienkiewicz, Esq.
Sienkiewicz & McKenna, PC
9 South Main Street
P.O. Box 786
New Milford, CT 06776-0786

Michael J. Burns, Esq.
Law Offices of Attorney Michael J. Burns
57 Pratt Street
Hartford, CT 06103

Jerry C. Straus, Esq.
Hobbs, Straus, Dean & Walker, LLP
2120 L Street, NW
Washington, DC 20037

Giovanna Tiberii Weller, Esq.
Carmody & Torrance
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT 06721-1110

Robert A. Slavitt, Esq.
Slavitt, Connery, & Vardamis
618 West Avenue
Norwalk, CT 06850

James R. Fogarty, Esq.
Fogarty Cohen Selby & Nemiroff
88 Field Point Road, P.O. Box 2508
Greenwich, CT 06836-2508

Susan Quinn Cobb, Esq.
Asst. Attorney General
55 Elm Street
Hartford, CT 06141

Thomas A. Gugliotti, Esq.
Updike, Kelly & Spellacy
One State Street
Hartford, CT 06123

Renita Ford, Esq.
General Litigation Section
Environmental & Natural Resources Division
United States Department of Justice
Post Office Box 663
Washington, DC 20004-0663

Scott Keep, Esq.
Office of the Solicitor
U.S. Department of the Interior
1849 C Street, NW
Mailstop 6456
Washington, D.C. 20240

                                                     _/s/ Salvatore N. Fornaciari_
                                                    Salvatore N. Fornaciari (CT 22684)

HARTFORD: 635458.01

# EXHIBIT

# A

# KENTTribune.com

Monday, March 21 2005

## NEWS ON KENT

2/2/2005 7:09:00 PM                                                   Email this article • Print this article

# Two Kent Selectmen Clash over What Constitutes a Conflict of Interest

**By Sharon Hartwick**

A disagreement has surfaced between two Kent selectmen over whether one of the selectmen should have actively participated in a private citizen group's efforts to overturn a decision to recognize the Schaghticoke Tribal Nation.

The disagreement surfaced at Tuesday night's selectmen's meeting when Selectman Nancy O'Dea-Wyrick read a statement that responded to public comments by First Selectman Lorry Schiesel about O'Dea-Wyrick's participation the citizen's group, Town Action to Save Kent (TASK).

O'Dea-Wyrick, who recently resigned from TASK, prefaced her statement by saying "I wanted to say what is in my heart."

She then read her statement:

"Insinuations that I had a conflict of interest being a Kent Selectman and being a member of TASK (Town Action to Save Kent) have been made. I believe that TASK has complemented the town's efforts. Conflict of interest innuendos disturb me and this is why:

"In small towns like Kent, volunteerism is critical to the inner workings of our community. People who are doers are usually tapped to do more and sometimes asked to run for office. Most of Kent's officials hold offices that are unpaid. They hold these positions because they have the best interests of their community at heart. They are volunteers—volunteers don't make money volunteering; they simply give of themselves contributing to their community."

O'Dea-Wyrick then listed examples of possible conflicts of interest that related to all the selectmen, including service by each of the selectmen at their churches, at local schools, and as members of the Kent Memorial Library.

"If Lorry Schiesel votes on her health benefit package is that a conflict of interest?" O'Dea-Wyrick asked.

O'Dea-Wyrick concluded her statement:

"People are elected, appointed or invited to take on volunteer positions for many reasons, good judgment being one of them. We must trust volunteers to use that good judgment, recusing themselves as appropriate. Assuming the worst only demeans, twists and distorts their good work. Let's not scare our volunteers away but embrace them with a very large thank you. We need them."

After O'Dea-Wyrick read her statement, the selectmen didn't discuss the issue at Tuesday night's meeting.

However in a phone interview Wednesday, Schiesel did comment on O'Dea-Wyrick's statement.

"I think she somewhat misses the point," said Schiesel. "There are obvious conflicts of interest and then there are appearances of a conflict of interest--and that can be as damaging to the government function as well...(there are) so many fine lines that can create the appearance of a conflict of interest."

Schiesel said that town officials have to be very sensitive to any conflict of interest and "it's true of all volunteers."

Schiesel said she was invited to serve on TASK's board early on but thought it was inappropriate for a number of reasons, including the ongoing litigation.

Asked later for comment on Schiesel's position, O'Dea-Wyrick said:

"Of course we have to be careful. That's a part of the judgment that I was talking about. We all have to be responsible. We know what's right and what's wrong. We all just need to go back to work. Let's get on with the business of the town."

Ironically, the debate over conflicts of interest in Kent coincides with efforts by Hartford lawmakers to develop a code of ethics at the level of town and municipal governments.

On Monday night, Schiesel said that she attended a state-sponsored public hearing in Torrington with other town officials who were members of the Northwest Council of Government.

The state legislature intends to mandate a model code of ethics for the state and region and set up a commission to handle complaints. The new law will affect employees, officials and volunteers in every town, said Schiesel.

She said one concern she and other local officials have voiced is that the new laws could discourage volunteerism.

"Our point has been we can't be so restrictive to stop volunteerism – and in that respect I agree with Nancy," said Schiesel.

Schiesel said that she believes it is important for her to speak out and address the reality that there can be conflicts, especially in small towns where those serving on committees may end up working with friends, family members or business associates in other endeavors.

"I consider it my responsibility to talk about these issues," said Schiesel. "...I agree we can't bury our heads in the sand anymore. People get into conflicts or the appearance of conflicts – and it's not always just financial."

In other business at the Selectmen's meeting, volunteerism -- or, rather, the lack of volunteers -- was also on the agenda of the Selectmen's meeting. There are still vacancies to be filled on various town committees, including the Planning & Zoning Commission and the Inland Wetlands Commission.

But the building committee for the new Kent firehouse is starting to come together. John Worthington, Austin Brown, Jean Speck, Eric Epstein and Art Romano, all KVFD volunteers, have signed up. Romano is KVFD president and Epstein is Fire Chief, while Worthington chaired the former KVFD building committee.

The selectmen also agreed to add Todd Cole, Paul Abbott and Chris Garrity, all Board of Finance members, to the committee. And Schiesel will represent the selectmen on the team. The selectmen expressed hope that more people in the community will step forward to get a broader representation.

One member of the ad hoc committee who will not serve on the new Fire House committee is architect Wes Wyrick, who served on the committee in his capacity as a member of the board of directors at the Kent Memorial Library, which owns the land where the current firehouse is located. The intention is to turn the current firehouse over to the Library once the new firehouse is built.

Budgets were also on the Selectmen's agenda. On Feb. 18, the BOS will meet again with the BOF to resolve the five-year capital plan and budget. At the top of the list are two small bridges in Macedonia State Park that need to be replaced. The original estimate was $110,000, but Schiesel said they're now estimating the cost could be $50,000 higher.

Schiesel said the two boards will hopefully work out all the numbers in the five-year plan at the next session.

"We used to quibble about everything. Now we do it together," she said.

The selectmen also revisited health insurance costs for town employees and officials. As costs have risen dramatically at Region One, the town now expects to split off from Region One and adopt an individual plan with Anthem Blue Cross Blue Shield, which is more economical.

At issue are the final numbers and what employees should contribute to the premium and co-pays. The selectmen want to keep the present six percent contribution for existing staff and escalate it over a period of years to 20 percent, although there's some disagreement on the timeline. New hires would have to contribute 20 percent from the start.

In other matters, O'Dea-Wyrick, who is also the chairman of the Kent Center School building committee, presented a summary of all the final costs for the renovation and construction of the school. Of the $8,200,000 appropriated for the project, her figures showed an anticipated total expenditure of $8,199,331. The state granted the town $2 million for the project.

After interviewing five on-call engineering services firms over the past few weeks the selectmen unanimously agreed to hire Lenard Engineering,

Inc. based in Winsted and Storrs.

The firm replaces Berkshire Engineering, which had provided the town with consulting services for the last seven years.

Schiesel also announced that David Anderson, Assistant Secretary of the Bureau of Indian Affairs and head of the agency, resigned on Mon. Last year he had recused himself from dealing with federal recognition issues because of his involvement in casino and gaming enterprises. His resignation takes effect in two weeks.

""I think it's a good thing," said Schiesel. I had a problem that he could recuse himself from half of his job." She said hopes Anderson's replacement will be "objective" and "work within the bounds of the agency."

On a lighter note, Schiesel asked O'Dea-Wyrick and selectman Dan Soule to join her in proclaiming 2005 as "the year of the barn" in Kent.

Marge McAvoy, executive director of the Kent Historical Society, informed Schiesel that the Smithsonian Institute has chosen the town as one of four locations in the state to host the traveling exhibit, "Barn Again! Celebrating an American Icon," in 2005.

The exhibit will be displayed at Seven Hearths, the Historical Society's museum house on Route 7 from mid-July through Labor Day. Sponsored by the Conn. Humanities Council in collaboration with the Smithsonian, it explores the barn as an architectural structure and looks at the origin and fate of the barn in its roles as warehouse, factory and legend. The show will also explore the role of barns in the history and economy of Kent and the state.

The planners hope to tie the exhibit in with activities at the Sloane-Stanley Museum near Seven Hearths and arrange for other events, including tours of local barns, an art show and maybe a barn dance. Schiesel said the Chamber of Commerce is also involved in making it a big event for the entire town.