UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | NO. H-85-1078(PCD) |
| v. | ) | |
| | ) | |
| 43.47 ACRES OF LAND, MORE OR LESS, | ) | |
| SITUATED IN THE COUNTY OF | ) | |
| LITCHFIELD, TOWN OF KENT, et al, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | * * * * * * * * * |
| SCHAGHTICOKE TRIBAL NATION | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | NO. 3-98-CV 01113 (PCD) |
| v. | ) | |
| | ) | |
| KENT SCHOOL CORPORATION, INC., et al | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | * * * * * * * * * |
| SCHAGHTICOKE TRIBAL NATION | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | NO. 3-00-CV 0820 (PCD) |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA AND | ) | |
| THE CONNECTICUT LIGHT AND | ) | |
| POWER COMPANY, et al | ) | |
| Defendants. | ) | June 15, 2005 |

**SCHAGHTICOKE TRIBAL NATION'S
MOTION TO AMEND SCHEDULING ORDER AND
FOR EXPEDITED HEARING AND STATUS CONFERENCE**

## <u>I. Introduction.</u>

The Schaghticoke Tribal Nation ("STN") moves the Court to amend the May 8, 2001

scheduling order, as subsequently amended (the "Amended Scheduling Order"), to protect the

court's jurisdiction and the parties' and the public's interest in the fair resolution of these

**ORAL ARGUMENT REQUESTED**

consolidated cases, threatened by recent unanticipated developments.   Specifically, the Interior

Board of Indian Appeals ("IBIA"), reviewing multiple requests to reconsider the Positive Final

Determination to acknowledge STN as an Indian Tribe under Federal law, issued in response to

an unexplained action by the Office of Federal Acknowledgement ("OFA", formerly the Branch

of Acknowledgment and Research, or "BAR") a decision on May 12, 2005 to vacate and remand

the positive Final Determination to the Assistant Secretary for Indian Affairs. In re Federal

Acknowledgment of Schaghticoke Tribal Nation, 41 IBIA 30 (May 12, 2005)[hereinafter, STN

Remand, Exhibit A].

       As demonstrated below, the process before the IBIA was unacceptably compromised by

an ultra vires  filing made by OFA after briefing had closed before the IBIA. Office of Federal

Acknowledgment, Supplemental Transmittal to IBIA (Dept. of Interior, Dec. 2, 2004)

[hereinafter, Supplemental Transmittal, Exhibit B]. In that filing, the OFA suggested that a

central portion of the Final Determination under review was erroneous and should not be relied

upon by the IBIA to affirm the Final Determination. The OFA did not explain the basis of its

purported error or indicate precisely how or if it affected the ultimate conclusion. OFA on more

than one occasion rejected the Tribe's request for technical assistance to explain its submission to

the IBIA and permit further clarification.  OFA Letter rejecting STN's request for technical

assistance, January 10, 2005 [hereinafter, OFA Rejection Letter, Exhibit H; OFA's opposition to

STN's Mot. for Clarification Motion, February 24, 2005 [hereinafter, OFA's Opposition to Mot.

for Clarification, Exhibit I. The process has been further impaired by the Acting Principal

Deputy Assistant Secretary's decision to preclude STN from participating in any explanation or

cure of the supposed error on remand. Letter from Acting Deputy AS-IA to Velky, May 23, 2005

[hereinafter, AS-IA to Velky, Exhibit F].   To rest the decision on information to which STN is

denied access violates the most basic principles of fundamental fairness.

       For the reasons set forth below, STN requests that the Court amend the Scheduling Order

by ordering that the Acting Assistant Secretary may not publish a reconsidered Final

Determination without OFA  providing STN an explanation of the Supplemental Transmittal and

its effect on the analysis and conclusions with respect to STN's documented petition for federal acknowledgment, and  to further order that the Department allow STN to supplement the record for the historical periods for which the positive conclusion of the Final Determination may no longer be in force.

STN further requests that the Court expedite its decision on this motion pursuant to Rule 7(a)(1) of the Local Rules of Civil Procedure, for good cause shown.  Unless this Court acts promptly, the Reconsideration will go forward and may even reach a final conclusion without STN's opportunity to obtain technical assistance and supplement the record as required.  Thus, good cause exists for the Court to issue its decision as soon as possible and the Court need not wait for the expiration of the 21-day period ordinarily permitted for filing opposition briefs, but should instead impose expedited briefing and expedited consideration.

## II.  Background.

### A.  The Amended Scheduling Order.

The Amended Scheduling Order issued by the Court in these consolidated cases governs the STN's petition for tribal acknowledgment pending before the Bureau of Indian Affairs. United States v. 43.47 Acres of Land, Scheduling Order (D. Conn. May 8, 2001), as subsequently amended [hereinafter, Amended Scheduling Order, Exhibit C]. Through this case management order, the Court has monitored and exercised control over the BIA consideration of the STN's recognition petition in connection with STN's land claims in the three pending cases. The recognition process is a daunting one, requiring burdensome and exhaustive research and analysis.  BIA and OFA, with their research expertise in this field, are charged, through their rules and procedures (such as the technical assistance meeting), with guiding Indian tribes through the difficult recognition process.  See, e.g., 25 C.F.R. § 83.10(b), (c)(1) and (j)(1).

In the present case, the Amended Scheduling Order has given third parties unprecedented input in that process.  The Order was the product of months of intensive negotiations between Attorney General Blumenthal and representatives of his Office, the Office of the U.S. Attorney for the District of Connecticut, counsel for the Tribe, all other parties and <u>amici</u> and this Court to ensure timely consideration of tribal status, fundamental to resolution of the land claims pending in this court.  The Amended Scheduling Order further aims to ensure full disclosure, opportunity to be heard, and generally to protect the integrity of the recognition process.  It now needs to be amended to protect those goals on behalf of STN.

**B.  Relevant Administrative Proceedings.**

On February 5, 2004, in accordance with Paragraph (h) of the Scheduling Order, the Department of Interior published its Final Determination.  Final Determination to Acknowledge the Schaghticoke Tribal Nation, 69 Fed. Reg. 5,570 (Feb. 5, 2004).  That Final Determination announced the Department's intent that STN be acknowledged as an Indian Tribe under federal law, which would entitle the Tribe and its members to the full status and benefits of all other federally-recognized tribes and their members.

Thereafter, as required by Paragraph (j) of the Scheduling Order, the parties and <u>amici</u> engaged in further negotiations regarding whether to implement administrative review through reconsideration before the IBIA (25 C.F.R. § 83.11)  or whether subsequent review would be accomplished instead before the District Court under the Administrative Procedure Act ("APA")(5 U.S.C. §§ 551 <u>et</u> <u>seq.</u>).   The parties and <u>amici</u> agreed that the IBIA review procedures would be available and that any additional review under the APA in the District Court would be filed only at the end of the administrative proceedings when the agency decision

is final and effective.[1]  Five timely requests for reconsideration were subsequently filed with the

IBIA by the deadline of May 5, 2004.   The Tribe's response, opposing all of the requests for

reconsideration of the positive determination, was timely filed on November 29, 2004.

Immediately after STN filed its last submission with the IBIA on the challenges to the

positive Final Determination of the STN, OFA filed with the IBIA an unprecedented

"Supplemental Transmittal" memorandum calling into question its own Final Determination.

Supplemental Transmittal, Exhibit B.  It questioned the endogamy analysis utilized in the Final

Determination to support the finding that the Tribe had met the burden of proof for criterion (b)

[community] and criterion (c) [political authority] of the recognition regulations.[2]  It provided no

---

[1]  Upon the joint request of the parties and <u>amici</u>, the Court amended Paragraph (k) of the Scheduling Order to read
as follows:

> (k) Any request for judicial review of the final decision under the [APA] by any
> party or <u>amici</u> to these cases shall be filed within 90 days of its effective date
> and shall be filed in this court as a case related to the above-captioned cases.

Amended Order, February 27, 2004.

[2]  Assessment of this single social phenomenon may dramatically effect whether STN has satisfied its burden under
the regulations.  Endogamy describes a practice of choosing marriage partners from within a social group, rather
than from outside it.  The regulations deem endogamy to be good evidence of community.  See 25 C.F.R. § 83.
7(b)(1)(i).  Further, endogamy rates higher than 50% satisfy the petitioner's burden of showing political authority
for the relevant period – usually measured on a decade by decade basis. See 25 C.F.R. §§ 83.7(c)(3) and
83.7(b)(2)(ii); see also Bureau of Indian Affairs, Branch of Acknowledgment and Research, The Official
Guidelines to the Federal Acknowledgment Regulations, 25 C.F.R. 83 (September 1997), at 45-46 [hereinafter,
"Final Guidelines"].  The STN Final Determination found that STN endogamy exceeded 50% for the decades
from 1800 to 1820 and from 1840 to 1870, a showing sufficient in itself to satisfy criterion (c) for that period.
The Transmittal later questioned the analysis underlying that conclusion.   Without further explanation of the
effect of any changed analytical approach, STN has no way to know if the Department has revoked its
conclusion as to criterion (c) for the period in question.  That should have been clarified before IBIA review.
See 25 C.F.R. § 83.7(m)(AS-IA shall acknowledge a petitioner upon a final determination that the petitioner has
satisfied each of the mandatory criteria in § 83.7, or shall decline to acknowledge the petitioner upon a final
determination that the petitioner fails to satisfy any one of the criteria in § 83.7).  The tribal acknowledgment
regulations do not provide an opportunity for the AS - IA unilaterally to alter, or vaguely hint at the possiblity of
reversing, a Final Determination before the IBIA renders its decision. <u>See</u> IBIA process described at 25 C.F.R.
83.11.

explanation of its change in position and no clear statement of how this position would affect the ultimate disposition of the matter.

The Transmittal, filed three days <u>after</u> the close of the period permitted for the STN's answer brief to the reconsideration requests before the Board, explains that OFA may have unintentionally deviated from "prior precedent in calculating the rates of marriages under 83.7(b)(2)(ii) . . ." for the Schaghticoke's endogamous marriage rates for part of the 19th Century. Supplemental Transmittal, Exhibit B, at 2-3. In light of this alleged mistake, the Supplemental Transmittal concludes that the "analysis under 83.7(b)(2)(ii) in the Summary [under the Criteria for the Final Determination] . . . should not be affirmed on these grounds absent explanation or new evidence." <u>Id.</u> at 3.

Despite this extraordinary admission of apparent error, the Supplemental Transmittal makes no attempt to resolve the confusion it creates. It does not explain how the STN endogamous marriage rates were calculated for the Final Determination, how following any different precedent might have caused the rates to be calculated differently, or what effect this change would have on the outcome of the determination.[3] As the record stood before the IBIA, and as it now stands, neither the IBIA, the Court, nor any party can divine what OFA did, is doing, or proposes to do with respect to the analysis of Schaghticoke endogamy in the 19th century.[4] Moreover, as explained below, the Agency's new advice conflicts with its long established guidelines and practice.

---

[3]  It does admit that a "material mathematical error" diminishes the calculation as to one decade of the Nineteenth Century. But doesn't say what the error is, nor the methodology applied. Supplemental Transmittal, Exhibit B, at 3. In its November 29, 2004 filing before the IBIA, STN noted that OFA's calculations were lower than STN's, but because OFA still reached a positive result, the difference was not then material, and STN did not further object.

[4]  The substance and timing of the Supplemental Transmittal distorted IBIA's evaluation of the Reconsideration requests. The OFA's caution against affirming the endogamy analysis may have undermined a critical foundation for the AS-IA's conclusion that STN had met its burden of demonstrating political authority for the

On February 3, 2005, STN filed a Motion for Clarification with the IBIA, arguing that the IBIA could not properly evaluate the record when the OFA itself had withdrawn a portion of its decision, but had not explained or replaced its reasoning, nor had it clarified the resulting effect on the Final Determination. STN Motion for Clarification of Supplemental Technical Assistance Transmittal, IBIA (Feb. 3, 2005), at 3 [hereinafter, Mot. for Clarification, Exhibit D]. Most significantly, the OFA cautioned that the endogamous marriage issue required "explanation or new evidence" before it could form the basis of a Final Determination. Yet, OFA allowed for no explanation, it permitted no new evidence, and continues to do so.[5] While Assistant United States Attorney John Hughes, in a letter dated June 1, 2005 written on behalf of the Department, has suggested that STN has already had an opportunity to respond to the issue as raised by the State's reconsideration request, STN has not. Letter from Hughes to Wiechmann, June 1, 2005)[hereinafter, Hughes Letter, Exhibit E]. STN prepared its response before the IBIA in reasonable reliance on OFA's stated analysis and conclusion in the Final Determination. Even then, OFA's analysis was not adequately explained,[6] and the Supplemental Transmittal, noting

---

period in question. Without that conclusion, the petition could not succeed. STN has a right to know whether it must remedy a petition deemed defective or to defend a successful one. And STN has a right to know that before the agency closes the administrative record.

[5] The Hughes Letter suggests that future agency action may compound the confusion:

> The reconsidered decision may provide an explanation for changing precedent, or, may recalculate the marriage rates, which may or may not impact the result, or, potentially, may find it unnecessary to address the issue.

Hughes Letter, Exhibit E, at 2. Thus, the agency's final contribution to the administrative record may – or may not – explain its position for ultimate review.

[6] For example, the Final Determination failed to explain critical assumptions, like how it evaluated evidence regarding the duration of marriages. Instead of explaining the facts and logic behind the endogamy patterns analysis, as required by the regulations, the AS - IA simply published the raw data and the conclusions of the OFA's analysis. The principle that a clear explanation of the basis of the decision should be provided to petitioners is found in at least three places in the tribal acknowledgment regulations; see 25 C.F.R. 83.10(h) - the AS - IA will provide a report discussing the evidence, reasoning, and analysis of the basis of proposed findings; 83.10(j)(1) and (2) - the AS - IA will provide informal and/or formal technical assistance to further explain the

errors without identifying or remedying them, confused the situation further.  STN has not had

an adequate opportunity to participate in the agency's decision making.

Because OFA submitted its Supplemental Transmittal only after STN had completed its

response to the pending requests for reconsideration in accordance with the IBIA scheduling

order, STN had no opportunity to understand and comment on the changes that transmittal

created to the Final Determination.  OFA denied STN's subsequent request for technical

assistance.  OFA Rejection Letter, Exhibit H.  The Tribe's request that the IBIA order the OFA to

provide technical assistance concerning the meaning and effect of OFA's Supplemental

Transmittal was still pending before the IBIA when the Final Determination was vacated and

remanded on May 12, 2005.

Yet, even while denying STN an opportunity to participate, the IBIA based its ruling in

large part on the uncertainty created by OFA's Supplemental Transmittal.  STN Remand, Exhibit

A.[7] The IBIA also described and referred to the Assistant Secretary other alleged grounds for

reconsideration that fell outside the IBIA's jurisdiction, as required by 25 C.F.R. § 83.11(f)(2).

Following the IBIA decision, STN renewed its request for technical assistance and an

opportunity to confront and respond to the OFA's new analysis of critical issues supporting the

Positive Finding on criterion (c), (25 C.F.R. §83.7(c) for a substantial period of the relevant

---

evidence, reasoning, and analysis of the proposed finding; and 83.10(l)(2) - the AS - IA will publish a summary
of the (final) determination in the Federal Register.

[7] The IBIA also based its decision in part on its decision issued the same day rejecting the probative value of
evidence of implicit State Recognition in the consideration of the Eastern Pequot Acknowledgement Petition.
STN Remand, Ex. A at 34-36 (citing In re Federal Acknowledgment of the Historical Eastern Pequot Tribe, 41
IBIA 1 (May 12, 2005).  Both factors have primarily affected the determination of whether the Tribe has
satisfied criterion (c) for portions of the 19th century.

record. Despite the startling Supplemental Transmittal, the secrecy surrounding the OFA's

change of position, and the absence of an opportunity for STN to respond to the changed context

of the Request for Reconsideration before the Final Determination was vacated, the Acting

Principal Deputy Assistant Secretary-Indian Affairs ("AS-IA") issued a letter on May 23, 2005,

setting forth the restricted procedures that will govern the Reconsideration on remand from the

IBIA. AS-IA to Velky, Exhibit F.   If OFA had discovered the alleged error earlier in the process,

STN would have had the opportunity to respond under the normal rules.  Now, the Acting

Assistant Secretary has rejected STN's request for a technical assistance meeting to clarify the

Supplemental Transmittal, and similarly refuses consultation, unsolicited arguments, evidence,

comments and/or briefings.  Id.  The Remand procedures will thus deny STN's opportunity to

participate in a meaningful fashion. The agency has announced its intention to issue a

reconsidered final determination by September, 12, 2005 - - without any further evidence or

explanation, if it so chooses – notwithstanding the Supplemental Transmittal's suggestion that the

analysis of endogamous marriages should be evaluated in light of an "explanation or new

evidence."  Supplemental Transmittal, Exhibit B, at 3.

While the Hughes Letter correctly notes that "the regulations do not expressly provide for

technical assistance during reconsideration," Hughes Letter, Exhibit E, at 2, neither do the

regulations foreclose such assistance, made necessary by the uncertainty created by the

"Supplemental Transmittal."  The Supplemental Transmittal itself is not authorized on the face of

the regulations, and the situation it created – casting into question the analysis and conclusion of

the Final Determination – is equally unprecedented.  Simple fairness requires that STN, the

petitioner in the proceeding, have an opportunity to evaluate the OFA's analysis and respond to

any changed position.  The BIA's announced intention to deny that opportunity is an attempt to

rely selectively only on express regulations to limit the petitioner's rights in this proceeding.  To

do so after ignoring the express regulations to STN's detriment hopelessly confuses the administrative record and deprives the petitioner of meaningful input.

As a party to the actions in this Court, the Department is bound by the Court's Amended Scheduling Order, which established rules and procedures to ensure a fair and open recognition process. The Supplemental Transmittal was not contemplated by the Regulations, and neither it, nor the situation it created, was contemplated by the careful procedures specified in the Amended Scheduling Order. The extraordinary situation requires that STN, the petitioner in the proceeding, have an opportunity to evaluate the OFA's analysis and respond to any changed outcome. Furthermore, although the Hughes Letter indicates that "solicited" comments, arguments or evidence are not foreclosed, Hughes Letter, Exhibit E, at 2-3, these opportunities should be allowed as a matter of right - - not at the agency's discretion. The BIA does not have discretion to deny STN the right to seek reconsideration of a final determination -- including one whose finality has not yet been established.

The BIA's announced intention to deny STN participation at this critical stage violates the Department's regulations, offends due process, and undermines the principles of fairness and disclosure on which the court's Amended Scheduling Order rests. The court must intervene to ensure that the process remains fair for all concerned.

### III. Argument.

**A.   The Court Should Amend Its Scheduling Order To Protect The Integrity Of The Recognition Process, Threatened By OFA's "Supplemental Transmittal," Its Timing, And STN's Exclusion From Meaningful Participation.**

As Petitioner, STN has a fundamental right to meaningful participation in the DOI process evaluating the Tribe's Petition for Federal Acknowledgment. The Regulations governing the process, set forth at 25 C.F.R. Part 83, preserve those rights and set forth express protections, including the petitioner's right to seek reconsideration of a negative final determination. 25

C.F.R. § 83.11(a)(1). The Amended Scheduling Order, as the product of negotiations among the parties, amici and this Court, granted unprecedented access to tribal documents to interested third parties (waiving privacy concerns) thereby permitted third party involvement far beyond that normally available under the Regulations.[8] While one goal of the Amended Scheduling order is to ensure timely resolution of tribal status, another is to ensure all parties have a meaningful opportunity to participate. That should never come at the cost of abridging STN's rights, as petitioner, otherwise available under the regulations. Although the OFA issued its Final Determination within the time required by paragraph (h) of the Amended Scheduling Order, its subsequent actions undo the initial compliance and violate the spirit, if not the letter, of that Order.

By filing the "Supplemental Transmittal" after STN completed its last submission to the IBIA, the OFA removed the finality of the Final Determination, evading the court ordered scheduling requirement and the viability of the orderly process established by 25 C.F.R. Part 83. Because the OFA has so far resisted explaining its changed position and what impact it has on the conclusions reached in the Final Determination, that scheduling requirement has still not been met. STN has been deprived of an opportunity to understand and respond to the AS-IA's true Final Determination, and has not had an opportunity to file and support its own request for reconsideration, in the event that the OFA's revised conclusions are no longer favorable. By now closing the reconsideration process, the Department has virtually ensured that the Reconsidered Final Determination, subject only to APA review, will be published without the meaningful

---

[8]  The federal acknowledgment process is designed to clarify the government to government relationship between the United States and an Indian Tribe. The Amended Court Order provided enlarged third party participation in light of the associated adversarial proceedings.

participation required by the regulations, by the Amended Scheduling Order, and by fundamental fairness.[9]

The Department cannot blindly adhere to the 120 day deadline, nor rely on the lack of "express provision" for technical assistance to deny STN an opportunity to respond on the record in the face of Department's own extraordinary behavior in removing the finality from its own "Final Determination." To do so would erode the very bedrock of fairness and disclosure on which the Amended Scheduling Order rests. Accordingly, this Court should preserve the orderly conduct of the recognition process by giving STN a fair and meaningful opportunity to participate in the remand process. See Proposed Amendment to Amended Scheduling Order [hereinafter, Proposed Amendment, Exhibit G].

The Supplemental Transmittal does not rescind the AS-IA's Final Determination. Rather, it urges that the 83.7(b)(2)(ii) marriage rate analysis "should not be affirmed … absent explanation or new evidence." Supplemental Transmittal, Exhibit B, at 3 (emphasis added). While the Supplemental Transmittal calls for explanation, none was provided by OFA during the IBIA appeal process, neither to the IBIA Judge (as expressly provided under the regulations), nor to STN, despite STN's requests to OFA and the IBIA. (The regulations are silent on the petitioner's ability to obtain technical assistance during this phase of the process; the Department has repeatedly used its discretion to deny STN's request for clarification.) Such explanation is a prerequisite for a fair and informed review of the requests for reconsideration then before the IBIA and, now in the Assistant Secretary's reconsideration itself. The Supplemental Transmittal

---

[9]. If the Court were to relegate the matter exclusively to APA review of the final decision, any remedy would necessarily add years of delay that would be unfair to STN and undermine the Amended Scheduling Order. One of the goals of the Amended Scheduling Order has always been to resolve these protracted cases in a timely fashion. It is neither efficient nor fair to defer intervention until after a questionable process can prefer a suspect result.

clouds the record on this issue and impermissibly compromised the IBIA review. Continuing failure to provide technical assistance to STN on the subject, and continuing refusal to permit STN to respond to such technical assistance improperly abridges the STN's right to meaningfully participate in the Final Determination of its own petition.

The Supplemental Transmittal purports to identify an error in OFA's analysis that it believes to be material, yet OFA neglected its duty to "designate and transmit" the "critical documents central" to the issue. 25 C.F.R. § 83.11(e)(8). The Transmittal omits any indication as to which portions of the record were employed in the marriage rate analyses; nor does it designate where in the record the Board can identify what assumptions OFA made in determining which marriages to include or exclude in its counts; it is silent as to what assumptions governed OFA's understanding of the duration of marriages; it does not point to any formulas that may have been developed for calculating rates; nor does it specify how any party can ascertain precisely how and to what extent any ultimate endogamy rate analysis might be affected by the approach described in the Supplemental Transmittal. Moreover, OFA offers no explanation as to how its assumptions, formulas and calculations relied upon in the Final Determination differ from those employed by STN in its marriage rate submission or how those calculations and assumptions would change if an alternative methodology were employed. These omissions deny STN the technical information required to evaluate the endogamy analysis at issue in the reconsideration. While it may be true, as the Hughes Letter suggests, that any reconsidered analysis of marriage rates "will be articulated in the reconsidered decision," Hughes Letter, Exhibit E, at 2, that articulation will be provided for the purpose of APA review, and will come too late for STN to respond.

-13-

The Department has, in effect, excluded STN from the process of producing a true Final Determination.  In doing so, the agency has unduly prejudiced STN and deprived STN of the opportunity to participate in a meaningful fashion.  If OFA had revealed (and further explained) its alleged mistake earlier in the process — at least before briefing closed before the IBIA, STN would have had an opportunity to submit other evidence or comment in order to satisfy the criteria and time period at issue, or at least supplement the record for judicial review.  Further, STN would have had the opportunity to appeal any resulting negative Final Determination to the IBIA.  Now, as a consequence of this ad hoc Supplemental Transmittal and the subsequent remand process, the Department has made clear that "no further appeals within the Department are provided for in the acknowledgment regulations and that the reconsidered decision is "final and effective upon publication." Hughes Letter, Exhibit E, at 3.

The Department proposes to conduct its analysis in secret, eliminating STN's opportunity to submit evidence or otherwise participate in the reconsideration process and limiting the value of judicial review.   Based on these unique circumstances, the Court should promptly amend its Scheduling Order to require the Department to open its reconsideration process for STN's meaningful participation.

**B.   The Court should Order The Interior Department To Adhere To Its Own Recognition  Regulations And Guidelines.**

"A precept which lies at the foundation of the modern administrative state is that <u>agencies must abide by their rules and regulation</u>s." <u>Reuters Ltd. v. Federal Communications Comm'n</u>, 781 F.2d 946, 947 (D.C. Cir. 1986)(emphasis added).   This well-settled principle underlies a judicial doctrine rejecting agency action if that agency has failed to comply with promulgated procedures that regulate the rights and interests of parties before it.  See <u>Montilla v. Immigration & Naturalization Serv.</u>, 926 F.2d 162, 166-67 (2d Cir. 1991) (relying upon the "Accardi

Doctrine" to vacate and remand agency's deportation order to be re-examined in accordance with agency regulations).  The "Accardi Doctrine" refers to a 1954 decision of the United States Supreme Court that set aside a deportation order of the Board of Immigration Appeals because the procedure leading to the order did not conform to the relevant regulations.  See id.  (citing United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954); Service v. Dulles, 354 U.S. 363 (1957); Vitarelli v. Seaton, 359 U.S. 535 (1959); Yellin v. United States, 374 U.S. 109 (1963) and others).  The doctrine seeks to preserve the "fundamental notions of fair play underlying the concept of due process."  Montilla, 926 F.2d at 167.

An agency's failure to follow its own established procedures affecting the rights of parties before it has consistently been found to constitute reversible agency error.  See Montilla, 926 F.2d at 167 (distinguishing those cases which involve agency procedures not affecting the rights of parties).  The Supreme Court has pointed out that this doctrine applies not only to formal rules, but also, "[w]here the rights of individuals are affected, [to internal] procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required [by published regulations]."  Morton v. Ruiz, 415 U.S. 199, 235 (1974).

The Administrative Procedure Act (APA) so requires.  See 5 U.S.C. § 706(2) (providing jurisdiction for courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").  Recently, the Tenth Circuit set aside a federal recognition determination because the agency had failed to follow the 25 C.F.R. Part 83 procedures for recognizing an Indian tribe and had not properly waived application of those procedures.  Cherokee Nation of Oklahoma v. Norton, 389 F.3d 1074, 1087 (10th Cir. 2004).

-15-

Acting on the STN petition for federal recognition, the Department has failed to comply with its own rules – both substantively and procedurally.  The unprecedented "supplemental transmittal" memorandum provided to the IBIA on December 2, 2004, by the OFA (after all briefing by the parties had closed) ran the 25 C.F.R. Part 83 federal acknowledgment procedure off the rails.

The regulations include no provisions for a positive final determination that is disavowed by the agency while IBIA review is underway.  Had the final determination been a negative one, however, the STN would have been able to request reconsideration under 25 C.F.R. § 83.11(a)(1) and present new arguments and evidence not considered previously by the agency.  See 25 C.F.R. § 83.11(d).

The STN has repeatedly attempted to clarify how it may provide explanation and new evidence to protect its interests and improve the quality of the final agency action.  The STN's request for technical assistance with OFA was rejected in January.   OFA Rejection Letter, Exhibit H .  The IBIA sustained OFA's objection to STN Motion to Clarify the Dec 2 memorandum, and rejected STN's request for a status conference.  OFA's Opposition to Mot. for Clarification, Exhibit I.  As stated above, subsequent to the IBIA vacating and remanding the petition, DOI has informed the STN that it will not allow any new evidence to be submitted nor will it provide any technical assistance to the STN.   AS-IA to Velky, Exhibit F.

Precluding STN's input is particularly disconcerting because the substantive conclusions regarding the agency's methods for calculating marriage rates as stated in the December 2 Supplemental Transmittal are themselves inconsistent with the published agency guidelines on marriage rate calculations,[10] and are not supported by the agency precedent that was cited in the

---

[10] Bureau of Indian Affairs, Branch of Acknowledgment and Research, The Official Guidelines to the Federal Acknowledgment Regulations, 25 C.F.R. 83 (September 1997), at 45-46 [hereinafter, "Final Guidelines"].

December 2 memo.  See STN brief before IBIA.  In fact, the December 2 memorandum itself acknowledged that the agency applies a variety of methods for calculating such marriage rates. Supplemental Transmittal, Exhibit B, at 3, note 3 ("the term 'endogamy' is a general term in acknowledgment findings to refer to marriage within a group, which can be measured in different ways").

Agency guidelines, in fact, support calculating the marriages in the original manner that the OFA used in its Final Determination on the STN petition.  Following the 1994 revision of the regulations, the BAR issued "Guidelines" for petitioners seeking federal acknowledgment as required by 25 C.F.R. 83.5(b).[1]  Both the Draft Guidelines (1995) and those issued in final form, in 1997, advise petitioners to count the number of marriage choices.  See Draft Guidelines at 109 ("[t]he measurement of 50% applies to the percentage of members of the group that are in such marriages, not to the percentage of marriages which are between members of the group" (emphasis in original)); see also Final Guidelines at 45-46 ("[w]hat's the easy way to show that we have a modern community and had a tribal community in the past?  Did you have, or do you have at some past time: . . . more than half of your group's members marrying each other?").  This advice, nearly contemporaneous with the issuance of the 1994 revised rules, is persuasive proof that BAR's intent in promulgating those rules was to evaluate the behavior of individual members in entering into marriages.  That approach is the one espoused by STN and followed by OFA until its unexplained apparent renunciation in the Supplemental Transmittal.

The preamble to the federal acknowledgement procedures makes clear that the "purpose of the guidelines is to clarify and explain more precisely the kinds of evidence necessary for

---

[1] Bureau of Indian Affairs, Branch of Acknowledgment and Research, (draft) Guidelines How to Petition for Federal Acknowledgment as an American Indian tribe under 25 C.F.R. Part 83 (July 1995) [hereinafter,"Draft Guidelines"].

petitions as well as the administrative procedures for reviewing petitions." 59 Fed. Reg. 9280, 9285 (1994) (emphasis added). These guidelines, the basis for STN's research and submission, and the apparent basis for OFA's original FD, cannot be so easily set aside. The agency is bound not only by is published regulations, but its internal guidelines. See Morton, 415 U.S. at 235. The agency's attempt to do so is nothing short of arbitrary and capricious. The Court should order the DOI to permit technical assistance and allow STN submissions and comment to ensure that the decision making proceeds in accordance with the law and the Department's own rules.

### C. Depriving STN Of Meaningful Participation In The Recognition Process Would Violate The Fifth Amendment Rights Of The Tribe And Its Members To Due Process Of Law.

STN federal recognition is a threshold requirement for its success in the land claims cases before this Court. This Court is supervising the BIA recognition procedure in furtherance of its jurisdiction to adjudicate those pending cases, in which the Tribe must defend against efforts by the federal government to condemn part of the Tribe's already diminished State reservation. Additionally, the Tribe's federal status is also a threshold requirement for its members to obtain important health, housing and education benefits accorded specifically to members of federally recognized tribes. See Greene v. Babbit, 64 F.3d 1266, 1271-72 (9th Cir. 1995) (due process interest properly invoked when tribal recognition is precondition for members' entitlement to fundamental health and welfare benefits). Thus, the ultimate resolution of the Tribe's petition for federal recognition will have significant ramifications for the property rights, both collective and individual, of the Tribe and its members. If the petition wrongfully proceeds without meaningful tribal participation, and if the result is a negative Final Determination, then the Department may have deprived the Tribe and its members of significant property interests without due process of law.

-18-

The Fifth Amendment to the United States Constitution provides in relevant part that "[n]o person shall ... be deprived ... of property, without due process of law." ("Due Process Clause"). A procedural due process challenge requires the Court to determine (1) whether there has been a deprivation of a property interest, and, if so (2) what process is due. Lepelletier v. FDIC, 164 F.3d 37, 45 (D.C. Cir. 1999) (citations omitted).

      1.     STN has important property interests at stake

a) STN has important property interests in the outcome of these land claim cases before this Court. Federal courts have consistently recognized that the Due Process Clause protects certain intangible property rights, including the right to pursue a cause of action created by a federal statute. See Barrett v. United States, 689 F.2d 324, 332 (2d Cir. 1982) (Plaintiffs had a "federally protected right not to be deprived of their property interest in [a Federal Tort Claims Act] action without due process"), cert. denied, 462 U.S. 1131 (1983); see also Tulsa Prof'l Collection Serv., Inc. v. Pope, 485 U.S. 478, 485 (1988) (unsecured claim against an estate considered property protected by the Fourteenth Amendment and by reasonable extension, the Fifth Amendment); Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1003 (1984) (surveying types of intangible property interests protected by Fifth Amendment).

Here, STN's defense in the subject 43.47 acres and its causes of action in its other land claims are brought pursuant to the Nonintercourse Act, 25 U.S.C. § 177, which provides STN a cause of action "to prevent unfair, improvident or improper disposition by Indians of lands owned or possessed by them to other parties," as intended by the Act. Golden Hill Paugussett Tribe of Indians v. Weicker, 39 F.3d 51, 56 (2d Cir. 1994) (quoting Federal Power Comm'n v. Tuscarora Indian Nation, 362 U.S. 99, 119 (1960)). STN's pending land claims under the

Nonintercourse Act are established by federal law, and are clearly protected by the Due Process Clause.

If the Court ultimately uses the Department's final determination concerning federal recognition, it will affect these actions that are based on the Nonintercourse Act. As discussed above, the timing of the Supplemental Transmittal and the closing of the remand process has, and will prejudice STN. If OFA had disclosed (and explained) its alleged mistake before the close of IBIA briefing, or if the decision had been sent back to OFA at that time for clarification, STN might have filed its own request for reconsideration. At least STN should have had an opportunity to respond as necessary to satisfy or challenge any (still unidentified) critical deficits in its proof. Without these opportunities, the Department might wrongfully publish a negative reconsidered decision. STN would then have no opportunity to appeal such a finding to the IBIA. Thus, STN could be deprived of its only defense – federal recognition – to the federal government's condemnation of its land in the 43.47 Acres case. Absent federal recognition, STN could lose not only its only legal defense to save its land, it will also be deprived of the causes of action in its other land claims which it is currently pursuing, all of which are statutorily conferred property interests protected by the Due Process Clause.

       b.      Individual members of STN have cognizable property interests meriting due process protection. Greene, 64 F.3d at 1271-72. The denial of federal recognition will prohibit individual STN members from receiving badly needed heath and welfare entitlements which the federal government provides only to members of federally recognized Indian tribes. The Greene case concerned a Tribe improperly denied recognition, tribal members whose benefits had been eliminated following an earlier BIA decision to drop the Samish from the list of federally

recognized Tribes. Once acknowledged, STN's members will be entitled to the same benefits to which the Samish sought (and ultimately gained) reinstatement.

Greene establishes that recognition of a tribe invokes such fundamental interests that due process must govern the Department's behavior. Id. at 1275. The Ninth Circuit specifically admonished the Department:

> Here the interests affected by meeting threshold eligibility requirements for the myriad federal benefits available to Indians is very great. The risk that such eligibility might unfairly be denied is real because of the lack of procedural safeguards. While the government prefers to view its determination as a benign and paternalistic one, this litigation has been both protracted and highly adversarial. . . . Informal decision-making, behind closed doors and with an undisclosed record, is not an appropriate process for the determination of matters of such gravity.

Id. In this case, the Department has the opportunity to provide appropriate procedures before an inadequate final action is published. The court should order it to do so.

2. What Procedural Due Process Is Required.

Procedural due process requires that the Department explain its Supplemental Transmittal and allow STN to submit evidence, comment and/or otherwise participate in the remand process. In determining what process is due, the Court must balance three factors:

(1)    the property interest that will be affected by the official action;

(2)    the risk of erroneous deprivation of the property interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and

(3)    the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976); see also Lepelletier, 164 F.3d at 45-46 (quoting Eldridge factors).

In balancing these factors, the outcome weighs in STN's favor for its requested procedure. The first factor clearly weighs in favor of STN because of the importance in preserving STN's defense and causes of action in these various land claims relating to Tribal lands. Further, the Court must ensure that the proceedings adequately protect the individual property interests of the members on whose behalf the Tribe filed its Recognition Petition. See Greene, 64 F.3d at 1271-72. As for the second Eldridge factor, the procedures applied since the Supplemental Transmittal, and those projected for the Reconsideration has and will deprive the Tribe of any meaningful input on marriage rates, clarification of genealogical information and/or the criterion (c) requirement of proving political authority for the relevant period. That flawed process increases the risk that the Department will erroneously issue a negative reconsidered Final Determination. If left to stand, the ultimate record would deprive a reviewing court of the ability to fully assess whether STN should have been recognized in accordance with the published criteria at 25 C.F.R. 83.7(c). The spirit of the Amended Scheduling Order, which has been fashioned to ensure a fair recognition process for all involved, would be undermined. Through the use of the procedures suggested by STN, Proposed Amended Order, Exhibit G, the process could be easily protected without an undue burden to the agency - - the third factor.[11] These safeguards would illuminate the alleged error and help to avoid an uninformed decision.

---

[11]. The burden on the Department would be limited. It would simply open the reconsideration process in light of the Supplemental Transmittal, which indicated, but did not explain or remedy, an alleged error the Department had previously made. Had the Department caught this alleged error before the briefing was completed, it would have incurred essentially the same burden. The Department is being asked to do no more than it would have had to do if *its* alleged error was caught earlier. Neither STN nor its members should be punished for the Department's timing.

**D. This Court's Intercession Is Especially Appropriate In Light Of Increasing Involvement Of Numerous Third Parties In This Recognition Process.**

As the Court is most likely aware, the recognition process as initially agreed upon by the parties, including the Department and the amici in the Amended Scheduling Order, has been caught up in a political maelstrom which threatens the integrity of the recognition process and, thus, the Tribe's ability to fairly protect its position in these three pending actions. Numerous public accusations and political attacks on the process (none of which were presented in this court) have brought into question whether the STN can receive a fair consideration of its recognition petition without the Court's supervision and protection.

As the Court will recall, the Scheduling Order has already been modified once to prevent ex parte contacts with representatives of the Department of Interior:

> No non-federal party or amici shall communicate or meet with any officials in the immediate offices of the Secretary of the Interior, the Assistant Secretary of the Interior or the Deputy Commissioner of Indian Affairs with respect to this petition, without two business days prior notification to the other parties.

Amended Scheduling Order, June 14, 2004.

This has not insulated the procedure as various parties created a citizens organization that raised approximately $2,000,000 to influence the STN recognition process. This group then retained one of the most powerful Washington D.C. lobbying organizations to assist them in their goal. The Advocate, "Group Hires Lobbyist in Effort to Overturn Schaghticoke," January 23, 2005, Exhibit J. This has led to the Court's Order of May 20, 2005 granting discovery on the issue as to whether the group or others violated the Court's prior prohibition.

At the same time, certain third parties, amici and others have been aggressively working to influence, even thwart, the recognition and review process that were agreed to by all parties

-23-

and ordered by this Court. While some of these communications may not themselves violate the literal words of the Amended Order, they violated its spirit by applying intense political and publication relations pressure on the parties involved in the recognition process. For example, the Town of Kent on May 6, 2005 sent a letter to James Cason, Associate Deputy Secretary of the Interior, Department of Interior. Town of Kent Notice, May 6, 2005 [hereinafter, Town of Kent Notice, Exhibit K). In that letter, the Town objected to the Department's announced new internal recognition procedures published in the Federal Register on March 31, 2005, 70 Fed. Reg. 61 at 16513-16. The Town alleges that the new guidelines concerning the future tribal recognition process will continue to deprive interested or third parties, such as the Town in the above process, meaningful opportunity to participate in the process and that the process is not transparent. According to the Town, no agency guidelines or rules are adequate to provide the result it seeks. Instead, the Town suggests that only Congress can resolve such problems by asserting exclusive legislative authority over recognition, implying that STN's petition should be similarly resolved.

Connecticut Congressional representatives, the Connecticut Governor and the Connecticut Attorney General have attacked the process by alleging it is fatally flawed, lawless and illogical. See, e.g., Oversight Hearing on Federal Recognition of Indian Tribes, before U.S. Senate Comm. on Indian Affairs, 109th Cong. (2005)(oral statement of M. Jodi Rell, Governor, State of Connecticut, Exhibit L, at 3; written statement of Attorney General Blumenthal, Exhibit M, at 1. Representative Nancy Johnson even introduced legislation that would overturn the BIA's decision to recognize STN as a tribe – the first termination bill since federal repudiation of the termination policy nearly 50 years ago.[12]    Attorney General Blumenthal submitted

---

[12]. Schaghticoke Acknowledgment Repeal Act of 2005, H.R. 1104, 109th Cong. (1st Sess. 2005). As to the repudiation of termination, see, e.g., F. Cohen, Handbook of Federal Indian Law (1982 ed.) at 180-182

testimony suggesting that Congress abolish the BIA's tribal recognition authority and impose an immediate 6-month moratorium on all recognition decisions. Exhibit M, at 1. If these parties truly had issues with the process, why didn't they come to the Court with them? Because the purpose of these actions was to intimidate and influence the decision makers and their recognition process.

---

(discussing proposed Indian legislation in the late 1950s and noting the 1958 public statement of Interior Secretary Fred Seaton refusing to coercively terminate Indian tribes or groups). Cohen characterizes the federal Indian policy of termination ending with the introduction of the self-determination policy in 1961.

## Conclusion

Based on the foregoing, STN requests that the Court amend the Scheduling Order so that the following is mandated:  (1) the BIA will hold technical assistance meetings with the petitioner or any other party who requests such a meeting by July 15, 2005 to explain the OFA Supplemental Transmittal, dated December 2, 2004 and its effect upon criterion (c) of § 83.7(c) of the acknowledgment regulations; (2) within 30 days of this  technical assistance meeting, the Schaghticoke Tribal Nation shall submit all comments, information, documents, analysis or argument concerning the matters raised by the technical assistance meeting and distribute such submission to parties and amici as provided by this order; (3) within 30 days of the Schaghticoke Tribal Nation's submission all parties and amici shall submit all comments, information, documents, analysis or argument concerning the matters raised by the Schaghticoke Tribal Nation submission; (4) the Schaghticoke Tribal Nation shall have 30 days to respond to comments, information, documents, analysis or argument submitted by parties and amici; and (4) within 120 days of the technical assistance meeting, the Assistant Secretary  shall issue its reconsidered Final Determination.  See Proposed Amended Order, Exhibit G.

Lastly, and pursuant to Rule 7(a)(1) of the Local Rules of Civil Procedure, STN further requests that the Court expedite its decision.  That section allows the Court to do so when good cause is shown.  Because the Reconsidered procedure will go forward before discovery takes place or can be concluded and because the Acting Assistant Secretary may otherwise issue his decision before then, good cause exists for Court to issue its decision as soon as possible, to ensure that the process is not improperly influenced.  The Court, therefore, need not wait for the expiration of the 21-day period ordinarily permitted for filing opposition briefs.

Wherefore, STN respectfully requests that the Court grant its Motion to Amend the Scheduling Order.

THE PLAINTIFF/DEFENDANT
SCHAGHTICOKE TRIBAL NATION
BY MCCARTER & ENGLISH, LLC
ITS ATTORNEYS

By _____
Eric Watt Wiechmann (CT 04331)
Salvatore N. Fornaciari (CT 22684)
CityPlace I
Hartford, CT 06103
Telephone: (860) 275-6700
Facsimile: (860) 724-3397

Of Counsel:
Judith A. Shapiro, Esq.
6856 Eastern Avenue NW
Suite 206
Washington, DC 20012

and

Jerry C. Straus, Esq.
F. Michael Willis, Esq.
Hobbs, Straus, Dean & Walker, LLP
2120 L Street, NW
Washington, DC 20037

# CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Schaghticoke Tribal Nation's Motion for Status Conference has been mailed, postage prepaid this 15 of June, 2005 to:

John B. Hughes, Esq.
Chief of Civil Division
United States Attorneys Office
157 Church Street, Floor 23
New Haven, CT 06510

Judith A. Shapiro, Esq.
6856 Eastern Avenue NW, Suite 206
Washington, DC 20012

David J. Elliot, Esq.
Day, Berry & Howard
CityPlace I
Hartford, CT 06103-3499

Loretta Bonos
594 Bendview Drive
Charleston, WV 25314

Jeffrey B. Sienkiewicz, Esq.
Sienkiewicz & McKenna, PC
9 South Main Street
P.O. Box 786
New Milford, CT 06776-0786

Michael J. Burns, Esq.
Law Offices of Attorney Michael J. Burns
57 Pratt Street
Hartford, CT 06103

Jerry C. Straus, Esq.
Hobbs, Straus, Dean & Walker, LLP
2120 L Street, NW
Washington, DC 20037

Giovanna Tiberii Weller, Esq.
Carmody & Torrance
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT 06721-1110

Robert A. Slavitt, Esq.
Slavitt, Connery, & Vardamis
618 West Avenue
Norwalk, CT 06850

James R. Fogarty, Esq.
Fogarty Cohen Selby & Nemiroff
88 Field Point Road, P.O. Box 2508
Greenwich, CT 06836-2508

Susan Quinn Cobb, Esq.
Asst. Attorney General
55 Elm Street
Hartford, CT 06141

Thomas A. Gugliotti, Esq.
Updike, Kelly & Spellacy
One State Street
Hartford, CT 06123

Renita Ford, Esq.
General Litigation Section
Environmental & Natural Resources Division
United States Department of Justice
Post Office Box 663
Washington, DC 20004-0663

Scott Keep, Esq.
Office of the Solicitor
U.S. Department of the Interior
1849 C Street, NW
Mailstop 6456
Washington, D.C. 20240

Salvatore N. Fornaciari (CT 22684)

HARTFORD: 642218.01

-28-