# EXHIBIT A



# United States Department of the Interior

OFFICE OF HEARINGS AND APPEALS
INTERIOR BOARD OF INDIAN APPEALS
801 NORTH QUINCY STREET
SUITE 300
ARLINGTON, VA 22203

| | | |
|---|---|---|
| IN RE FEDERAL ACKNOWLEDGMENT OF THE SCHAGHTICOKE TRIBAL NATION | : : : | Order Vacating and Remanding Final Determination |
| | : : : : : : : | Docket Nos. IBIA 04-83-A IBIA 04-94-A IBIA 04-95-A IBIA 04-96-A IBIA 04-97-A |
| | : | May 12, 2005 |

 This consolidated case involves five requests for reconsideration of the Final Determination to acknowledge the Schaghticoke Tribal Nation (STN) as an Indian tribe within the meaning of Federal law. 1/ The Final Determination (FD) was issued by the Principal Deputy Assistant Secretary - Indian Affairs on January 29, 2004, and notice of the Final Determination was published in the Federal Register on February 5, 2004. 69 Fed. Reg. 5570. As discussed below, the Board vacates the FD and remands it to the Assistant Secretary - Indian Affairs, for further work and reconsideration, in light of In re Federal Acknowledgment of the Historical Eastern Pequot Tribe, 41 IBIA 1 (2005), which is also being decided today. In addition, the Board describes for the Assistant Secretary other alleged grounds for reconsideration that are not within the Board's jurisdiction.

---

1/ Timely requests for reconsideration were filed by (1) the "Coggswell Group," IBIA 04-83-A, a group of individuals described as "descendants of the historical tribe known today as the Schaghticoke Tribal Nation;" (2) the Town of Cornwall, Connecticut, IBIA 04-94-A; (3) the State of Connecticut; the Towns of Kent, Bethel, New Fairfield, Newtown, Ridgefield, Greenwich, Sherman, Westport, Wilton, and Weston; the Cities of Danbury and Stamford; the Kent School Corporation; the Connecticut Light and Power Company; and the Housatonic Valley Council of Elected Officials, IBIA 04-95-A; (4) the Preston Mountain Club, Inc. (PMC) IBIA 04-96-A, a landowner; and (5) the Schaghticoke Indian Tribe, IBIA 04-97-A, a group which has separately petitioned for Federal acknowledgment (petitioner #239).

41 IBIA 30

Background

The "Schaghticoke Indian Tribe," filed a letter of intent with the Department of the Interior in 1981 to petition for Federal acknowledgment. The group was designated as petitioner #79. According to the Assistant Secretary, petitioner #79 later changed its name to the Schaghticoke Tribal Nation of Kent. Proposed Finding Against Federal Acknowledgment of the Schaghticoke Tribal Nation, 67 Fed. Reg. 76,184, 76,185 col. 1 (Dec. 11, 2002). 2/ The Schaghticoke have a state-established reservation located in the Town of Kent, Litchfield County, Connecticut.

The Assistant Secretary initially proposed not to acknowledge STN as an Indian tribe, concluding that there was insufficient evidence, sometimes for substantial periods of time, to find that STN satisfied the criteria for demonstrating the existence of community and political influence or authority within the group, as required by 25 C.F.R. §§ 83.7(b) (criterion (b)) and 83.7(c) (criterion (c)), respectively. See 67 Fed. Reg. 76,184; see also Historical Eastern Pequot Tribe, 41 IBIA at 2-4 (discussing the regulatory requirements for a group petitioning for Federal acknowledgment to demonstrate community and political influence or authority). Although the Proposed Finding (PF) found that the Schaghticoke — like the Eastern Pequot — had been a "[State of Connecticut]-recognized tribe, with a state reservation, from colonial times until the present," it found that the State's relationship with the Schaghticoke was of a "narrower quality" than its relationship with the Eastern Pequot. 67 Fed. Reg. at 76,185 col. 1-2. As a result — unlike the Eastern Pequot determination — the PF for STN concluded that the evidence of state recognition did not provide additional evidence which, when combined with direct evidence, was sufficient to reach a favorable determination. See id. at 76,185 col. 1-2, 76,186 col. 2. The PF found that STN had not shown that it satisfied criterion (c) from 1800 to 1875, 1885 to 1967, and in the present-day group. Id. at 76,188 col. 3.

After receiving comments and additional evidence, the Principal Deputy Assistant Secretary issued the FD, finding that the evidentiary deficiencies in the petition had been satisfactorily addressed, in part based on additional evidence and in part based on a reevaluation

---

2/ As noted in n.1, supra, a separate petitioner (#239) for Federal acknowledgment, which has requested reconsideration of the FD, now goes by the name "Schaghticoke Indian Tribe." As discussed later in this decision, SIT claims that it is the legitimate present-day continuation of the historical Schaghticoke tribe.

of the evidentiary value of the State's relationship with the Schaghticoke. 3/ The FD concluded that STN met all of the regulatory requirements for being acknowledged as an Indian tribe.

For the time period between 1801 and 1875, the FD found that there remained "little direct evidence concerning political influence or authority among the Schaghticoke." 69 Fed. Reg. at 5572 col. 3. For 1801 to 1820, and 1841 to 1870, the FD found that the endogamy rate of marriages within the group was at least 50 percent. Id. at 5573 col. 1; SCE FD at 84. 4/ Under the regulations, if a petitioner can demonstrate that "[a]t least 50 percent of the marriages in the group are between members of the group" at a given point in time, that showing satisfies both criteria (b) and (c) for that time period. See 25 C.F.R. § 83.7(b)(2)(ii), (c)(3). Based on the FD's endogamy rate calculations, STN therefore satisfied criterion (c) for 1801 to 1820 and 1841 to 1870. 69 Fed. Reg. at 5573 col. 1; SCE FD at 84.

In addition, the FD reevaluated what it characterized as "the evidentiary weight given to continuous state recognition with a reservation," 69 Fed. Reg. at 5571 col. 2. It concluded that the State's relationship with the Schaghticoke, which the FD found shared the same general characteristics as the State's relationship with the Eastern Pequot, 5/ "provides sufficient evidence for continuity of political influence within the community, even though direct evidence of political influence is almost absent for two historical time periods," 1820 to 1840 and 1892 to 1936. Id. at 5572 col. 2; see SCE FD at 118-122. The FD also used state recognition as "additional evidence" for finding that STN demonstrated community for 1920 to 1967. See SCE FD at 59-60.

As a result, relying on a combination of new endogamy rate calculations for the group, and the reevaluated significance of the State's relationship with the Schaghticoke, the FD concluded that STN had been able to satisfy criterion (c) for 1801 to 1870, and 1892 to 1936.

---

3/ The FD is contained in a document titled "Summary Under the Criteria and Evidence for Final Determination for Federal Acknowledgment of the Schaghticoke Tribal Nation" (SCE FD), signed Jan. 29, 2004.

4/ According to the Office of Federal Acknowledgment, the term "endogamy" is a general term referring to marriage within a group, which can be measured in different ways. OFA Supp. Transmittal at 3 n.3.

5/ The FD describes the characteristics of the relationship as "the historically continuous existence of a community recognized throughout its history as a political community by the State and occupying a distinct territory set aside by the State (the reservation)." 69 Fed. Reg. at 5572 col. 2.

41 IBIA 32

69 Fed. Reg. 5573 col. 1-2. The FD also found, on the basis of additional evidence, that STN satisfied criterion (c) for the other time periods for which the PF had found the evidence insufficient.

## Discussion

The Board's jurisdiction over requests for reconsideration of final acknowledgment determinations is limited to reviewing four alleged grounds for reconsideration:

(1) That there is new evidence that could affect the determination; or

(2) That a substantial portion of the evidence relied upon in the Assistant Secretary's determination was unreliable or was of little probative value; or

(3) That petitioner's or the [Bureau of Indian Affairs'] research appears inadequate or incomplete in some material respect; or

(4) That there are reasonable alternative interpretations, not previously considered, of the evidence used for the final determination, that would substantially affect the determination that the petitioner meets or does not meet one or more of the criteria in § 83.7(a) through (g).

25 C.F.R. § 83.11(d)(1)–(4).

The party requesting reconsideration bears the burden to establish, by a preponderance of the evidence, that one or more of the grounds for reconsideration over which the Board has jurisdiction exist. 25 C.F.R. § 83.11(e)(9), (10).

If a request for reconsideration alleges additional grounds for reconsideration that do not fall within the Board's jurisdiction, the Board is required to describe those grounds and refer them to the Secretary, if the Board affirms the final determination, or to the Assistant Secretary - Indian Affairs, if the Board vacates and remands it for further work and reconsideration. See 25 C.F.R. § 83.11(e)(10), (f)(1), (f)(2).

41 IBIA 33

State's Request for Reconsideration 6/

    The State challenges the FD's use of "state recognition" on the same grounds raised in <u>Historical Eastern Pequot Tribe</u>, <u>see</u> 41 IBIA at 12. In addition, the State contends that even if the determination to acknowledge the Eastern Pequot tribe were upheld, the FD for STN impermissibly expands the use of the State's relationship as evidence of political influence or authority.

    Today, in <u>Historical Eastern Pequot Tribe</u>, 41 IBIA at 16-23, the Board concludes that the State of Connecticut's "implicit" recognition of the Eastern Pequot as a distinct political body — even if a correct characterization of the relationship — is not reliable or probative evidence for demonstrating the actual existence of community or political influence or authority within that group. The FD for STN used state recognition in the same way that we found to be impermissible in <u>Historical Eastern Pequot Tribe</u>. In addition, we agree with the State that the STN FD gives even greater probative value and evidentiary weight to such "implicit" state recognition, and therefore it constituted a substantial portion of the evidence relied upon. <u>See</u> <u>id.</u> at 21-22. Therefore, in light of our decision in <u>Historical Eastern Pequot Tribe</u>, the Board vacates the FD and remands it for reconsideration in accordance with that decision. 7/

---

6/ The Town of Cornwall and PMC did not submit separate arguments, but adopted the arguments of the State, Towns, et al. For convenience, the Board will refer collectively to these requesters as "the State."

    In its May 21, 2004, Determination of "Interested Party" Status and Board Jurisdiction, at 2-3, the Board found that because the State clearly is an "interested party," as defined in 25 C.F.R. § 83.1, it was unnecessary for the Board to determine whether the co-requesters with the State are also interested parties. Subsequently, the Town of Kent, the Kent School Corp., and the Connecticut Light and Power Co. filed a motion for the Board to confirm their status as interested parties. Particularly in light of the Board's remand of this case to the Assistant Secretary, who apparently treated these entities as interested parties, the Board continues to find it unnecessary to make a separate determination for them in these proceedings, and therefore denies the motion.

7/ The Board notes that as part of STN's answer to the State's request for reconsideration, STN offers what it describes as "new, direct evidence," along with STN's analysis, to establish that STN exercised political influence and authority over its members between 1892 and 1936. STN Answer Br. Ex. E at 1. STN contends that this new evidence and interpretations "minimize[] the need for inference based upon the Tribe-State relationship." <u>Id.</u> at 40. As STN correctly notes, <u>id.</u> at 1, the Board does not have authority to evaluate new evidence for

(continued...)

41 IBIA 34

The State also contends that the FD must be vacated because it misapplied the regulations by using "endogamy rates" instead of "marriage rates" to conclude that STN satisfied the requirements of 25 C.F.R. § 83.7(b)(2)(ii) during certain time periods, which under the carryover provision of 25 C.F.R. § 83.7(c)(3), is also deemed to satisfy the requirement to demonstrate political influence or authority for that time period. The State argues that the FD improperly calculated an "endogamy rate" by counting the number of the group's *members* who were in an endogamous marriage, as opposed to counting the number of *marriages* that were endogamous. It further contends that if marriage rates are calculated in the manner required by the regulations, the percentages for certain time periods fall below 50 percent, and therefore cannot be used to demonstrate political influence or authority. In addition, the State proffers what it alleges is new evidence to show that one individual who was included in the endogamy rate calculations was not Indian, and also argues that the FD incorrectly analyzed other specific individuals. State Request for Recon. at 116-129.

After briefing had concluded in these proceedings, the Office of Federal Acknowledgment (OFA) filed a submission with the Board, offered as "technical assistance," taking the position that the FD "is not consistent with prior [acknowledgment case] precedent in calculating the rates of marriages under [25 C.F.R. §] 83.7(b)(2)(ii)[,] provides no explanation for the inconsistency[, and] there is no evidence that the [FD] intended to deviate from precedent." OFA Supp. Transmittal at 2-3. OFA also stated that "there is a material mathematical error in the calculations for 1841-1850, which when corrected lowers the calculation to less that 50%, whether or not the proper interpretation of the regulations is to calculate "marriages" or "members." Id. at 3. Based on these problems with the FD, OFA stated that "[t]he analysis under 83.7(b)(2)(ii) in the [FD] and the carryover under 83.7(c)(3) * * * should not be affirmed on these grounds absent explanation or new evidence." Id.

In response to OFA's submission, STN filed a motion requesting that if the Board intended to accept and rely on OFA's submission, it should first convene the parties and have OFA "explain[] its methodology and assumptions in analyzing STN marriage rates, clarif[y] its prior and current interpretations of 25 C.F.R. § 83.7(b)(2)(ii), and explain[] how applying its current interpretation would affect the outcome of its analysis of 19th Century STN endogamy." STN Motion for Clarification at 6. OFA, in reply, asserts that STN's request for technical assistance goes beyond what would be appropriate for the proceedings before the Board, but appears more appropriate in the context of a reconsidered final determination, if the Board remands the case or if, following a referral by the Board, the Secretary requests reconsideration. OFA Response to STN Motion for Clarification at 2.

---

7/(...continued)
the purpose it is offered here. On reconsideration, the Assistant Secretary can determine the appropriateness of considering STN's new evidence.

41 IBIA 35

Because we are already vacating and remanding the FD to the Assistant Secretary for reconsideration based on <u>Historical Eastern Pequot Tribe</u>, and because OFA has acknowledged problems in the FD's endogamy rate calculations — at a minimum, inadequate explanation — we conclude that this matter is best left to the Assistant Secretary on reconsideration. We do not decide whether the State's challenges to the endogamy rate calculations would otherwise fall within the Board's jurisdiction under 25 C.F.R. § 83.11(d). On reconsideration, the Assistant Secretary will have to address this issue, taking into account the submissions of the parties in this proceeding, and may consider STN's request for technical assistance, as appropriate.

The State also argues that the remaining direct evidence used in the FD to support its findings of community and political influence and authority for STN in the nineteenth and twentieth centuries is insufficient to sustain such a finding and is unreliable, and that the FD relied on such evidence in an arbitrary and highly selective fashion. <u>See, e.g.</u>, State Request for Recon. at 3, 8, 68-74, 136-143.

The Board concludes that these allegations are best left for the Assistant Secretary to consider and address on remand, as appropriate. First, with few if any exceptions, the time periods relevant to the evidence discussed by the State are ones for which the FD relied upon state recognition or endogamy rates. Reconsideration of the FD based on those two issues may affect the analysis of either the sufficiency or probative value of other evidence for those time periods, particularly if additional or other evidence is taken into account. Second, to the extent the State alleges that the direct evidence is insufficient to sustain the FD's finding of community and political authority for STN, the Board does not have jurisdiction to review the sufficiency of otherwise reliable and probative evidence. Third, even if the Board were to attempt to analyze the reliability and probative value of the evidence discussed by the State, it would be speculative in this context to determine whether the evidence constituted a "substantial portion" of the evidence relied upon. <u>See</u> 25 C.F.R. § 83.11(d)(2); <u>Historical Eastern Pequot Tribe</u>, 41 IBIA at 21-22.

Next, the State contends that the FD impermissibly departed from precedent and the regulations in considering, as part of STN's base membership roll, individuals who had not specifically assented to or been accepted as members. State Request for Recon. at 13, 156-167. This argument is related to arguments raised by SIT and the Coggswell Group, which are discussed below.

41 IBIA 36

For the FD, STN submitted two "membership" lists.  One, a certified membership list, included 271 members.  69 Fed. Reg. 5574 col. 1. 8/  A second list included the names of 42 individuals, who were described as "unenrolled tribal community members."  Id.  The FD accepted both lists as jointly comprising STN's base membership.

Whether the regulations require that the base membership role of a petitioner must consist solely of individuals who are currently enrolled in the group is not an issue that is within the scope of the Board's jurisdiction.  Therefore, we refer this allegation to the Assistant Secretary.

The State also alleges that the FD improperly determined that the Schaghticoke Tribe was an amalgamation or continuation of two pre-existing tribes, the Weantinock and Potatuck.  State Request for Recon. at 167; see 69 Fed. Reg. at 5572 col. 3.  The State discusses what it characterizes as "new evidence," contends that the FD ignored evidence in the record, and argues that the evidence either is insufficient to sustain the FD or conflicts with the FD.  State Request for Recon. at 168, 175.

Although the State's arguments concerning this issue invoke the language of the Board's jurisdiction — e.g., unreliable evidence, new evidence, inadequate research — in substance the State challenges the FD's analysis of the evidence, failure to address conflicting evidence in the record, and the sufficiency of the evidence relied upon.  The Board concludes that it lacks jurisdiction over these allegations, and refers them to the Assistant Secretary. 9/

Finally, the State contends that there is no proper delegation of authority from Congress for BIA to recognize a group as an Indian tribe.  As we conclude in Historical Eastern Pequot, 41 IBIA at 27, that issue is not within the Board's jurisdiction.  Therefore, we refer it to the Assistant Secretary.

---

8/  As originally issued, the SCE FD and Federal Register notice describe STN's certified membership list as having "273 members," but an errata sheet added to the SCE FD in the record states that the correct number is 271.

9/  Even assuming the Board could assert jurisdiction over some of the State's allegations regarding this issue, we would still be inclined to abstain and refer them to the Assistant Secretary, in light of the remand on other grounds and in the interest of administrative efficiency.  Although we express no opinion whether existing or additional evidence may be sufficient to support a favorable reconsidered final determination for the time periods affected by the remand to reconsider state recognition and endogamy rate calculations, if that is not the case, it may be unnecessary for the Department to consider additional issues raised in the requests for reconsideration.

41 IBIA 37

<u>Schaghticoke Indian Tribe's Request for Reconsideration</u>

SIT does not challenge the FD's conclusion that a Schaghticoke tribe should be federally recognized, but contends that it — not STN — is the true representative of the tribe.  In addition, SIT objects that the FD treated its members as "unenrolled members" of STN for purposes of reaching a favorable determination for STN, even though SIT contends that its members are not part of STN and do not recognize STN as the legitimate Schaghticoke tribal government.  A number of individuals on the "unenrolled" members list are on SIT's membership list.

SIT alleges eight grounds for reconsideration, the first four of which are phrased using language from 25 C.F.R. § 83.11(d), which describes the Board's jurisdiction.  The last four allegations, however, contain no separate arguments, but generically "incorporate" SIT's earlier discussion to support allegations that the FD violates due process, violates equal protection rights, is arbitrary and capricious, and undermines the integrity of the federal recognition process.  As discussed below, to the extent that SIT's first four allegations may be construed as falling within the Board's jurisdiction, we reject them on the merits.  We also conclude, however, that SIT's substantive allegations, fairly construed, fall outside the Board's jurisdiction, and therefore we describe them for the Assistant Secretary.

SIT first contend it has "new evidence that could affect the determination.  SIT Request for Recon. at 9-10.  SIT proffers a variety of documents which, it argues, demonstrate that SIT "continues to exist, to function, is recognized by others as the legitimate Schaghticoke Tribe," and that its members are not simply unorganized, "unenrolled" members of STN.  <u>Id.</u> at 9.  SIT argues that the "new evidence" refutes the FD and demonstrates that SIT — not STN — is the legitimate Schaghticoke tribe.

The Board has previously held that if "new evidence" would simply confirm a fact already known to BIA, and one which BIA did not consider determinative, it does not establish grounds for reconsideration under 25 C.F.R. § 83.11(d)(1).  <u>In re Federal Acknowledgment of the Snoqualmie Tribal Organization</u>, 34 IBIA 22, 32 (1999).  SIT's "new evidence" does little more than show that SIT is an active group and claims to be the true Schaghticoke tribe — facts already known to BIA.  Therefore, we conclude that SIT has failed to establish grounds for reconsideration under subsection 83.11(d)(1).

SIT also argues that a substantial portion of the evidence relied upon in the FD was unreliable or of little probative value, <u>see</u> 25 C.F.R. § 83.11(d)(2), because the "unenrolled members" list that the FD considered as part of STN's membership is "fiction" — unreliable evidence of membership.  SIT Request for Recon. at 11.  The "unenrolled members" list, according to SIT, is composed mostly of SIT members, who do not recognize STN as having any legitimacy.

41 IBIA 38

SIT's challenge to the "unenrolled members" list does not really challenge the reliability of the list itself, but instead challenges the Principal Deputy Assistant Secretary's willingness to treat "unenrolled" individuals — including some who are part of SIT's membership — as "members" of STN for purposes of acknowledging STN as an Indian tribe. The FD indicates that the Principal Deputy Assistant Secretary was well aware of a current conflict between STN and the "unenrolled" members. SIT does not contend that the list of 42 individuals fails to reliably identify individuals who were not enrolled in STN, but whom STN contended were nevertheless members of the tribal community that it represents. What SIT takes issue with is the FD's conclusion that these 42 "unenrolled" individuals were sufficiently linked to STN to be considered as "members" for purposes of determining STN's base membership. That conclusion, however, was not dependent on the list, per se, but on other evidence concerning the individuals on the list. SIT disagrees with the FD's decision to treat the 42 individuals as "members" of STN, but we conclude that SIT has failed to demonstrate that the list itself constitutes "a substantial portion of the evidence relied upon" and that it "was unreliable or of little probative value," 25 C.F.R. § 83.11(d)(2).

Next, SIT contends that BIA's research was "inadequate or incomplete in some material respect," <u>see</u> 25 C.F.R. § 83.11(d)(3), because the Principal Deputy Assistant Secretary did not consider SIT's petition and the information contained in it before making a final determination for STN. SIT Request for Recon. at 14-15.

The Board has previously held that to succeed, an allegation that BIA's research was inadequate or incomplete must do more than offer a general description of materials that BIA allegedly should have reviewed or researched more completely. <u>In re Federal Acknowledgment of the Cowlitz Indian Tribe</u>, 36 IBIA 140, 147 (2001); <u>Snoqualmie Tribal Organization</u>, 34 IBIA at 29. Here, SIT contends generally that the Principal Deputy Assistant Secretary should have considered its petition, but it cites no specific evidence from its own petition to demonstrate how the research on the STN petition was inadequate or incomplete in some material respect. In substance, SIT appears less concerned with inadequate or incomplete research, and more concerned with the Principal Deputy Assistant Secretary's failure to review and analyze the existing evidence in the manner suggested by SIT. In this respect, we note that as summarized in one of SIT's exhibits, SIT is in effect asking that the evidence in the record be "reanalyzed" without the "preconceived idea" of one tribe, STN, including "unenrolled" individuals. <u>See</u> SIT Request for Recon., Wojciechowski Paper at 5. This argument is "directed primarily to [OFA's] analysis, rather than to its research." <u>Cowlitz Indian Tribe</u>, 36 IBIA at 145. We reject this argument as demonstrating grounds for reconsideration under 25 C.F.R. § 83.11(d)(3), and conclude that it is outside the Board's jurisdiction.

SIT also argues that there is a "reasonable alternative interpretation of the evidence, not previously considered, that would substantially affect the determination," <u>see</u> 25 C.F.R.

§ 83.11(d)(4), namely that SIT — not STN — is the legitimate governing body of the Schaghticoke tribe.  SIT Request for Recon. at 18-23.

This argument appears to presume that OFA and the Principal Deputy Assistant Secretary were not aware of and did not consider SIT's competing claim to be the present-day continuation of the Schaghticoke tribe.  That presumption is not supported by the PF and FD.  Although the Principal Deputy Assistant Secretary did not agree to consider SIT's petition simultaneously with STN's, she appears to have been well aware of the conflict between SIT and STN, and the implications of that conflict.  See, e.g., Summary under the Criteria and Evidence for Proposed Finding - Schaghticoke Tribal Nation (SCE PF) at 5 (discussing SIT opposition to STN leadership), 30 (discussing changes in group's membership).  In addition, SIT is a party to pending litigation involving the United States, in which SIT claims to be the legitimate continuation of the historical Schaghticoke tribe, entitled to the Schaghticoke reservation, and entitled to pursue land claims on behalf of the tribe:  See SIT Request for Recon. Ex. 10; SCE PF at 3-4.  We also note that during the proceedings, SIT was specifically provided additional time to submit comments.  SCE PF at 3-4.  For a requester to establish grounds for reconsideration under 25 C.F.R. § 83.11(d)(4), it must not only offer a reasonable alternative interpretation of the evidence, but must show that OFA "truly did not consider" it.  See In re Federal Acknowledgment of the Ramapough Mountain Indians, Inc., 31 IBIA 61, 81 (1997).  Assuming, for the sake of argument, that SIT's alternative interpretation is reasonable, we conclude that SIT has failed to demonstrate that OFA "truly did not consider" that STN's petition should have been denied because SIT represents the legitimate Schaghticoke tribal government.  Whether the FD *adequately* considered SIT's competing claim is a distinct issue that we do not address because it is one that falls outside the Board's jurisdiction.  Therefore, we conclude that SIT has failed to establish this as a ground for reconsideration pursuant to 25 C.F.R. § 83.11(d)(4).

Although SIT has failed to establish grounds for reconsideration pursuant to 25 C.F.R. § 83.11(d), it has alleged several grounds for reconsideration that fall outside the Board's jurisdiction, and which the Board will therefore describe for the Assistant Secretary to consider, as appropriate, on remand.  The heart of SIT's challenge to the FD, reflected in all its allegations, is that the FD erred in reaching a favorable determination for STN because it failed to properly or adequately consider SIT — rather than STN — as the legitimate present-day continuation of the historical Schaghticoke tribe, and the Principal Deputy Assistant Secretary erred by not simultaneously considering and deciding SIT's own petition for acknowledgment.  We describe SIT's alleged grounds for reconsideration that fall outside the Board's jurisdiction as follows:  Should the FD be reconsidered on the grounds that the FD (1) failed to adequately consider SIT's petition, which could be prejudiced by a final determination on the STN petition, (2) failed to adequately consider SIT's claim that it — and not STN — is the legitimate present-day continuation and rightful descendant of the historical Schaghticoke tribe, and (3) improperly recognized STN's membership as including "unenrolled members," a

41 IBIA 40

number of whom belong to SIT, without obtaining the consent of those "unenrolled members" and without affording them due process before treating them as STN members. 10/

Coggswell Group Request for Reconsideration

The Coggswell Group (CG) asserts a variety of challenges to the FD, most if not all of which are rooted in its contention that the current leadership of STN — whose descendancy CG questions — has improperly taken over control of the Schaghticoke tribe and violated the civil rights of tribal members. CG contends that the current STN tribal government does not have a bilateral relationship with the membership, as required by the regulations, because Schaghticoke families do not have influence over tribal decisions and some families reject and do not support STN's current leadership. In effect, CG accepts the premise that the Schaghticoke tribe — and perhaps even STN — satisfies the criteria to be acknowledged as an Indian tribe, based on the evidence and historical record analyzed in the FD, but argues that the FD should not have recognized the current STN leadership as the legitimate leadership of the tribe.

The Board previously determined in these proceedings that none of CG's allegations were within the Board's jurisdiction. See May 21, 2004, Determination of "Interested Party" Status and Board Jurisdiction at 5-6. 11/ At that time, we deferred our description of allegations for referral to the Assistant Secretary or Secretary until a decision was issued on the allegations over which the Board did have jurisdiction.

Most of CG's allegations pertain to conflicts between CG and the current leadership of STN, unrelated to whether STN satisfies the regulatory criteria to be acknowledged as an Indian tribe. To the extent that CG's allegations do not clearly pertain to the FD and issues arising under the acknowledgment criteria, we do not describe them for the Assistant Secretary. Three allegations, however, appear to relate directly to the FD, and therefore we describe them for the Assistant Secretary, as follows: Should the FD be reconsidered on the grounds that

---

10/ We decline to separately refer to the Assistant Secretary SIT's last four alleged grounds for reconsideration, supra 41 IBIA at 38, because they are either subsumed in the allegations that we are referring to the Assistant Secretary (e.g., due process), or they are too vague and generalized to be described (e.g., FD undermines the integrity of the federal recognition process).

11/ The Board found that CG qualified as an "interested party," see 25 C.F.R. § 83.1, in these proceedings, based on its allegations that the legal rights as Schaghticoke Indians of those who comprise CG will be affected by the FD and that CG should be recognized as a separate band, if its challenges to STN's leadership are rejected.

41 IBIA 41

(1) there was insufficient evidence submitted to demonstrate that the Velky family line represented by STN's current leadership is descended from a Schaghticoke Indian, rather than from a non-Indian; (2) the STN tribal government does not have a bilateral political relationship with the Schaghticoke membership; or (3) the FD's recognition of "unenrolled members" as part of STN's membership was taken without notice, consent, or equal protection of those unenrolled members.

Conclusion

For the reasons discussed above, and pursuant to the authority delegated to the Board of Indian Appeals by the Secretary of the Interior, 43 C.F.R. § 4.1 and 25 C.F.R. § 83.11, the Board vacates and remands the Final Determination to the Assistant Secretary for further work and reconsideration, pursuant to 25 C.F.R. § 83.11(e)(10). Pursuant to 25 C.F.R. § 83.11(f)(1), the Board has also described alleged grounds for reconsideration that are outside of the Board's jurisdiction, which are referred to the Assistant Secretary for consideration, as appropriate. 12/

I concur:

Steven K. Linscheid
Chief Administrative Judge

Anita Vogt
Senior Administrative Judge

---

12/ On January 6, 2005, the Board received from OFA, through the Solicitor's office, correspondence from Elton J. Jenkins dated June 7, 2004. The correspondence was intended for the Board of Indian Appeals, but was misdirected to OFA and received by that office on June 23, 2004. It is unclear why the correspondence was not forwarded to the Board sooner. Mr. Jenkins' letter appears to be seeking "interested party" status for a group of Schaghticoke Indians that once applied for or possibly held membership in STN, but is not included in the membership as recognized by the FD. Given the grounds on which the Board is deciding this case, it does not appear that Mr. Jenkins or those whom he may represent have been prejudiced by the Board's inability to address his request in a timely manner. The Board refers Mr. Jenkins request to the Assistant Secretary for appropriate consideration on remand.

41 IBIA 42

In re Federal Acknowledgment of the
Schaghticoke Tribal Nation
Docket Nos. IBIA 04-83-A, 04-94-A,
04-95-A, 04-96-A, and 04-97-A
Order Vacating and Remanding Final
Determination
Issued May 12, 2005
41 IBIA 30

Distribution:

Philip G. Smith, Esq.
Smith & McGuire
for the Coggswell Group
413 Georgia Street
P.O. Box 486
Louisiana, MO  63353
   BY FEDERAL EXPRESS

Eric Weichman, Esq.
McCarter English, Esq.
Cummings and Lockwood
for Petitioner, Schaghticoke Tribal Nation
City Place I
185 Asylum Street
Hartford, CT  06103-3495
   BY FEDERAL EXPRESS

Susan Quinn Cobb, Esq.
Mark Kohler, Esq.
State of Connecticut
Office of the Attorney General
55 Elm Street
Hartford, CT  06141
   BY FEDERAL EXPRESS

Alice Hutchinson, First Selectman
Town of Bethel
Bethel Municipal Center
1 School Street
Bethel, CT  06801
   BY FEDERAL EXPRESS

Perley H. Grimes, Jr., Esq.
Cramer and Anderson
for Town of Cornwall
46 West Street
Litchfield, CT  06759-0278
   BY FEDERAL EXPRESS

Mark D. Boughton, Mayor
City of Danbury
155 Deer Hill Avenue
Danbury, CT  06810
   BY FEDERAL EXPRESS

William Kupinse, Jr.
Town of Easton
225 Center Road
P.O. Box 61
Easton, CT  06612

Aamina Almad, Esq.
for Town of Greenwich
101 Field Point Road
P.O. Box 2540
Greenwich, CT  06836
   BY FEDERAL EXPRESS

Jonathan Chew, Executive Director
Housatonic Valley Council of Elected
Officials
Old Town Hall, Routes 25 & 133
Brookfield, CT  06804
   BY FEDERAL EXPRESS

Distribution:    IBIA Nos. 04-83-A, etc.
                 (Continued – page 2)

Jeffrey Sienkiewicz, Esq.
Sienkiewicz & McKenna, P.C.
for the Town of Kent
9 South Main Street, P.O. Box 786
New Milford, CT 06776
    BY FEDERAL EXPRESS

Alex Knopp
City of Norwalk
125 East Ave., P.O. Box 5125
Norwalk, CT 06856-5125

David J. Elliott, Esq.
Day, Berry & Howard
for Kent School
City Place I
Hartford, CT 06103-3499
    BY FEDERAL EXPRESS

Mr. James R. Fogarty, Esq.
Mr. Leland C. Selby, Esq.
Fogarty, Cohen, Selby & Nemiroff, LLC
for Preston Mountain Club
88 Field Point Road
P.O. Box 2508
Greenwich, CT 06386-2508
    BY FEDERAL EXPRESS

Peggy Katkocin, First Selectman
Town of New Fairfield
Town Hall
4 Brush Hill Road
New Fairfield, CT 06812
    BY FEDERAL EXPRESS

Rudy Marconi, First Selectman
Town of Ridgefield
Town Hall
400 Main Street
Ridgefield, CT 06877
    BY FEDERAL EXPRESS

Christopher J. Jarboe, Esq.
Lovejoy and Rimer, P.C.
for Town of New Canaan
65 East Avenue
P.O. Box 390
Norwalk, CT 06852-0390

Michael J. Burns, Esq.
for Mr. Alan Russell, et. al.
  Schaghticoke Indian Tribe group
57 Pratt Street, Suite 604
Hartford, CT 06103
    BY FEDERAL EXPRESS

D. Randall DiBella, Esq.
Cramer & Anderson
for Town of New Milford
51 Main Street
New Milford, CT 06776

D. Randall DiBella
Cramer and Anderson
for Town of Sherman
51 Main Street
New Milford, CT 06776
    BY FEDERAL EXPRESS

Herbert C. Rosenthal, First Selectman
Town of Newtown
Town Hall
45 Main Street
Newtown, CT 06470
    BY FEDERAL EXPRESS

Benjamin Barnes
Town of Stamford
888 Washington Boulevard
P.O. Box 10152
Stamford, CT 06904-2152
    BY FEDERAL EXPRESS

Distribution:   IBIA Nos. 04-83-A, etc.
                (Continued – page 3)

Diane Goss Farrell, First Selectwoman
Town of Westport
Town Hall
110 Myrtle Avenue
Westport, CT  06880
   BY FEDERAL EXPRESS

Patricia C. Sullivan
Associate Town Counsel
Town of Weston and the
 Town of Wilton
1115 Broad Street
P.O. Box 1821
Bridgeport, CT  06604
   BY FEDERAL EXPRESS

Thomas Gugliotti, Esq.
Updike, Kelly & Spellacy
for Ms. Barbara Bush
One State Street
(P.O. Box 231277)
Hartford, CT  06123

Robert A. Slavitt, Esq.
Slavitt, Connery and Vardamis
for Loretta Bonos
618 West Avenue
Norwalk, CT  06850

Richard L. Street, Esq.
Carmody and Torrance
for Connecticut Light and Power
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT  06721-1110
   BY FEDERAL EXPRESS

Bruce R. Greene, Esq.
Alice E. Walker, Esq.
Greene, Meyer & McElroy, P.C.
for Eastern Pequot Tribal Nation
1007 Pearl Street, Suite 220
Boulder, CO  80302
   BY FEDERAL EXPRESS

Assistant Secretary - Indian Affairs
ATTN:  Office of Federal Acknowledgment
MS 4660-MIB
U.S. Department of the Interior
1849 C Street, NW
Washington, DC  20240
   HAND DELIVERED

Barbara Coen, Esq.
Division of Indian Affairs
Office of the Solicitor
MS 6456-MIB
U.S. Department of the Interior
1849 C Street, NW
Washington, DC  20240
   HAND DELIVERED

# EXHIBIT B

UNITED STATES DEPARTMENT OF THE INTERIOR

OFFICE OF HEARINGS AND APPEALS

| | | |
|---|---|---|
| IN RE FEDERAL ACKNOWLEDGMENT OF THE SCHAGHTICOKE TRIBAL NATION | : : : | Supplemental Transmittal under 25 C.F.R. § 83.11(e)(8) |
| | : : : : : | Docket Nos.   IBIA 04-83-A<br>IBIA 04-94-A<br>IBIA 04-95-A<br>IBIA 04-96-A<br>IBIA 04-97-A |
| _____ | : | Date: December 2, 2004 |

By Order dated May 21, 2004, this Board requested that the Assistant Secretary - Indian Affairs "designate and transmit to the Board copies of critical documents central to the determination under [the State's and SIT's] request[s] for reconsideration" and provide a list of these documents to the Board and parties on the distribution list. The Department did so on July 21, 2004, including the Acknowledgment Decisions Compilation (ADC)(version 1.2) containing decisions and other documents issued in acknowledgment cases prior to the final determination on STN.

As part of the technical assistance provided in that filing, the Department identified where various topics raised in the requests for reconsideration are discussed in the final determination and proposed finding on STN. In light of issues raised in the requests for reconsideration concerning precedent, the OFA now supplements that transmittal to identify those acknowledgment decisions in the ADC that relied on or discussed 83.7(b)(2)(ii)[1] and the

---

[1] Section 83.7(b)(2) provides "A petitioner shall be considered to have provided sufficient evidence of community at a given point in time if . . . (ii) At least 50 percent of the marriages in the group are between members of the group. . . ."

carryover provision 83.7(c)(3).[2]  Rates of marriage within the group or culturally patterned

marriages outside the group are calculated under 83.7(b)(1) as evidence supporting a finding of

community.  If the rates of marriage within the group rises to 50%, it becomes sufficient

evidence to demonstrate community under 83.7(b)(2) *and* sufficient evidence to demonstrate

political under 83.7(c)(3).  This additional technical assistance is provided because there is no

finding aid to the previous acknowledgment decisions and one cannot search by topic easily

within the decisions on the ADC.

    The results of this review indicate that the Summary under the Criteria for the final

determination in STN is not consistent with prior precedent in calculating the rates of marriages

under 83.7(b)(2)(ii) and provides no explanation for the inconsistency.[3]  Further, there is no

---

[2] Section 83.7(c)(3) provides: "A group that has met the requirements in paragraph 83.7(b)(2) at a given point in time shall be considered to have provided sufficient evidence to meet this criterion [political influence or authority] at that point in time."

[3] Previous acknowledgment decisions interpret 83.7(b)(2)(ii) to require that 50% of the *marriages* are between members of the group.  In contrast, the Summary on STN inadvertently relied on the number of *members* of the group who married other members, which results in a higher count.  The following acknowledgment cases and pertinent pages specifically evaluate 83.7(b)(2)(ii) and 83.7(c)(3), using *marriages*.
    Jena Band of Choctaw (1994) PF Summary 3-5, 7, 9-15, Genealogical Technical Report Appendix I;
    Little Shell Band of Chippewa (2000) PF Summary 16-19, 175-179, (rejecting draft researcher guidelines that called for counting of members); and,
    Eastern Pequot (2000) PF, 90; Paucatuck Eastern Pequot (2000) PF, 91; and,
    United Houma Nation (1994) PF 10-14, Genealogical Technical Report 22-24, *Federal Register* Notice.  ·
The following cases discuss 83.7(b)(2)(ii) and it appears that the method of counting is marriages, but it is not entirely clear from the summary and technical reports.
    Huron Potawatomi (1995) PF Summary 10-11, Anthropological Technical Report 19-20, 51, Genealogical Technical Report 35-36, Historical Technical Report 91, *Federal Register* Notice of Proposed Finding; and,
    Ramapough Mountain Indians (1996) FD Summary 24-25, Technical Report 65-67, 79, 82-83.

2

evidence that the final determination intended to deviate from precedent. Finally, there is a material mathematical error in the calculations for 1841-1850, which when corrected lowers the calculation to less than 50%, whether or not the proper interpretation of the regulations is to calculate "marriages" or "members." The analysis under 83.7(b)(2)(ii) in the Summary and the carryover under 83.7(c)(3), therefore, should not be affirmed on these grounds absent explanation or new evidence.

The OFA provides no additional technical assistance here concerning the other grounds raised by interested parties in their requests for reconsideration.

Dated December 2, 2004

Respectfully submitted,

*Barbara N. Coen*

Barbara N. Coen, Esq.
Division of Indian Affairs, MS 6456
Office of the Solicitor
1849 C Street N.W.
Washington, D.C. 20240

---

The following case counted marriage and members in different technical reports, but does not reference 83.7(b)(2)(ii).
    Match-E-Be-Nash-She-Wish (1999) PF Summary 7, Genealogical Technical Report 49, 51, Anthropological Technical Report 46-47.
The following case counted members, but does not reference 83.7(b)(2)(ii).
    Cowlitz (1997) PF Genealogical Technical Report 85-89.

Marriage rates were considered as evidence of community in some decisions under the 1978 regulations, but specific language concerning marriage rates does not appear in those regulations. The term "endogamy" is a general term used in acknowledgment findings to refer to marriage within a group, which can be measured in different ways.

3

UNITED STATES DEPARTMENT OF THE INTERIOR
OFFICE OF HEARINGS AND APPEALS

IN RE FEDERAL ACKNOWLEDGMENT :  Certificate of Service
OF THE SCHÁGHTICOKE          :  Docket Nos.   IBIA 04-83-A,
TRIBAL NATION                :  IBIA 04-94-A, IBIA 04-95-A,
                             :  IBIA 04-96-A, IBIA 04-97-A
                             :
                             :
                             :  Date: December 2, 2004
_____:

    I certify that on December 2, 2004, I mailed a copy of the "Supplemental Transmittal
under 25 C.F.R. § 83.11(e)(8)" to:

Philip G. Smith, Esq.
Smith and McGuire
for the Coggswell Group
413 Georgia Street
P.O. Box 486
Louisiana, MO  63353

Eric Weichman, Esq.
McCarter English
Cummings and Lockwood
for Petitioner, Schaghticoke Tribal Nation
City Place I
185 Asylum Street
Hartford, CT  06103-3495

Susan Quinn Cobb, Esq.
Mark Kohler
State of Connecticut
Office of the Attorney General
55 Elm Street
Hartford, CT  06141

Alice Hutchinson, First Selectman
Town of Bethel
Bethel Municipal Center
1 School Street
Bethel, CT  06801

Perley H. Grimes, Jr., Esq.
Cramer and Anderson
for Town of Cornwall
46 West Street
Litchfield, CT  06759-0278

Mark D. Boughton, Mayor
City of Danbury
155 Deer Hill Avenue
Danbury, CT  06810

William Kupinse, Jr.
Town of Easton
225 Center Road
P.O. Box 61
Easton, CT  06612

Aamina Almad, Esq.
for Town of Greenwich
101 Field Point Road
P.O. Box 2540
Greenwich, CT  06836

Jonathan Chew, Executive Director
Housatonic Valley Council of Elected
   Officials
Old Town Hall, Routes 25 & 133
Brookfield, CT  06804

Jeffrey Sienkiewicz, Esq.
Sienkiewicz & McKenna, P.C.
For the Town of Kent
9 South Main Street, P.O. Box 786
New Milford, CT 06776

David J. Elliott, Esq.
Day, Berry & Howard
For Kent School
City Place I
Hartford, CT 06103-3499

Peggy Katkocin, First Selectman
Town of New Fairfield
Town Hall
4 Brush Hill Road
New Fairfield, CT 06812

1

Christopher J. Jarboe, Esq.
Lovejoy and Rimer, P.C.
For Town of New Canaan
65 East Avenue
P.O. Box 390
Norwalk, CT 06852-0390

D. Randall DiBella, Esq.
Cramer & Anderson
For the Town of Sherman
51 Main Street
New Milford, CT. 06776

Alex Knopp
City of Norwalk
125 East Avenue, P.O. Box 798
Norwalk, CT 06851

James R. Fogarty, Esq.
Leland C. Selby
Fogarty, Cohen, Selby & Nemiroff, LLC
for Preston Mountain Club
88 Field Point Road
P.O. Box 2508
Greenwich, CT 06386-2508

Michael J. Burns, Esq.
for Mr. Alan Russell, et. al.
Schaghticoke Indian Tribe group
57 Pratt Street, Suite 604
Hartford, CT 06103

Patricia C. Sullivan
Associate Town Counsel
Town of Weston and the Town of Wilson
1115 Broad Street
P.O. Box 1821
Bridgeport, CT 06604

Mr. Robert A. Slavitt
Slavitt, Connery and Vardamis
for Loretta Bonos
618 West Avenue
Norwalk, CT 06850

Assistant Secretary- Indian Affairs
Attn: Office of Federal Acknowledgment
MS 4660-MIB
U.S. Department of the Interior
1849 C Street, NW
Washington, DC 20240

December 2, 2004

D. Randall DiBella, Esq.
Cramer & Anderson
for the Town of New Milford
51 Main Street
New Milford, CT. 06776

Herbert C. Rosenthal, First Selectman
Town of Newtown
Town Hall
45 Main Street
Newtown, CT 06470

Rudy Marconi, First Selectman
Town of Ridgefield
Town Hall, 400 Main Street
Ridgefield, CT 06877

Benjamin Barnes
Town of Stamford
888 Washington Boulevard
P.O. Box 10152
Stamford, CT 06904-2152

Diane Ferrell
Office of the Town Attorney
Town of Westport
Town Hall
110 Myrtle Avenue
Westport, CT 06880

Thomas Gugliotti, Esq.
Updike, Kelly & Spellacy
for Sam Kwak
One State Street
(P.O. Box 231277)
Hartford, CT 06123

Richard L. Street, Esq.
Carmody and Torrance
For Connecticut L & P
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT 06721-1110

Bruce R. Greene
Alice E. Walker
Greene, Meyer & McElroy, P.C.
1007 Pearl Street, Suite 220
Boulder, Colorado 80302

*Barbara N. Coen*

Barbara N. Coen