**EXHIBIT 1**

UNITED STATES DEPARTMENT OF THE INTERIOR

OFFICE OF HEARINGS AND APPEALS

| | |
|---|---|
| IN RE FEDERAL ACKNOWLEDGMENT OF THE SCHAGHTICOKE TRIBAL NATION : : : : : : : : | Supplemental Transmittal under 25 C.F.R. § 83.11(e)(8)  Docket Nos.   IBIA 04-83-A  IBIA 04-94-A  IBIA 04-95-A  IBIA 04-96-A  IBIA 04-97-A  Date: December 2, 2004 |

By Order dated May 21, 2004, this Board requested that the Assistant Secretary - Indian Affairs "designate and transmit to the Board copies of critical documents central to the determination under [the State's and SIT's] request[s] for reconsideration" and provide a list of these documents to the Board and parties on the distribution list. The Department did so on July 21, 2004, including the Acknowledgment Decisions Compilation (ADC)(version 1.2) containing decisions and other documents issued in acknowledgment cases prior to the final determination on STN.

As part of the technical assistance provided in that filing, the Department identified where various topics raised in the requests for reconsideration are discussed in the final determination and proposed finding on STN. In light of issues raised in the requests for reconsideration concerning precedent, the OFA now supplements that transmittal to identify those acknowledgment decisions in the ADC that relied on or discussed 83.7(b)(2)(ii)[1] and the

---

[1] Section 83.7(b)(2) provides "A petitioner shall be considered to have provided sufficient evidence of community at a given point in time if . . . (ii) At least 50 percent of the marriages in the group are between members of the group. . . ."

carryover provision 83.7(c)(3).[2] Rates of marriage within the group or culturally patterned marriages outside the group are calculated under 83.7(b)(1) as evidence supporting a finding of community. If the rates of marriage within the group rises to 50%, it becomes sufficient evidence to demonstrate community under 83.7(b)(2) *and* sufficient evidence to demonstrate political under 83.7(c)(3). This additional technical assistance is provided because there is no finding aid to the previous acknowledgment decisions and one cannot search by topic easily within the decisions on the ADC.

The results of this review indicate that the Summary under the Criteria for the final determination in STN is not consistent with prior precedent in calculating the rates of marriages under 83.7(b)(2)(ii) and provides no explanation for the inconsistency.[3] Further, there is no

---

[2] Section 83.7(c)(3) provides: "A group that has met the requirements in paragraph 83.7(b)(2) at a given point in time shall be considered to have provided sufficient evidence to meet this criterion [political influence or authority] at that point in time."

[3] Previous acknowledgment decisions interpret 83.7(b)(2)(ii) to require that 50% of the *marriages* are between members of the group. In contrast, the Summary on STN inadvertently relied on the number of *members* of the group who married other members, which results in a higher count. The following acknowledgment cases and pertinent pages specifically evaluate 83.7(b)(2)(ii) and 83.7(c)(3), using *marriages*.
   Jena Band of Choctaw (1994) PF Summary 3-5, 7, 9-15, Genealogical Technical Report Appendix I;
   Little Shell Band of Chippewa (2000) PF Summary 16-19, 175-179, (rejecting draft researcher guidelines that called for counting of members); and,
   Eastern Pequot (2000) PF, 90; Paucatuck Eastern Pequot (2000) PF, 91; and,
   United Houma Nation (1994) PF 10-14, Genealogical Technical Report 22-24, *Federal Register* Notice.
The following cases discuss 83.7(b)(2)(ii) and it appears that the method of counting is marriages, but it is not entirely clear from the summary and technical reports.
   Huron Potawatomi (1995) PF Summary 10-11, Anthropological Technical Report 19-20, 51, Genealogical Technical Report 35-36, Historical Technical Report 91, *Federal Register* Notice of Proposed Finding; and,
   Ramapough Mountain Indians (1996) FD Summary 24-25, Technical Report 65-67, 79, 82-83.

2

evidence that the final determination intended to deviate from precedent. Finally, there is a material mathematical error in the calculations for 1841-1850, which when corrected lowers the calculation to less than 50%, whether or not the proper interpretation of the regulations is to calculate "marriages" or "members." The analysis under 83.7(b)(2)(ii) in the Summary and the carryover under 83.7(c)(3), therefore, should not be affirmed on these grounds absent explanation or new evidence.

The OFA provides no additional technical assistance here concerning the other grounds raised by interested parties in their requests for reconsideration.

Dated December 2, 2004

                                        Respectfully submitted,

                                        *Barbara N. Coen*
                                        Barbara N. Coen, Esq.
                                        Division of Indian Affairs, MS 6456
                                        Office of the Solicitor
                                        1849 C Street N.W.
                                        Washington, D.C. 20240

---

The following case counted marriage and members in different technical reports, but does not reference 83.7(b)(2)(ii).
    Match-E-Be-Nash-She-Wish (1999) PF Summary 7, Genealogical Technical Report 49,
        51, Anthropological Technical Report 46-47.
The following case counted members, but does not reference 83.7(b)(2)(ii).
    Cowlitz (1997) PF Genealogical Technical Report 85-89.

Marriage rates were considered as evidence of community in some decisions under the 1978 regulations, but specific language concerning marriage rates does not appear in those regulations. The term "endogamy" is a general term used in acknowledgment findings to refer to marriage within a group, which can be measured in different ways.

3

UNITED STATES DEPARTMENT OF THE INTERIOR
OFFICE OF HEARINGS AND APPEALS

| | |
|---|---|
| IN RE FEDERAL ACKNOWLEDGMENT : <br> OF THE SCHAGHTICOKE : <br> TRIBAL NATION : <br> : <br> : <br> _____ : | Certificate of Service <br> Docket Nos.   IBIA 04-83-A, <br> IBIA 04-94-A, IBIA 04-95-A, <br> IBIA 04-96-A, IBIA 04-97-A <br><br> Date: December 2, 2004 |

   I certify that on December 2, 2004, I mailed a copy of the "Supplemental Transmittal under 25 C.F.R. § 83.11(e)(8)" to:

Philip G. Smith, Esq.
Smith and McGuire
for the Coggswell Group
413 Georgia Street
P.O. Box 486
Louisiana, MO 63353

William Kupinse, Jr.
Town of Easton
225 Center Road
P.O. Box 61
Easton, CT 06612

Eric Weichman, Esq.
McCarter English
Cummings and Lockwood
for Petitioner, Schaghticoke Tribal Nation
City Place I
185 Asylum Street
Hartford, CT 06103-3495

Aamina Almad, Esq.
for Town of Greenwich
101 Field Point Road
P.O. Box 2540
Greenwich, CT 06836

Susan Quinn Cobb, Esq.
Mark Kohler
State of Connecticut
Office of the Attorney General
55 Elm Street
Hartford, CT 06141

Jonathan Chew, Executive Director
Housatonic Valley Council of Elected
   Officials
Old Town Hall, Routes 25 & 133
Brookfield, CT 06804

Alice Hutchinson, First Selectman
Town of Bethel
Bethel Municipal Center
1 School Street
Bethel, CT 06801

Jeffrey Sienkiewicz, Esq.
Sienkiewicz & McKenna, P.C.
For the Town of Kent
9 South Main Street, P.O. Box 786
New Milford, CT 06776

Perley H. Grimes, Jr., Esq.
Cramer and Anderson
for Town of Cornwall
46 West Street
Litchfield, CT 06759-0278

David J. Elliott, Esq.
Day, Berry & Howard
For Kent School
City Place I
Hartford, CT 06103-3499

Mark D. Boughton, Mayor
City of Danbury
155 Deer Hill Avenue
Danbury, CT 06810

Peggy Katkocin, First Selectman
Town of New Fairfield
Town Hall
4 Brush Hill Road
New Fairfield, CT 06812

1