UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | NO. H-85-1078(PCD) |
| v. | ) | |
| | ) | |
| 43.47 ACRES OF LAND, MORE OR LESS, SITUATED IN THE COUNTY OF LITCHFIELD, TOWN OF KENT, et al, | ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | \* \* \* \* \* \* \* \* \* |
| SCHAGHTICOKE TRIBAL NATION | ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 3-98-CV 01113 (PCD) |
| v. | ) ) | |
| KENT SCHOOL CORPORATION, INC., et al | ) ) | |
| Defendants. | ) ) | \* \* \* \* \* \* \* \* \* |
| SCHAGHTICOKE TRIBAL NATION | ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 3-00-CV 0820 (PCD) |
| v. | ) ) | |
| THE UNITED STATES OF AMERICA AND THE CONNECTICUT LIGHT AND POWER COMPANY, et al | ) ) ) ) | |
| Defendants. | ) | July 5, 2005 |

**SCHAGHTICOKE TRIBAL NATION'S MEMORANDUM IN REPLY TO OPPOSITION TO ITS MOTION TO AMEND SCHEDULING ORDER**

### I. Introduction.

The Schaghticoke Tribal Nation ("STN" or "Tribe"), respectfully submits this reply brief to the brief, dated June 29, 2005, filed by the amicus State of Connecticut and the defendants Town of Kent, Kent School Corporation, and The Connecticut Light and Power Company (collectively, "State Parties") in opposition to STN's Motion to Amend Scheduling Order and for

**ORAL ARGUMENT REQUESTED**

Expedited Hearing and Status Conference and to the United States' June 30 response to that Motion.[1] Given the time constraints, STN will address only some of the arguments raised by the State Parties, but does not acquiesce in others.

## II. Relevant Facts.

STN's motion requested that the Amended Scheduling Order be modified to ensure fundamental fairness for Bureau of Indian Affairs' ("BIA") reconsideration of the STN petition. Specifically, the STN requested that the Court amend the Scheduling Order to provide that (1) the BIA hold technical assistance meetings to explain the OFA Supplemental Transmittal questioning its own marriage rate analysis, (2) the STN thereafter have the ability to submit all necessary comments, information, documents, analysis or argument in response (3) all other parties and amici thereafter submit all relevant comments, information, documents, analysis or argument, (4) the STN then respond, and (5) within 120 days of the technical assistance meeting, the Assistant Secretary issue its reconsidered Final Determination.

Contrary to the State Parties' assertions, STN does not seek extraordinary relief, but rather protection against extraordinary harm. The Tribe asks only that this Court preserve the procedural protections otherwise offered to all petitioners seeking federal acknowledgment: to participate in the reconsideration of an adverse Final Determination. Because OFA's original final conclusion favored the Tribe, STN did not file a petition for reconsideration before the IBIA. The State Parties do not and cannot cite precedent permitting the OFA to reverse itself, without explanation or an opportunity for Petitioner to respond, after the IBIA appeal was fully briefed. STN submitted its comments to the adversarial pleadings filed by the State Parties, but not to the unprecedented blow struck by the OFA's Supplemental Transmittal.

---

[1] By Order dated June 17, 2005, the Court granted in part STN's request for expedited consideration by mandating that all opposition briefs be filed by the parties or amici no later than June 30, 2005 . Although not contemplated under that Order, the Housatonic Valley Coalition of Local Governments - - non-parties to this litigation, submitted a letter to the Court dated June 29, 2005. To the extent that the letter reiterates the arguments as those in the opposition brief, such arguments are equally unpersuasive.

Consequently, STN sought this Court's assistance to restore the procedural balance intended to assure that this decision, crucial to the Tribe's future, is accomplished according to law. The State Parties oppose any concession. The United States, while opposing the Motion, has indicated its willingness to provide some minimal response to the Tribe's stated concerns.

After the Court's June 17, 2005 Order, the BIA, through Assistant United States Attorney John Hughes, began a dialogue with counsel for STN to discuss possible modifications of remand procedures,primarily, the availability of technical assistance to explain the BIA's endogamy analysis, particularly as the December 2, 2005 Supplemental Transmittal suggested it had been modified. The BIA, however, made clear that it would not respond to any question about the methodology it will apply to determine endogamous marriage rates and the effect of that methodology on the STN's satisfaction of the burden established at 25 C.F.R. § 83.7(c). The BIA will make that determination only at the <u>end</u> of the reconsideration process, after any and all analysis, participation and briefing is complete. The BIA proposes that any technical assistance be limited to methodology to be utilized no matter what rule is later applied. While STN still believes that social scientific theory should not be relegated to the political process, it believes that the accommodations presently offered will, at least, make the eventual Final Determination more transparent and amenable to subsequent review.

## II. Discussion.

### A. The BIA Has Responded With Proposed Modifications To The Reconsideration Procedures.

Although the BIA, through Assistant United States Attorney John Hughes, opposes STN's Motion, the BIA is amenable to many of STN's requests to modify the reconsideration procedures. <u>See</u> United States' Response Brief, dated June 30, 2005, at 6-7.

While STN believes all of its requests are necessary to ensure a fair process, in the spirit of compromise and to expedite this matter, STN would be open to the BIA's suggested

procedures, but with some modifications.[2] The BIA suggests the following procedures, but STN has noted its proposed modifications in bold:

(1) OFA will provide a technical assistance letter to all parties on or before July 11, 2005, concerning the marriage rate analysis in the final determination, **and as subsequently recalculated prior to the OFA Supplemental Transmittal, and as it may yet again be recalculated in the Reconsideration Procedures. Parties may submit questions concerning the analysis to John Hughes by July 6, 2005 to be submitted to OFA.**[3]

(2) Parties may submit to OFA by July 25, 2005, historical documents or historical evidence concerning marriages of Schaghticoke members **or other historical documents or historical evidence supporting criterion (c) during the nineteenth century,** as well as any specific document(s) requested in the technical assistance letter. Copies must be provided at the same time to the parties in accordance with ¶ (p) of the Scheduling Order.

(3) Parties may submit briefs by August 12, 2005, not to exceed 25 (**40**) pages in length providing argument and analysis. No new evidence may be submitted with the briefs.

(4) This proposal and time line will require additional time by the Department to issue the reconsidered decision. The Assistant Secretary will administratively extend the time frame for issuing the decision to October 12, 2005.

---

[2] Since the BIA has offered suggested procedures in its Motion, STN does not address the BIA's arguments in opposition. Some of those arguments, however, may be similar to those asserted by the State Parties. To the extent that they are, those arguments are answered below.

[3] This portion of the schedule may need to be modified minimally to reflect the timing the of Court's ruling.

## B. The Court Retains Jurisdiction Over The BIA Process Necessary To Resolve The Underlying Litigation

The State Parties contend that the Court's jurisdiction in this matter is limited to APA review of a "final" decision by the agency. State Parties' Opposition Brief, at 6. That argument ignores the history of this case.

The State Parties do not dispute, as they cannot, that this Court had to lift the stay in the pending actions because the BIA demonstrated a complete "inability to make [recognition] determinations in anything remotely resembling a timely a manner." Court's Order, dated September 11, 2000, attached as Exhibit A. At the time, the Court noted that "[a] federal court, of course, retains final authority to rule on a federal statute, but should avail itself of the agency's aid in gathering facts and marshalling them into a meaningful pattern." Id. (citing Golden Hill Paugussett Tribe of Indians v. Weicker, 39 F.3d 51, 60 (2d Cir. 1994) (emphasis added). Nor do the State Parties dispute that the Scheduling Order has been in effect since approximately May 8, 2001, and subsequently amended numerous times, to oversee and protect the administrative process. Indeed, the Scheduling Order gave all of the defendants and amici unprecedented input in the recognition process, modifying the recognition rules greatly in their favor. Nonetheless, the State Parties assert that the Court's jurisdiction has somehow vanished during the agency procedure. The State Parties also argues that allowing the present remand procedure would not result in undue delay because the BIA would issue a reconsidered final determination decision in 120-days. This argument is disingenuous, as the parties have asked for and received extensions in many of the prior steps without complaints of delay. Also, it ignores the fact that STN may have to restart the procedure anew if an error - - which is quite possible - - is found on APA review of any final agency decision. It also ignores that STN has already been waiting for far too long, which required the Court's intervention.

The State Parties' also mischaracterize the issue as one implicating the Court's jurisdiction due to the lack of a "final" agency decision.[4] Even if the Court did not have explicit

---

[4] Contrary to the State Parties' assertion, this Court does not lack jurisdiction to order the relief that STN seeks. Fed.R.Civ. P. 16(b) provides the Court with explicit authority to alter or amend the Amended Scheduling Order

authority to alter the Amended Scheduling Order, the State Parties jurisdictional challenge due to the lack of a "final" agency decision fails. Like many rules, the finality doctrine is not so inflexible. Telecommunications Research & Action Center ("TRAC") v. FCC, 750 F.2d 70, 75 & n27 (D.C. Cir. 1984); Abbot Laboratories v. Gardner, 387 U.S. 136, 149-50 (1967); see also Public Citizen Health Research Group v. Comm'r, Food & Drug Administration, 740 F.2d 21, 34-35 (D.C.Cir.1984). A federal court should apply the finality requirement in a "flexible" and "pragmatic" way. Telecommunications Research & Action Center v. FCC, 750 F.2d at 75 n.27 (quoting Abbot Laboratories, 387 U.S. 136, 149-50). When dealing with a claim of unreasonable agency delay, the courts have not allowed the finality doctrine from precluding review. Id. In TRAC, the Circuit Court of Appeals, having jurisdiction over review of a final agency action, held that it had jurisdiction to review a claim of unreasonable delay by the agency to render a final decision. The Court, however, did not intervene because the agency assured the Court that it was expeditiously moving forward with procedures. Nevertheless, the Court noted that it would "retain jurisdiction over this case until the final disposition by the agency." Id. at 72. To reiterate, the Court here became involved with the agency procedures precisely because the agency was not proceeding in a timely fashion. Since 2001, the Court has been overseeing the agency process to ensure that the process is fair and insulated from undue influence.

Furthermore, contrary to the State Parties' assertion, waiting for APA review is not a wise option. Waiting to see if the final reconsidered decision prejudices STN may be a tremendous waste of resources as the entire process may need to be started over again. Rather than take the unnecessary risk of wasting time and resources, it would impose little burden for the BIA to fix the process now. Thus, the circumstances weigh in favor of STN's request.

---

upon a showing of good cause. See Julian v. Equifax Check Services, Inc., 178 F.R.D. 10, 16 (D. Conn. 1998) ("Under Federal Rule 16(b) the district court may modify a pre-trial scheduling order on a showing of 'good cause' by the party seeking the modification.") Good cause unquestionably exists to modify the Amended Scheduling Order because of the resultant prejudice to STN from the OFA's filing of the "Supplemental Transmittal" after STN completed its last submission to the IBIA.

### C. STN Was Deprived Of A Full And Fair Procedure To Address The Marriage Rate Issue.

The State Parties argue that STN had a full opportunity to present evidence on the marriage rate issue after the Proposed Finding and to present arguments on the issue in response to the State's brief filed with the IBIA. This argument purposely ignores the realities of this unique situation.

The entire process under the Scheduling Order was structured to ensure fair input and participation by all concerned. During the initial procedures, STN could not have speculated that the BIA would change its analysis after all briefing with the IBIA was complete. How could it know that the OFA would alter the rule applied in a "Final" Determination? To date, neither STN nor any other party understands what analysis the BIA used as a basis for its Supplemental Transmittal or will use on reconsideration. Apparently, the agency intends to complete the calculations, and then choose the rule according to the outcome it produces.

Further, if the BIA had applied an unfavorable analytic rule in the normal course of issuing a Final Determination, and produced a negative result, then STN would have had the opportunity to appeal that decision to the IBIA —along with full evidentiary submission and briefing. By delaying its crucial choice until the agency process is concluded, the BIA deprives STN of meaningful internal review process, and virtually assures that the administrative record will be incomplete. The State Parties' theory would leave STN with only APA review, but one handicapped by the defective procedures. At the least, that process will unnecessarily delay a decision vital to each and every member of the Schaghticoke Tribal Nation. Given the history of this case, and the background of the BIA's recognition process, building in further delay is simply unacceptable.

## IV. Conclusion.

Wherefore, STN respectfully requests that the Court grant its Motion to Amend and grant all of its requested procedures or, alternatively, those suggested above by the BIA and as modified by STN.

THE PLAINTIFF/DEFENDANT
SCHAGHTICOKE TRIBAL NATION
BY McCARTER & ENGLISH, LLP
ITS ATTORNEYS


By _____
Eric Watt Wiechmann (CT 04331)
Salvatore N. Fornaciari (CT 22684)
CityPlace I
Hartford, CT  06103
Telephone:  (860) 275-6700
Facsimile:   (860) 724-3397

Of Counsel:
Judith A. Shapiro, Esq.
6856 Eastern Avenue NW
Suite 206
Washington, DC 20012

and

Jerry C. Straus, Esq.
F. Michael Willis, Esq.
Hobbs, Straus, Dean & Walker, LLP
2120 L Street, NW
Washington, DC  20037

## **CERTIFICATE OF SERVICE**

      This is to certify that a copy of the foregoing Schaghticoke Tribal Nation's Motion for Status Conference has been mailed, postage prepaid this 5th of July, 2005 to:

John B. Hughes, Esq.  
Chief of Civil Division  
United States Attorneys Office  
157 Church Street, Floor 23  
New Haven, CT 06510

Judith A. Shapiro, Esq.  
6856 Eastern Avenue NW, Suite 206  
Washington, DC 20012

David J. Elliot, Esq.  
Day, Berry & Howard  
CityPlace I  
Hartford, CT 06103-3499

Loretta Bonos  
594 Bendview Drive  
Charleston, WV 25314

Jeffrey B. Sienkiewicz, Esq.  
Sienkiewicz & McKenna, PC  
9 South Main Street  
P.O. Box 786  
New Milford, CT 06776-0786

Michael J. Burns, Esq.  
Law Offices of Attorney Michael J. Burns  
57 Pratt Street  
Hartford, CT 06103

Jerry C. Straus, Esq.  
Hobbs, Straus, Dean & Walker, LLP  
2120 L Street, NW  
Washington, DC 20037

Giovanna Tiberii Weller, Esq.  
Carmody & Torrance  
50 Leavenworth Street  
P.O. Box 1110  
Waterbury, CT 06721-1110

Robert A. Slavitt, Esq.  
Slavitt, Connery, & Vardamis  
618 West Avenue  
Norwalk, CT 06850

James R. Fogarty, Esq.  
Fogarty Cohen Selby & Nemiroff  
88 Field Point Road, P.O. Box 2508  
Greenwich, CT 06836-2508

Susan Quinn Cobb, Esq.  
Asst. Attorney General  
55 Elm Street  
Hartford, CT 06141

Thomas A. Gugliotti, Esq.  
Updike, Kelly & Spellacy  
One State Street  
Hartford, CT 06123

Renita Ford, Esq.  
General Litigation Section  
Environmental & Natural Resources Division  
United States Department of Justice  
Post Office Box 663  
Washington, DC 20004-0663

Scott Keep, Esq.  
Office of the Solicitor  
U.S. Department of the Interior  
1849 C Street, NW  
Mailstop 6456  
Washington, D.C. 20240

                                                  */s/ Salvatore N. Fornaciari*  
                                                Salvatore N. Fornaciari (CT 22684)

HARTFORD: 643600.01

EXHIBIT A

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED
SEP 12  2 40 PM '00

U.S. DISTRICT COURT
NEW HAVEN, CONN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff, | : <br> : <br> : |
| -vs- | : Civil No. H-85-1078 (PCD) |
| 43.47 ACRES OF LAND, MORE<br>OR LESS, SITUATED IN THE<br>COUNTY OF LITCHFIELD,<br>TOWN OF KENT, ET AL.,<br>Defendants. | : <br> : <br> : <br> : <br> : |
| SCHAGHTICOKE TRIBAL<br>NATION,<br>Plaintiff, | : <br> : <br> : |
| -vs- | : Civil No. 3:98cv1113 (PCD) |
| KENT SCHOOL CORPORATION,<br>INC., ET AL.,<br>Defendants. | : <br> : <br> : |

RULING ON PENDING MOTIONS

The Schaghticoke Tribal Nation ("Tribe") moves to terminate the stay entered in these cases on March 31, 1999. This motion is **granted**. Appalachian Trail Conference ("Appalachian Trail") moves to substitute the United States as a named defendant in Schaghticoke Tribal Nation v. Kent School Corp., 3:98cv1113 (PCD), and dismiss the Complaint against Appalachian Trial as it no longer has any interest in, claim, or possession to the land. This motion is **denied**.

I.    BACKGROUND

Knowledge of the underlying facts of these cases is presumed for the purposes of this Ruling. Briefly, a stay was entered so that the Branch of Acknowledgment and Research ("BAR") of the Bureau of Indian Affairs ("BIA") could resolve the Tribe's petition for federal recognition. The Tribe's standing and likelihood of success in both actions depend on its status

as a formally recognized Indian tribe. Based on the doctrine of primary jurisdiction, the Court stayed the actions in deference to BAR. On reconsideration, the Court refused to lift the stay despite agency delay. However, it stated that, "[i]f it is clear, at some point, that protracted delay will continue in the face of the purported Tribe's best effort to avail itself of the agency's procedures to obtain a determination, the question of a court determination can be revisited." 1/31/00 Ruling on Motion for Reconsideration, Dkt. #61. The time has come to revisit that determination.

II.  MOTION TO TERMINATE STAY

The Tribe moves to terminate the stay due to "inordinate agency delay." It argues that, based on statements made at a hearing held by the Senate Committee on Indian Affairs, there is no reason to believe that BAR will address the merits of the Tribe's petition any time in the near future. As stated by Richard Velky, Chief of the Tribe, "Mr. Gover, who is in charge of the recognition process, admitted that the BAR process has broken down and he admitted that the current administration would be unable to reform it." Affidavit of Richard L. Velky, Ex. A to Mem. in Supp., at 2.

While it may be true, as defendants argue, that BAR's technical expertise makes it better positioned to make a recognition determination, such expertise is outweighed by its now-demonstrated inability to make such determinations in anything remotely resembling a timely manner. "A federal court, of course, retains final authority to rule on a federal statute, but should avail itself of the agency's aid in gathering facts and marshalling them into a meaningful pattern." Golden Hill Paugussett Tribe of Indians v. Weicker, 39 F.3d 51, 60 (2d Cir. 1994). Where, as here, defendants fail to 1) show why the stay should not be terminated or 2) resolve

2

the question of tribal status within an 18-month stay, the Court can reach the merits of the case. See id. at 61. Accordingly, the motion to terminate the stay is hereby granted.

III.   MOTION TO SUBSTITUTE DEFENDANT AND DISMISS

Appalachian Trail moves to substitute the United States as a named defendant and dismiss the Complaint against Appalachian Trail. It claims that it transferred its interest in the land by quitclaim deed to the United States on April 26, 1999 and thus no longer has any interest in, claim, or possession to the land. The Tribe objects, stating that "the United States government, to the Tribe's knowledge, has neither acknowledged that it has specifically stepped into the shoes of the [sic] Appalachian Trail Conference nor has it acknowledged that it will be subject to all of The Appalachian Trail Conference's claims and defenses insofar as they relate to the property at issue." Mem. in Opp., at 3.

Fed.R.Civ.P. 25(c) provides :

In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of the motion shall be made as provided in subdivision (a) of this rule.

Granting a motion to substitute one party for another lies within the discretion of the court. See State Bank of India v. Chalasani (In re Chalasani), 92 F.3d 1300, 1312 (2d Cir. 1996).

In the instant case, it appears that Appalachian Trail transferred approximately 52 acres of land via quitclaim deed to the United States without monetary consideration "as a gesture of goodwill and support of the Appalachian National Scenic Trail." Ex. A to Mem. in Supp., at 2. Given the Tribe's objection, and the fact that there is no evidence that Appalachian Trail served

3

the motion on the United States, it would be inappropriate to permit substitution and dismissal at this time.

IV.   CONCLUSION

The motion to terminate the stay (doc. 150) is hereby **granted**. The motions to substitute the United States as a named defendant (doc. 57-1) and to dismiss (doc. 57-2) are **denied** without prejudice.

SO ORDERED.

Dated at New Haven, Connecticut, September _11_, 2000.

_____
Peter C. Dorsey
Senior United States District Judge

4