UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Civil Action Case No. H-85-1078 (PCD) |
| Plaintiff, | : | |
| v. | : | * * * * * * |
| 43.47 ACRES OF LAND, MORE OR LESS, | : | |
| SITUATED IN THE COUNTY OF | : | |
| LITCHFIELD, TOWN OF KENT, et al, | : | |
| Defendants. | : | |
| | : | |
| | : | |
| SCHAGHTICOKE TRIBAL NATION | : | Civil Action Case No. 3:98 cv 1113 (PCD) |
| Plaintiff, | : | |
| v. | : | * * * * * * |
| KEN SCHOOL CORPORATION, INC., et al., | : | |
| Defendants. | : | |
| | : | |
| | : | |
| SCHAGHTICOKE TRIBAL NATION | : | Civil Action Case No. 3:00 cv 0820 (PCD) |
| Plaintiff, | : | |
| v. | : | * * * * * |
| THE UNITED STATES OF AMERICA AND | : | |
| THE CONNECTICUT LIGHT AND POWER | : | |
| COMPANY, et al. | : | |
| Defendants. | : | |
| | : | |
| | : | |
| | : | August 16, 2005 |
| | : | |

**SCHAGHTICOKE TRIBAL NATION'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF TOWN ACTION TO SAVE KENT, INC., JAMES N. PERKINS, AND KENNTH F. COOPER TO QUASH SUBPOENAS AND FOR PROTECTIVE ORDER**

**ORAL ARGUMENT REQUESTED**

**Introduction and Statement of Facts**

On May 8, 2001, the Court entered a Scheduling Order in these consolidated cases ("the Scheduling Order") (Exhibit A). That order - the product of months of intensive negotiations among representatives of all the parties and the Court itself - contained the following directive:

> No non-federal party or *amici* shall communicate or meet with any
> officials in the immediate offices of the Secretary of the Interior,
> the Assistant Secretary-Indian Affairs or the Deputy Commissioner
> of Indian Affairs with respect to this petition, without notification
> to the other parties.

Scheduling Order, Paragraph I

On March 17, 2004, Attorney General Blumenthal[1] arranged, without the proper notice under Paragraph (I), a private meeting with Secretary of the Interior, Gale Norton. At that meeting, he hand delivered a letter, mischaracterizing the facts of STN's petition for recognition and of its pending agency appeal. The other parties and counsel for Secretary Norton received that letter days later via U.S. mail. After seeing that letter for the first time, counsel for STN filed a Motion to Amend Paragraph (I) to clarify that "notice" in that Paragraph meant prior notice. (STN's Motion to Amend, Exhibit B). On June 14, 2004, the Court issued a ruling on that motion. In doing so, the Court noted that "[s]uch conduct [making contact with decision-making officials], at the very least, appears improper and thus threatens to subvert the integrity of the appeal process itself." (Order, dated June 14, 2004, Exhibit C). In an attempt to avoid such conduct in the future, the Court amended the last sentence of the Scheduling Order's "no contact" provision as follows:

> No non-federal party or *amici* shall communicate or meet with any
> officials in the immediate offices of the Secretary of the Interior,
> the Assistant Secretary of the Interior or the Deputy Commissioner

---

[1] The State of Connecticut is an *amici* in the litigation.

of Indian Affairs with respect to this petition, *without two business days prior notification to the other parties.*

(Emphasis added).

Violations of that order, however, seem to have continued, although under a more surreptitious guise. In June, 2004, about the time of the Court Amended Scheduling Order, Town Action To Save Kent, Inc., ("TASK") appeared on the scene. As set forth below and in the Tribe's Motion for Permission to Conduct Discovery, dated February 17, 2005, (Exhibit D) TASK, while purporting to be a "citizen's group", maintained close ties with and, apparently, acted as an alter ego for the Town of Kent and, perhaps, other parties to this case – attempting to make *ex parte* contacts that those parties themselves could not make under the Scheduling Order and Amended Scheduling order.

Ultimately, TASK retained Barbour, Griffin and Rogers("BG&R"), a noted Washington lobbying firm, to provide lobbying services in Washington in connection with the pending application. At a meeting in Kent on January 21, 2005, attended by all three of the Kent Selectmen and Town Counsel, TASK publicly introduced their new Washington voices. In a press statement, TASK made it clear that TASK would be providing lobbying services in opposition to the STN recognition application. (News Articles, dated January 23 and 28, 2005, Exhibit E). The scope of those lobbying services was made clear in a February 14, 2005 filing by BG&R with the Secretary of the Senate. (February 14, 2005 BG&R Lobbying Report, Exhibit F). In that filing, BG&R certifies, under Federal law, that it has lobbied the Department of Interior on issues related to Federal Tribal Recognition. Likewise, in an affidavit filed in a collateral proceeding in the District of Columbia,[2] Bradley Blakeman, one of BG&R's lead

---

[2] STN has noticed the deposition of Mr. Blakeman and Barbour, Griffin and Rogers in Washington, D.C. where their offices are located. Those parties have filed a motion in the D.C. District Court to quash those depositions.

lobbyists, states that he had made contact with the Deputy Assistant Secretary for Indian Affairs as recently as May 12, 2005  (Exhibit G).

Very shortly after these well-connected lobbyists went to work,  BIA, without prior notice, vacated the Tribe's recognition and remanded the matter for further proceedings.  In Re Federal Acknowledgment of The Schaghticoke Tribal Nation, 41 IBIA 30 (May 12, 2005).  The suddenness of this reversal in BIA's position and the absence of any notice under the Court's Amended Order that contacts were being made with the agency, raised concerns to STN that the Order's "no contact" provision had been violated.

In order to determine whether the parties, either directly or through surrogates, made improper agency contacts, the Tribe filed a motion for permission to conduct discovery related to that issue.  On May 20, 2005, the Court granted that motion. ("Discovery Order",  Exhibit H).

This motion brings before the Court the scope of discovery permitted under the Discovery Order.  The Tribe has noticed the deposition of TASK and two of its principals, James Perkins and Kenneth Cooper.  In connection with that notice, STN has served a request for the production of documents, limited to the time frame since the entry of the Amended Scheduling Order, which relate to the organization of TASK, its membership and its lobbying and other activities.  TASK, Perkins and Cooper have moved for a protective order, seeking to shield themselves from producing that material.  This memorandum is in reply to that motion.

## II.  Issue Raised

In light of already existing evidence of TASK's utilization of Kent officials in its lobbying efforts, should STN be precluded from determining (1) whether TASK has additional ties with other parties to this action and (2) whether TASK has acted as a surrogate for Kent and others in making official contacts forbidden to those parties themselves?

-4-

## III.  Argument.

1.  <u>The Information Requested Is Relevant As It Is Reasonably Calculated To Lead To Admissible Evidence Concerning Whether The Scheduling Order Was Violated.</u>

Pursuant to the Court's May 20, 2005 Order, (Exhibit H), STN is authorized to determine whether certain parties may have violated the Paragraph (l) of the Scheduling Order that prohibits certain contacts with Department of Interior officials without prior notice.  This is not the first time that certain parties' conduct implicated the Paragraph.  Accordingly, the Court took the drastic step of lifting the stay to allow discovery to flush out the facts.

In general, discovery is allowed "regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.  R.  Civ. P.26(b)(1). The term "relevance" is broadly construed, and "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." <u>Id.</u>; <u>Hildebrand v. Wal-Mart Stores, Inc.</u>, 194 F.R.D. 432, 434 (D. Conn. 2000)  ("Reasonably calculated in <u>Rule 26</u> means any possibility that the information sought may be relevant to the subject matter of the action.")  <u>See</u> <u>also</u>, <u>Yancey v. Hooten</u>, 180 F.R.D. 203, 207 (D. Conn. 1998) (noting that "[A] valid discovery request need only encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.")  (internal citations omitted)

"[A]s a general principle, it is proper to employ all discovery devices contemplated by the federal rules in the course of contempt proceedings . . ." <u>United States v. International Business Machines Corp.</u>, 60 F.R.D. 650, 652 (S.D.N.Y. 1973).  Where a case involves allegations of deceitful or fraudulent conduct, broad latitude must be allowed to illuminate such

conduct. See Madison County Savings Bank v. Phillips, 250 N.W. 598, 601 (Iowa 1933); Ex

parte Carlton Coale, 757 So. 2d 393, 395 (Ala. 1999).

Further, "a court may issue a protective order only after the moving party demonstrates

good cause. To establish good cause under Rule 26(c), courts require a particular and specific

demonstration of fact, as distinguished from stereotyped and conclusory statements." LaPlante

v. Estano, 228 F.R.D. 115 (D. Conn. 2005) (Citations omitted.) Applying those principles to the

instant case, STN's discovery requests are clearly relevant and have reasonable limits.

A.    The Request Is Limited to Parties Relevant to this Action

All of the requests are limited to entities or people who may be involved with the

violation of Paragraph (l) of the Scheduling Order. Document request number 1 asks for the

following:

>    1.    Any and all documents, including, but not limited
> to, correspondence, reports, memoranda and e-mail, concerning
> any communication concerning TASK, Barbour, Griffith &
> Rogers, LLC and/or the Plaintiff between or among any of the
> following: your officers, directors, members, employees, agents,
> or consultants; Barbour, Griffith & Rogers, LLC; Kent town
> officials; any official or employee in the United States Department
> of the Interior; any United States Representative or Senator; any
> officials of the State of Connecticut; or any other person.

(See Exhibits A, B and C in support of Deponents' Motion).

Each of the referenced parties is relevant to this case. As a preliminary matter, Kent

officials, themselves, have admitted that use of a surrogate to make contact prohibited to the

Town itself under the Amended Scheduling Order would be a violation of that order. Dolores

Schiesel, First Selectman of the Town of Kent, stated during her deposition that "[u]sing an

intermediary for any of the parties to make contact without the proper notice would be a

violation of the order...." (Transcript of the deposition of Dolores Schiesel dated July 15, 2005,

p. 75 1.24-p.76 1.2, relevant portions of which are attached as Exhibit I.) Nancy O'Dea Wyrick,

Second Selectman of the Town of Kent, has also testified as to her belief that it would be a violation of the order for the Town of Kent to use a surrogate to communicate with the Bureau of Indian Affairs (Deposition of Nancy O'Dea-Wyrick July 19, 2005, p 108 1.1 – p. 109 1.24, relevant portions of which are attached as Exhibit J) The issue, then, is whether the parties or others acting on their behalf have made such contacts.

It is clear from material already obtained in discovery, that BG&R has made contacts with the BIA, although the scope of those contacts cannot be determined without further inquiry. As set forth above, pp. 4-5, BG&R has filed a certification that it contacted the Department of the Interior. Bradley Blakeman, under oath, has reaffirmed such contact. In fact, BG&R's entire lobbying strategy is focused on using influence with third parties to affect the BIA's decision. In a memo from James Perkins to Dolores Schiesel, the Kent First Selectman, dated January 10, 2005, which is a verbatim recitation of portions of a January 7, 2005 memo from Loren L. Monroe, COO, of BG&R to Perkins, (Exhibit K), Perkins sets forth the BG&R strategy:

> With the start of 2005, there are a number of opportunities in the near term to further our strategy of surrounding the Department of Interior with regards to the BIA including:
>
> 1) Confirmation hearings before the Senate Energy and Natural Resources Committee for the Deputy Secretary of Interior
>
> 2) Budget hearings before the House and Senate Appropriations Committees for the Interior Department's (and BIA's) FY '07 budget
>
> 3) The Senate Indian Affairs Committee Investigation into Jack Abramoff and Indian tribe lobbying
>
> 4) The desire by Congressman Shays, Johnson and Simmons to reintroduce their BIA reform legislation
>
> 5) The National Governors Association Annual Meeting in Washington DC in February which also features the Republican Governors Association annual dinner. Both

> events are attended by senior White House and Agency
> officials...."

(Exhibit L.)  (emphasis added)

Thus, inquiry regarding contacts with federal officials is relevant.  Such contact as to Congressional sources is particularly relevant, since there is already evidence that Kent retained BG&R specifically on the recommendation of Congresswoman Nancy Johnson.  (Deposition of Senator Andrew Roraback, p.37, Exhibit M).  If TASK, through BG&R, was asking Congressional offices to act as stalking horses to make otherwise prohibited contacts, such information is relevant to any motion that STN may make – either for contempt or otherwise- to enforce the Amended Scheduling Order.

Furthermore, evidence has been developed that demonstrates that the State of Connecticut, one of the amici in this case has been actively involved in the BG&R activities.  In a January 7, 2005 memo, BG&R COO, Loren Monroe relates a conversation she had with Julie Williams of Governor Rells' office and Kevin Rash, the Governor's counsel, about setting up a joint strategy meeting. (Exhibit K).  On January 21, 2005, that meeting was, in fact, held among BG&R, Kent officials, and the Office of the Governor.  One of the goals of that meeting was to coordinate TASK's activities in Connecticut with those of BG&R in Washington.  (Exhibit I p. 146 1.1 – p. 148.1.23)  A memorandum from James Perkins to First Selectman Schiesel regarding that meeting demonstrates this tie.

> The purpose of the meeting(s) in Hartford from our point of view
> is to refine the political strategies and to ensure tight coordination
> of the implementation of such strategies among the Governor, the
> Congressional delegation and local officials.  Importantly, the
> political efforts must also be coordinated with the legal strategy
> being led by the Attorney General and Perkins Coie, which we are
> working to make sure occurs in Washington

(Exhibit L)

2.    The Scope of the Inquiry is Sufficiently Limited as to the Nature of the
Communications Sought

The request for production seeks communications by TASK with various

entities.  The only potentially relevant response to this objection raised by TASK

is that they are not bound by the Court's order, as they are not a party to this

action.

The relevant requests are as follows:

2.    All communications, since June 14, 2004, by any
officer, director, partner or employee of or consultant to TASK
with any official or employee of the United States Department of
the Interior, relating to proceedings for the recognition of the STN
and/or IBIA Proceedings No. 04-83-A, No. 04-94-A, No. 04-95-
A, No. 04-96-A, and No. 04-97-A.

3.    All communications, since June 14, 2004, by any
officer, director, partner or employee of or consultant to TASK
with any employee or official of the State of Connecticut relating
to proceedings for the recognition of the STN as a federal tribe,
since June 14, 2004.

4.    All communications, since June 14, 2004, by any
officer, director, partner or employee of or consultant to TASK
with any person or entity relating to proceedings for the
recognition of the STN and/or IBIA proceedings.

5.    Any communications, since June 14, 2004, between
any officer, director, partner or employee of or consultant to
BG&R and any officer, director, partner or employee of or
consultant to TASK:

6.    All meetings or communications since June 14,
2004 between any current or former member of TASK and any
person which related to or resulted in the retention of BG&R by
TASK.

7.    The role of any member of TASK in preparation for
and presentation of any information or material, whether presented
orally or in writing at any public meeting relating to proceedings
for the recognition of the STN as a Federal Tribe.

(See Exhibits A, B and C in support of Deponents' Motion).

Even the limited evidence developed to date demonstrates that TASK and the Town of Kent have worked as a single entity in all of their lobbying efforts. In fact, the Town has contributed its own prestige and that of its elected officials to TASK's efforts. Attached as Exhibit N is a January 10, 2005 fax transmittal sheet from Dan McGuinness of the Northwestern Connecticut Counsel of Governments describing a presentation made by First Selectman Schiesel to that body "[a]s First Selectman Schiesel mentioned at the January COG meeting, the Town of Kent and a [sic] TASK, a non-profit organization, are working together on tribal recognition issues. (Emphasis added).

One of the Selectmen of the Town, Nancy O'Dea-Wyrick, was an organizer of TASK and, until January of this year, regularly attended TASK meetings and participated in their strategy sessions. In fact, because of her municipal position, Selectman O'Dea-Wyrick was in charge of TASK's contacts with the officials of other towns around the country. (Exhibit J, at pp.16-18; 20-29; 39-40; and 40-45). Kent's First Selectman, Delores Schiesel, was a member of the Board of Directors of TASK (See Exhibit O, June 22, 2004 resignation letter of Mrs. Schiesel from TASK's Board STN Exhibit 6.). She attended and/or helped organize joint meetings between TASK and the Connecticut Governor's staff and Attorney General (Exhibit I, at pp. 146-55, J; State Senator Andrew Roraback Transcript, at pp. 21-28, attached as Exhibit M). She participated in email distribution lists of TASK materials, which she reviewed prior to their publication, and she obtained TASK's review of her releases (STN Exhibits 8, 10 and 12 from Schiesel deposition, attached as Exhibit T). First Selectman Schiesel agreed to contact municipal leaders throughout the country on behalf of TASK (Exhibit P, June 22, 2004 letter of Delores Schiesel to Jim Perkins and Kenneth Cooper STN Exhibit 7). She even assisted TASK in its

preparation, *at the offices of Barbour, Griffin and Rogers*, for hearings before the Senate Committee on Indian Affairs and joined TASK in a *BGR-arranged* meeting with the White House. (Exhibit I, pp. 161-71). Finally, The Kent Town Attorney was called upon to provide legal advice to TASK. (STN Exhibit 28 from Schiesel deposition, Exhibit Q).

As such, TASK's role is at the center of the potential violations of the Court's Scheduling Order. TASK acted in concert with Kent in arranging the BG&R contact. STN should be entitled to discovery to determine whether that role extended from mere cooperation to assuming the role of Town surrogate. Without the requested information or depositions, STN and, more importantly, the court, upon any motion which might be filed at the conclusion of discovery, will be left to guess as to what prohibited contacts may have been made. Put simply, TASK is a crucial link in the chain of possible deceit. Thus, all the information sought under the subpoenas is precisely relevant to whether the Court's Scheduling Order prohibiting certain contacts with the Department of Interior was violated.

In opposition to STN's motion, TASK offers a self-serving affidavit by Kenneth Cooper, stating, upon information and belief, that no contact has been made with any sequestered individuals. This proffer is totally inadequate. First and most simply, STN should not have to accept, without challenge, Cooper's affirmations. Cross-examination and the discovery that precedes it is the central method of determining truth in the adversary system. Howard v. Walker, 406 F. 3d 114, (2d Cir. 2005) Further, the circumstances of the affidavit itself demonstrate its inadequacy. Mr. Cooper only affirms the statements "to the best of his knowledge and belief." Thus, there may well be others within TASK who have information contrary to these assertions. Only through depositions such as the Rule 30(b)(6) proceeding which STN has noticed can the source of other, potentially more accurate, information be

-11-

ascertained.   Secondly, the absence of an affidavit from Mr. Perkins is a notable missing part to

TASK's defense.  Through discovery of Perkins and others, STN and the court can determine

what information he may have – and have failed to disclose.

        3.    <u>Discovery Should be Permitted of Membership Lists and Contributor Lists</u>

        STN has requested that TASK identify a person or persons to testify on its behalf

as to, <u>inter alia</u>, all membership of TASK.  (Exhibit A in support of Deponent's motion.)  That

information is relevant to determine whether there is an overlap between parties to this action

and TASK.  As set forth above, it is already clear that TASK and Kent's Selectmen have worked

in tandem.  Without membership and contributor lists, however, it is impossible to determine

whether other parties are supporting TASK, either financially or through participation in their

activities.

        The parties in this case include the Kent School Corporation, Inc.; Preston Mountain

Club; CL&P Co.; Schaghticoke Tribe of Indians;  New Milford Savings Bank; , Frank H.

Turkington and Heirs;   Town of Kent;  Loretta E. Bonos, as Administratrix  c.t.a. of the Estate

of Florence E.M. Baker Bonos;  Appalachian Trail Conference, Inc.;  Barbara G. Bush; Estate of

Eugene L. Phelps; and the United States of America.  The State of Connecticut, by the Attorney

General, is an amici, and is also bound by the Amended Scheduling Order.  Several of those

entities are membership organizations; any of them might have created overlapping membership

with TASK.  Only discovery of TASK's membership roles will be permit the comparison

necessary to reach this determination.

        Further, someone is contributing to TASK's efforts.  Barbour, Griffith and Rogers does

not work for free.  Therefore, STN should be permitted to inquire as to contribution sources –

again, to determine whether parties or their members are funding these efforts.

TASK has offered to provide membership and financial information limited to a list of its shareholders, officers, directors and a list of certain TASK contributors who are parties to the litigation, directors or officers of the Kent School, Preston Mountain Gun Club, CL&P or any amici or who are elected officials of the Town of Kent. (Deponents Brief p6)    While the court should, at a minimum, grant this discovery, it is not adequate. As in their proffer of the Cooper affidavit, TASK expects the Tribe and the court to rely upon unilateral, untested, and unverifiable representations. That simply is not what discovery is about. It is apparent that there have already been violations of the Scheduling Order and the Amended Scheduling Order. The Attorney General, as counsel for the amicus State of Connecticut, violated the Scheduling Order by contacting Secretary of the Interior Norton, without giving prior notice to STN; hence, the Court entered the Amended Scheduling Order. The Blakeman affidavit makes it clear that BG&R, TASK's lobbyist, contacted the Deputy Assistant Secretary for Indian Affairs, a person the parties and amici are prohibited from contacting under the order. (Exhibit G). On this record, there is no reason for this court to allow TASK to present its evidence unchallenged by cross-examination and further inquiry under oath.

4.    The Subpoenas Do Not Impose An Undue Burden Upon the Deponents.

Every subpoena and deposition imposes some burden on the responding party. A party moving to quash or modify the subpoena on the grounds of burdensomeness has the burden of proving that a search for information would be *unduly* burdensome. Croom v. Western Connecticut University, 218 F.R.D. 15 (D.Conn. 2002) (Quoting Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C.Cir.1984)); LaPlante, Supra.; Additionally, Rule 45(c), which delineates the circumstances that justify quashing a subpoena, was "not intended to diminish rights conferred by Rules 26-37." See Fed. R. Civ. P. 45 (1991 amendment) advisory

committee's note. <u>See</u> also <u>In re PE Corp. Securities Litigation</u>, 2005 WL 806719 (D. Conn.

2005), attached as Exhibit R;  <u>Heat & Control, Inc. v. Hester Indus., Inc.</u>, 785 F.2d 1017, 1023

(Fed.Cir.1986) (noting that Rule 45 must be read in light of Rule 26(b)); 9A Wright & Miller,

Federal Practice and Procedure: Civil 2d § 2452 (1995).

The cases upon which TASK relies are inapposite.   None of those cases involves

discovery of the violation of a Court's order, or are even from this District.  Further, in <u>Linder v.</u>

<u>Calero-Portocarrero</u>, 180 F.R.D. 168, (D.DC. 1998), the court refused to grant a motion to quash,

but did modify the scope of a subpoena, where the deponent filed an affidavit stating that

compliance would require 27 man-years of effort.  Here, STN seeks records of the type normally

maintained on a current basis by any Corporation – correspondence, billing records, memos, etc.

In <u>Concord Boat Corp. v. Brunswick Corp.</u> 169 F.R.D. 44 (S.D.N.Y. 1996), the subpoena sought

documents spanning a ten-year period; STN seeks material which goes back only to late

May/early June, 2004.   <u>Williams v. City of Dallas</u>, 178 F.R.D. 103 (N.D.Tex. 1998) not

quashing but instead modifying, a facially overbroad subpoena not limited in time or scope to

include, not all references ever made by media outlet to Michael Irvin, but only those references

relevant to pending action.  Information sought herein is limited in time and seeks only

documents relevant to determining if the Order has been violated. <u>Nova Biomedical Corp. v. i-</u>

<u>Stat Corporation</u> 182 F.R.D. 419 (S.D.N.Y. 1998) quashed a subpoena, seeking records already

sought in an earlier set of subpoenas.  No previous requests have been served upon Deponents.

Additionally, a deponent may not, as the Deponents do in the case at bar, rely upon the

mere assertion that complying with discovery will be burdensome.

> ...one must do more than simply intone the familiar litany
> that the interrogatories are burdensome, aggressive or
> overly broad.  Instead, the objecting party bears the burden
> of demonstrating specifically how, despite the broad and

> liberal construction afforded the federal discovery rules,
> each request is not relevant or how each question is overly
> broad, burdensome or oppressive by submitting affidavits
> or offering evidence revealing the nature of the burden.

In re PE Corporation, 2005 WL 806719 at 7 (D. Conn. 2005).  (citations omitted)  (Exhibit R)

(See also Alexander v. FBI, 194 F.R.D. 305, 313 (D.D.C. 2000))

In fact, the Deponents have offered no evidence showing the efforts that would be

required to comply with these requests for information compiled over a very short time frame.

No mention is made concerning how many boxes, feet or inches of documents are involved.

Indeed, the time frame for the discovery is only as far back as June 14, 2004.  While the

Deponents may contend this is burdensome, one must bear in mind that TASK was actually only

formed in 2004.  The Deponent's search for documents should require a simple search through

minimal files.

5.    The Deponents Have Failed To Demonstrate That The Information Should
      Be Protected As Confidential Information.

Other than their bald assertion, the Deponents have failed to demonstrate that the

subpoenas seek confidential information.  Accordingly, their Motion to Quash and/or Modify

should be denied under Fed. R. Civ. P. 45(c)(3)(B).

The Deponents rely on a case for the proposition that confidential business information is

the type of information that would cause substantial economic harm to the competitive position

of the entity from whom it is obtained.  Deponent's Motion, at 7-8. (citing Judicial Watch, Inc. v.

Export Import Bank, 108 F. Supp. 2d 19, 32 (D.D.C. 2000) (noting that customer lists are

confidential information, which, if disclosed, would harm a party because they would enable

competitors to contact clients directly)).  The Deponents then posit that the information sought

here is protected because it constitutes sensitive information.  Id.  The Deponent's position has

no bearing here. While TASK may have intended the information to be confidential, it does not even arguably bring all information sought through discovery within the penumbra of the rule. Merely because a party would like to keep information confidential does not mean that a court, which must weigh the rights of all the litigants will honor that request. LaPlante, 228 F.R.D, 115. (D. Conn. 2005) Rather, the party opposing disclosure must demonstrate that the need for confidentiality outweighs the requesting party's need for the material. The Deponents have failed to meet this burden as "bald assertions of confidentiality …are insufficient for a court to enter a protective order." Ahern v. Trans Union LLC Zale Corp., 2002 WL 32114492 (D. Conn. 2002), attached as Exhibit S.

The Tribe needs the requested information to determine if the Court's Scheduling Order was violated by third parties' contacting of the Department of Interior on behalf of parties or *amici*. The Court's order prohibits these communications. Such contact with the Department of Interior or with another person whom the Deponents or BG&R on their behalf importuned to make such contacts, is known only to the communicants. Unless STN were to take the extraordinary step of deposing the federal officials, including the Secretary of the Interior, themselves, there is no way, absent this discovery, to determine whether discussions occurred – beyond those which the Deponents or their lobbyists already acknowledge. While the Deponents may consider this discovery to be an imposition on their time, in the big picture, taking their depositions is far less intrusive than the alternative of seeking discovery from those high level executive and legislative branch members with whom TASK or BG&R communicated.

Even if the information sought contains private information, the Court can fashion an Order that protects such information under a confidentiality arrangement. If necessary, such a

confidentiality order could contain an "attorneys' eyes only" provision as to particularly sensitive material.

## IV.  Conclusion.

This Court entered a very clear order – no contact with certain officials or their offices, without prior notice to all other parties.  In 2004, the Attorney General, in contacting Secretary Norton, violated the spirit, if not the letter, of that order.  It is also clear, based upon documents, deposition testimony and ethics filings summarized above, that TASK, as a conscious strategy, has used their lobbyists to contact numerous State and federal officials.  As the affidavit of one of those lobbyists, Bradley Blakeman, makes clear – at least one of those contacts was made to an official with whom contact is specifically prohibited.

The discovery sought in this case – based upon an order already issued by this court over defendants' opposition – seeks to determine two things.  First, is TASK acting on behalf of the parties in this case – attempting to enable them to make indirectly contacts that they acknowledge could not be made directly?  Second, what contacts did TASK or Barbour, Griffith and Rogers make?  Did they ask Congressmen, Senators, the Governor, or even the White House, to deliver the parties' message directly to the Secretary of the Interior or others?

What is known is clear.  Almost immediately after BG&R was hired, BIA, at the highest levels, did an about face and vacated the order recognizing the Schaghticoke Tribal Nation.  This discovery seeks nothing more than a focused inquiry as to whether that abrupt change came about because the parties to this case violated the Court's order.

For the foregoing reasons, the Court should deny the Motion of Town Action to Save

Kent, Inc., James N. Perkins, and Kenneth F. Cooper to Quash the Subpoenas.

SCHAGHTICOKE TRIBAL NATION

BY McCARTER & ENGLISH, LLP
ITS ATTORNEYS


By_____
  Eric Watt Wiechmann, Esq. (ct04331)
  David A. Reif, Esq. (ct0244)
  Salvatore N. Fornaciari, Esq. (ct22684)
  McCarter & English, LLP
  CityPlace I
  Hartford, CT  06103

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been mailed, postage prepaid this 16th day of August, 2005 to:

John B. Hughes, Esq.
Chief of Civil Division
United States Attorneys Office
157 Church Street, Floor 23
New Haven, CT  06510

Judith A. Shapiro, Esq.
6856 Eastern Avenue NW
Suite 206
Washington, DC 20012

David J. Elliot, Esq.
Day, Berry & Howard
CityPlace I
Hartford, CT  06103-3499

Loretta Bonos
594 Bendview Drive
Charleston, WV 25314

Jeffrey B. Sienkiewicz, Esq.
Sienkiewicz & McKenna, PC
9 South Main Street
P.O. Box 786
New Milford, CT  06776-0786

Michael J. Burns, Esq.
Law Offices of
Attorney Michael J. Burns
57 Pratt Street
Hartford, CT  06103

Jerry C. Straus, Esq.
Hobbs, Straus, Dean & Walker, LLP
2120 L Street, NW
Washington, DC  20037

Perry Zinn Rowthorn, Esq.
Assistant Attorney General
55 Elm Street
P. O. Box 120
Hartford, CT  06141-0120

Richard L. Street, Esq.
Carmody & Torrance
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT  06721-1110

James R. Fogarty, Esq.
Fogarty Cohen Selby & Nemiroff
88 Field Point Road
P.O. Box 2508
Greenwich, CT 06836-2508

Susan Quinn Cobb, Esq.
Asst. Attorney General
55 Elm Street
Hartford, CT  06141

Thomas A. Gugliotti, Esq.
Updike, Kelly & Spellacy
One State Street
Hartford, CT  06123

Scott Keep, Esq.
Office of the Solicitor
U.S. Department of the Interior
1849 C Street, NW
Mailstop 6456
Washington, D.C. 20240

Francis J. Collins, Esq.
Tom Beecher, Esq.
Collins Hannafin Garamella, et al.
148 Deer Hill Avenue
P. O. Box 440
Danbury, CT  06810-0440

Ryan E. Bull, Esq.
Baker Botts, LLP
The Warner Building
1299 Pennsylvania Avenue, NW
Washington, D.C.  20004

Salvatore N. Fornaciari

ME1-5176933