**DECLARATION OF FRANCELIA JOHNSON**

STATE OF CONNECTICUT    )
                        )  ss: New Milford  September 6, 2005
COUNTY OF LITCHFIELD    )

Francelia Johnson, of 4 Birch Hill Court, Kent, Connecticut, having first been cautioned and sworn, does depose and say:

1. I have an interest in the history of the Town of Kent, and since the 1960's have researched various aspects of the Town's history.  I have a specific interest, however, in individuals who have lived in Kent, Connecticut from birth to death.  In 2000, I self published a 414 page book entitled: <u>A Register of Some of the Families That Have Lived in Kent, CT. 1739-1999</u>.  The book summarized the public information available on the individuals included in the book based primarily upon a examination of the Kent records of vital statistics, based upon the 1800 and 1850 census, based upon cemetery records and a personal examination of Kent cemetery headstones and, to a lesser degree, based upon obituaries and other documents that I had collected over the years.  The book covered the period of 1739 through 1999 and summarized the dates of birth, marriage, marriage partner, deaths, children

and place of burial in Kent of the individuals covered. Historical information for some individuals gleaned from the records of vital statistics or obituaries was also included.

2. Donna Hearn, a historian/researcher employed by the Schaghticoke Tribal Nation purchased two copies of my book. In addition, in my capacity as a member of the Kent Historical Society, I have assisted Ms. Hearn and other researchers for the Schaghticoke Tribal Nation in their research efforts on behalf of the Schaghticoke Tribal Nation. My identity and the existence of my book has not been a secret to the researchers for the Schaghticoke Tribal Nation.

3. I published my book well before the current controversy concerning the 19th century Schaghticoke "marriage rates". Upon information and belief, that controversy originated with the issuance, in January, 2004, of the Final Determination on the Schaghticoke Tribal Nation's petition for federal recognition.

4. The basic research upon which my book is based is summarized and collected in 45 notebooks occupying approximately thirteen feet (13') of shelf space. I estimate that approximately 20,000 individuals are listed in these

notebooks.  They are listed alphabetically by date.  In general, the records do not indicate whether the individual is white, black or Indian, as I typically did not record that information even if it was contained in the birth or death records.

    5.  The additional research for my book is summarized and collected on file cards listing individuals that are buried in the seven (7) cemeteries located in Kent.  I estimate that I have approximately 10,000 file cards summarizing headstone and other information that I have gleaned from "walking" the cemeteries, from researching previously published burial records and from researching the burial records on file in the Kent Town Clerk's Office.  My records typically do not indicate whether the person buried was white, black or Indian unless that information is contained on the headstone or in other cemetery records.  This is true even for the individuals buried in the cemetery located at the Schaghticoke Reservation.

    6.  In general, if there was no official vital statistic record or headstone record evidencing a birth, a death or a marriage in Kent, the individual was excluded from my book even if that individual had lived in Kent.  In other words, the

person had to have been born, been married or to have died and been buried in Kent in order to be included. In addition, I also excluded from the book those individuals whose records, either as a parent or child, evidenced an illegitimate birth. My decision to exclude individuals from the book was not based on their status as Schaghticoke Indians.

7.  I have a separate notebook that contains general research and collected information, including some genealogical information, that relates to the Schaghticoke Indians. By letter dated July 22, 2005, attached to the supoena duces tecum as Attachment 2, my counsel made a conditional offer to make copies of these materials, the so-called "primary compilation", available simultaneously to all parties in this proceeding on reasonable notice. See Francelia Johnsons' <u>Motion to Quash and Motion For Protective Order</u>, dated August 4, 2005, Paragraph 12 and Exhibit A, Attachment 2; and Francelia Johnsons' <u>Objection</u>, dated August 4, 2005, Paragraph 12 and Exhibit A, Attachment 2.

8.  The subpoena duces tecum directs me to produce all documents in my possession or control concerning "any Schaghticoke indian" and "any person of Schaghticoke ancestry" (Documents to be Produced, Paragraph 1); and all documents

4

concerning marriages "involving any Schaghticoke Indian or any person of any Schaghticoke ancestry" (Documents to be Produced, Paragraph 2). In order to comply with this request, I will have to review the records for the approximately 20,000 persons listed in the 45 notebooks and the approximately 10,000 persons listed on the cemetery record file cards to determine whether any of those individuals may be Schaghgticoke Indians or of "any" Schaghticoke ancestry. I will also have to cross reference this information against the other information that I have concerning the Schaghticoke Indians as contained within the Schaghticoke notebook that I had offered to produce (the so-called "primary compilation"). I will have to make independent judgments as to whether the individuals were Schaghticoke Indians or of "any" Schaghticoke ancestry.

9. The subpoena duces tecum also directs me to produce all documents in my possession concerning "marriages, birth, burial locations, death, children, divorces, church affiliations for any indian living in Kent or neighboring towns." (Documents to be Produced, Paragraph 3). To comply with this request, I will have to review the records for the approximately 20,000 persons listed in the 45 notebooks and the

approximately 10,000 cemetery record file cards to determine whether any of those individuals are Indian and then to determine what information I have that meets the demands of the subpoena.  I will also have to cross reference that information against the other information that I have concerning the Schaghticoke Indians as contained within the separate Schaghticoke notebook that I had offered to produce (the so-called "primary compilation").  Again, I will have to make independent judgments as to whether the individuals were Indian.

    10.  The subpoena duces tecum also directs me to produce all documents in my possession concerning a list of 157 individuals who are referenced by "approximate marriage date". Fifteen (15) of theses individuals are identified by first name only.  Sixteen (16) individuals are identified as "unknown". Eight (8) individuals are identified as "Schagh."  One (1) individual is identified as "Pequot" and one individual is identified as "mixed indian/white woman". (Documents to be Produced, Paragraph 3, Attachment 1).  In order to comply with this request, I will have to review all of my research to try to determine who these unidentified individuals are.  I will

also have to review all of my research to determine whether I have any information on the specific named individuals.  Unlike my the 45 notebooks that form the basis for my book, the information in the notebook concerning the Schaghticoke Indians is not compiled by name or by date.

    11.   All of the review and investigation described in paragraphs 8, 9 and 10 must be done manually in that my research and records are not reduced to computerized data.

    12.   The notebook that contains my general research and collected information relating to the Schaghticoke Indians (the "primary compilation") contains fragile papers that, with care, can be separated and copied.  That information is available without undue burden to me and was offered to all parties to this action prior to issuance of the subpoena by letter dated July 22, 2004.  That offer was subject only to the payment of copying costs, reasonable notice and the absence of objection by other parties.

    13.   To produce the more obscure and less available information included within the scope of the subpoena duces tecum will be an undue burden to me.  I estimate that compliance with the subpoena will require me to spend at least

one (1) month of full time effort to go through my records to identify the information that may be contained therein and to collect that information so as to satisfy the document production request.  This is a particularly burdensome request in that:

    a)  I have not been retained by any party as an expert witness;

    b)  Except as published, I have not made my research materials available to any party for use in this or any other proceeding;

    c)  I am not a professional historian or genealogist but engage in my research activity as a hobby and on a part time basis as time permits;

    d)  my husband is seriously ill and is presently undergoing chemotherapy and requires my care and attention;

    e)  the research that I have assembled is generally available to the researchers for the Schaghticoke Tribal Nation in that it is based primarily upon an examination of the records of vital statistics on file in the Town of Kent; based upon "walking" the cemeteries; based upon burial records that have been previously published or that are available in the

Office of the Kent Town Clerk; and based upon records that exist and have been available to the Schaghticoke Tribal Nation researchers at the Kent Historical Society.

Dated at New Milford, Connecticut, this 6th day of September, 2005.

                             ___s/ Francelia Johnson
                             Francelia Johnson

Subscribed and sworn before me this 6th day of September, 2005.

                             __s/ Jeffrey B. Sienkiewicz
                             Jeffrey B. Sienkiewicz
                             Commissioner of the Superior Court