## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

```
UNITED STATES OF AMERICA           :
                                   :
          PLAINTIFF,               :
                                   :
v.                                 :    CIVIL NO. H-85-1078(PCD)
                                   :
43.47 ACRES OF LAND, MORE OR       :
LESS, SITUATED IN THE COUNTY OF    :
LITCHFIELD,TOWN OF KENT, ET AL.,   :
                                   :
          DEFENDANTS,              :
-----------------------------------------------------------------
SCHAGHTICOKE TRIBAL NATION,        :
                                   :
          PLAINTIFF,               :
                                   :
v.                                 :    CIVIL NO. 3:98CV1113(PCD)
                                   :
KENT SCHOOL CORPORATION,           :
INC. ET AL,                        :
                                   :
                                   :
          DEFENDANTS,              :
-----------------------------------------------------------------
SCHAGHTICOKE TRIBAL NATION,        :
                                   :
          PLAINTIFF,               :
                                   :
v.                                 :    CIVIL NO. 3:00CV0820(PCD)
                                   :
THE UNITED STATES OF AMERICA AND:
THE CONNECTICUT LIGHT AND POWER    :
COMPANY,                           :
                                   :
          DEFENDANTS,              :    July 2, 2005
```

**SCHAGHTICOKE INDIAN TRIBE'S RESPONSE TO SCHAGHTICOKE TRIBAL
NATION'S MOTION TO AMEND SCHEDULING ORDER**

## I.  Introduction

The Schaghticoke Tribal Nation (STN) has filed a motion to amend the scheduling order currently in place in these consolidated cases before this Court.  The scheduling order governs certain time frames for the processing of the STN petition for federal acknowledgment as an Indian Tribe.  The STN, in the Introduction section of its motion, states that the scheduling order must be amended "to protect the court's jurisdiction **and the parties' and the public's interest in the fair resolution of these consolidated cases, threatened by recent unanticipated developments**." (emphasis added).   Although the STN cries foul, and claims that it wants fairness for the parties, it is the SIT, which has thus far received unfair treatment in this process; a process purportedly designed to resolve these cases fairly.

There are two Schaghticoke Indian Groups, which are parties to these civil actions.  Both the Schaghticoke Tribal Nation (STN) and the Schaghticoke Indian Tribe have filed claims to the same historic Schaghticoke lands based on violations of the federal Non-Intercourse Act of 1790 (25 U.S.C. §177).  A prerequisite to pursuit of claims based the Non-Intercourse Act, is ***acknowledgment*** by the federal government, that the entity pursuing such claims, is an Indian Tribe.   Currently, the STN petition for federal acknowledgment is being processed by the Dept of the Interior's, Assistant Secretary of Indian affairs (AS-IA).  The SIT has the same claims before this Court pursuant to the

same federal law, and also has a petition for federal acknowledgment sitting in the hands of the same federal agency. While the STN petition is under active consideration (and reconsideration), the SIT petition and the claims before this court are, in reality, ignored. **In order to resolve each of these parties' competing claims, a full evaluation of each of these two parties' petitions for federal acknowledgment as an Indian Tribe is <u>required</u>!**

As stated above, both of these two parties (STN and SIT) have petitions for federal acknowledgment (also referred to as federal recognition) pending before the Bureau of Indian Affairs (BIA). While the STN whines and demands attention at every turn in the road in the evaluation process (that the STN is being treated unfairly), the SIT's land claims and petition for recognition are basically ignored. In order to resolve all claims in these lawsuits, both groups' petitions for federal acknowledgment must be thoroughly and fairly evaluated. Although the squeaky wheel gets the grease, these lawsuits cannot move forward unless both wheels are greased. Otherwise, there is a clear denial of equal protection and due process of the law.

Each of these two parties are <u>equally</u> entitled to fair evaluations of their claims that they are Indian Tribes, which will determine whether one, or the other, or both have the standing to pursue the land claims pursuant to the Non-Intercourse act. The processing and evaluation of the STN's petition for federal recognition does not

somehow magically turn into an evaluation of the SIT's petition. As a part of the request for reconsideration of the STN Final determination (FD) before the Interior Board of Indian Appeals (IBIA Appeal), the SIT requested that its petition for federal acknowledgment be fully evaluated by the Office of Federal Acknowledgment (OFA) in accordance with the procedures set forth in CFR 25, Part 83. Also, as part of the IBIA Appeal, the SIT argued that prior to issuing a "Reconsidered Final Determination" on the STN petition, the SIT petition must be fully evaluated in accordance with the regulations. Otherwise, an accurate, reliable, and appropriate FD on the STN petition is unlikely, and the entire process a charade.

On May 12, 2005, pursuant to 25 CFR §83.11 the IBIA referred the particular issues raised by the SIT, to the Assistant Secretary-Indian Affairs (AS-IA) for review and consideration.      Under 25 CFR §1.2[1] the Secretary has the authority to waive both the priority provisions (25 CFR §83.10(d), and the 120 day deadline on the remand of the STN FD (25CFR §83.11(g)(1), and fully evaluate the SIT petition and then issue a

---

[1] 25 C.F.R. §1.2 states as follows: " The regulations in chapter 1 of title 25 of the Code of Federal regulations are of general application. Notwithstanding any limitations contained in the regulations of this chapter, the Secretary retains the power to waive or make exceptions to his regulations as found in chapter 1 of title 25 of the FR in all cases where permitted by law and the Secretary finds that such waiver or exception is in the best interest of the Indians. "
    The Secretary waived the priority provisions of 25 C.F.R. §83.10(d) in order to consider the petitions of the Eastern Pequots and the Paucatuck Eastern Pequots simultaneously because he found that it was in the best interest of the Indians to do so

reconsidered STN FD as well as a SIT FD. The Court's Scheduling Order in these cases, was amended on February 27, 2004 based on the **REPORT AND JOINT MOTION ON CONSENT TO AMEND SCHEDULING ORDER**, which was filed with the Court on the same date. The amended order modified paragraph (k) of the scheduling order to read as follows:

"(k) Any request for judicial review of the final decision under the administrative Procedure Act by any party or amici to these cases shall be filed within 90 days of its effective date and shall be filed in this court as a case related to the above-captioned cases."

Page 3 of the **REPORT** referred to above, explains that, **"The proposed amended ¶ (k) relies on the regulations to define "effective date," and precludes the possibility of an APA action before the administrative process is complete. If amended, paragraph (k) will provide a deadline for an APA review in District Court irrespective of whether a request for request for reconsideration is made to the IBIA. Keying the time frame to the "effective date" of the final decision allows for a flexible deadline – applicable irrespective of whether an IBIA appeal is filed and irrespective of the nature of the reconsidered decision, if any, which is made under the regulations."**

---

in light of the overlapping historical roots and genealogies.

The scheduling order as shown above is not intended to interfere with the administrative process, and as such does not prohibit, nor interfere with the authority of the AS-IA to exercise the discretion to waive the limitations in 25 C.F.R. §83.10(d) and 25 C.F.R. §83.11(g)(1) and fully address the concerns of both the SIT and the STN. In fact, paragraph (k) of the Scheduling Order and the REPORT explaining the intention of paragraph (k) support this necessary flexibility in the administrative process in order to increase the likelihood that the agency reaches a fair, and correct result at the conclusion of that process.

The AS-IA may request further documents, if needed to resolve the questions regarding marriage rates or any other factors, which may address the questions raised in the present STN motion. Therefore, it may be premature for this Court to intervene in this administrative process at this time. However, for the reasons set forth below, the SIT does not necessarily object to a further amendment to the current version of the scheduling order, provided that no appeal pursuant to the APA, of the STN FD, is allowed until the SIT petition is thoroughly processed and evaluated by the OFA.

## II. Procedural/ Factual Background

Since most of the and procedural history of these matters and the specific procedural involvement of the SIT is already a part of the record in these cases, through various pleadings and other documents of record, for the purpose of efficiency this Procedural/Factual Background, will be brief and only provide extensive detail where

necessary.

Until September 11, 2000 these consolidated cases had been stayed pending the processing of the STN petition for federal acknowledgment.  On September 11, 2000 the court granted STN's motion to lift the stay and address the question of whether the STN is an Indian Tribe.  As an Indian Tribe, the STN would have standing to pursue its land claims pursuant to the federal non-intercourse act, and arguably also defend against the condemnation claim (if it is determined that STN is the rightful land owner, as opposed to the SIT).

Prior to the decision of this Court to evaluate the issue of federal recognition, the STN's petition for acknowledgment was on a waiting list and would not be reached by the BIA for active consideration for at least several years.  Upon finding that the time frame for active consideration of the STN petition had been accelerated, the SIT sought involvement in these three lawsuits as an amicus curiae in order to provide critical input to assist the Court in its decision-making.  The request for involvement as an amici was denied.  The SIT then filed a motion to intervene as a party as of right, and in the alternative sought permissive intervention.

Simultaneously with the motion to intervene, the SIT also filed with the Court and served all of the parties, its complaints in two of the three cases claiming its ancestral lands pursuant the Non-Intercourse Act of 1790.  The SIT also filed its answer to the

condemnation action at that time. While the SIT was preparing its initial pleadings in these matters, the parties to these cases were negotiating the scheduling order, which is the subject of the STN's present motion and this response. On May 8, 2001 the negotiated scheduling order was entered as an order of this Court. On June 15, 2001, this Court granted the SIT motion to intervene provided that the SIT must abide by the scheduling agreement reached by the parties. The <u>Order</u> granting intervention read as follows:

"The motions to intervene in the following cases are hereby **granted**: H-85-1078 (PCD)(doc.164), 3:98cv1113 (PCD)(doc. 102), and 3:00cv820 (PCD)(doc.30). The Tribe is required to abide by all orders, stipulated or otherwise, already entered in these cases. The clerk shall docket the Verified Complaint submitted in the latter two cases."

Due to the substantial change in circumstances, where consideration of the STN petition by BAR, went from several years in the future to the immediate present, the SIT now had to compile its petition for federal acknowledgment in an extremely expedited manner. If the STN's petition were considered, and the STN were to be recognized as an Indian Tribe and rightful owner of the historical Schaghticoke lands at issue, the SIT would be severely harmed, and its petition for federal acknowledgment severely prejudiced thereby.

At the same time that the SIT was putting forward all of its effort to compile its

petition for acknowledgment, the SIT was receiving and beginning to review the several thousand page STN petition. The SIT forwarded its petition for federal acknowledgment to BAR on October 11, 2002. The SIT requested BAR to simultaneously consider its petition along with the SIT petition in order to have the complete Schaghticoke history before it.

The SIT petition also incorporated the STN petition by reference, due to the common history and overlapping ancestors.[2] The request to BAR for a simultaneous review was denied due to the time constraints of the scheduling order, and because much of the initial review process had already been completed on the STN petition.

On December 5, 2002 the Proposed Findings on the STN petition were issued. On March 20, 2003 Officials from the SIT (including the Tribal Genealogist and the Tribal Attorney) met with members of the BAR staff for a technical assistance meeting on the SIT petition. On January 29, 2004 the FD on the STN petition was issued. Appeals were filed with the IBIA and on May 12, 2005 the IBIA vacated the STN FD and sent it back to the AS-IA for further work, including consideration of issues raised by the SIT and others. All of these issues are now before the AS-IA.

---

[2] Additionally, the STN petition was based on the SIT "letter of intent", and the STN petition also included many documents belonging to the SIT.

**I. Argument**

**A. <u>STN's Arguments regarding Fairness</u>.**

The STN's motion begins with a statement that the current "Amended Scheduling Order" must be amended to protect the court's jurisdiction and the parties' and the public's interest in the fair resolution of these consolidated cases. The truth is, that a **"fair resolution"** requires that the SIT petition must be fully considered under the regulations, simultaneously with the reconsideration of the STN petition. SIT is entitled to equal protection of its rights if there is to be a "fair resolution of these cases."

The STN complains that OFA made an ultra vires filing, after briefing before the IBA had closed. This characterization by the STN's motion is misplaced. To agree with this proposed perception of OFA's "Transmittal" to the IBIA, would require a total misunderstanding of these proceedings. The OFA is not a party submitting a pleading after the pleadings have closed. The regulations under which these matters are proceeding, allow OFA to provide assistance to the IBIA in such appeals (See 25 C.F.R. §83.11(e)(3)).

On page 2 of the STN motion, the STN complains, "The process has been further impaired by the Acting Principal Deputy Assistant Secretary's decision to preclude STN from participating in any explanation or cure of the supposed error on remand. Letter from Acting Deputy AS-IA to Velky, May 23, 2005 [hereinafter, AS-IA to Velky. Exhibit

F]. " <u>This is not true</u>. The letter to Velky referred to (STN's Exhibit F) does not state that the STN would be precluded from participation in the reconsideration of these issues. The letter to Velky only states that, "*Unsolicited* arguments, evidence, comments, and briefings from the petitioners and interested parties will not be accepted." (italics added). This does not mean that during the reconsideration process a request by OFA for further documentation or explanation will not occur. After all, it was OFA's "Transmittal" to IBIA that pointed out that due to the apparent miscalculation of marriage rates, the FD should not be upheld "absent explanation or new evidence"(See p.6 of STN motion).

In light of the statement by OFA, it is probable that a request for further explanation and new evidence is forthcoming. Additionally, the letter from Hughes to Wiechmann (Exhibit E to STN's motion) correctly states, "Finally, the letter (STN exhibit F) does not foreclose *solicited* comments, arguments, or evidence as may become necessary as the reconsideration proceeds." (italics added)

As earlier stated in this response pleading, the AS-IA has the authority to waive the limitation provisions, and fully consider the SIT petition in accordance with the procedures set forth in 25 C.F.R. §83. Should the AS-IA exercise the discretion to do so, the issue raised by the STN, as well as the overall fairness to all parties would be fully addressed. If, however, the AS-IA does not exercise such discretion, the STN as

well as the SIT may have a compelling claim for abuse of discretion in an APA appeal before this Court. Since the "Reconsidered Final Determination" has not yet been issued, it is understandable that some of the parties may object to the STN motion, based on ripeness grounds. In light of the overall situation, however, the SIT does not necessarily object to a further amendment to the current version of the scheduling order, provided that no appeal pursuant to the APA, of the STN FD, is allowed until the SIT petition is thoroughly processed and evaluated by the OFA.

## Conclusion

It makes no sense to have the claims of each of these Indian groups determined at separate intervals in time. It is a waste of administrative and judicial resources to have two separate proceedings, including separate further appeals for these overlapping claims. The resolution of one without the other will severely impinge on the rights and outcome of the SIT's claims. One of the requirements of the SIT, in order to intervene in these proceedings, was that no other party could adequately represent or protect the interests of the SIT. It is clear that the STN is only intent in destroying the interests of the SIT. The allegations of unfairness made by the STN throughout its motion are transparent and ridiculous in light of the unfairness, lack of due process, and equal protection afforded the SIT. The Court is the guardian of these rights and values.

*Meanwhile the SIT petition has yet to be fully considered.*

                    RESPECTFULLY SUBMITTED,
                    THE SCHAGHTICOKE INDIAN TRIBE

By: _____
     Michael J. Burns (CT 22230)
     Law Offices of
     Attorney Michael J. Burns
     57 Pratt Street, Suite 604
     Hartford, CT 06103
     Tel. (860) 246-6400